UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ZAKII WAHIID, | ) ) ) | SEP - 5 2008 *Sep 5. 2008* MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 08 C 637 *08 cv 637* |
| TERRY MCCANN, Warden, | ) ) | The Honorable William T. Hart, |
| Respondent. | ) | Judge Presiding. |

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

The following below-named exhibits are being filed with respondent's Motion

to Dismiss in the above-captioned petition for writ of habeas corpus:

Exhibit A:  Motion for summary remand in *People v. Wahiid*, No. 2-01-0559;

Exhibit B:  Motion to file corrected confession of error in response to defendant's motion for summary remand in *People v. Wahiid*, No. 2-01-0559;

Exhibit C:  Summary order in *People v. Wahiid*, No. 2-01-0559 (Ill.App. Dec. 21, 2001);

Exhibit D:  Brief and argument for defendant-appellant in *People v. Wahiid*, No. 2-02-1047;

Exhibit E:  Brief and argument for plaintiff-appellee in *People v. Wahiid*, No. 2-02-1047;

Exhibit F:  Rule 23 order in *People v. Wahiid*, No. 2-02-1047 (Ill.App. Dec. 31, 2003);

1

Exhibit G:   PLA in *People v. Wahiid*, No. 97748;

Exhibit H:   Order denying PLA in *People v. Wahiid*, No. 97748, 809 N.E.2d 1292 (Table) (Ill. 2004);

Exhibit I:   Order in *People v. Wahiid*, No. 00 CF 2509 (Cir.Ct. Kane Cty. Apr. 13, 2007);

Exhibit J:   Motion by petitioner for relief under Supreme Court Rule 381 in *People v. Wahiid*, No. 11901;

Exhibit K:   Order denying motion in *People v. Wahiid*, No. 11901 (Ill. Sept. 14, 2007); and

Exhibit L:   Report of proceedings on February 1, 2001 in *People v. Wahiid*, No. 00 CF 2509.


September 4, 2008                                   Respectfully submitted,

                                                   LISA MADIGAN
                                                   Attorney General of Illinois

                              By:       *[signature]*
                                                   GARSON FISCHER, Bar # 6286165
                                                   Assistant Attorney General
                                                   100 West Randolph Street, 12th Floor
                                                   Chicago, Illinois 60601-3218
                                                   TELEPHONE: (312) 814-2566
                                                   FAX: (312) 814-2253
                                                   E-MAIL: gfischer@atg.state.il.us

2-00-0518

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

SECOND JUDICIAL DISTRICT

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br>Plaintiff-Appellee | )Appeal from the Circuit<br>)Court for the 16th<br>)Judicial Circuit,<br>)Kane County, Ill.<br>) |
| -vs- | )00 CF 2509<br>)<br>) |
| ZAKII WAHIID,<br>Defendant-Appellant | )Hon. James Doyle<br>)Judge Presiding |

---

## MOTION FOR SUMMARY REMAND

The defendant-appellant, by appointed counsel, Paul Alexander Rogers, Assistant Defender, OFFICE OF THE STATE APPELLATE DEFENDER, Second Judicial District, hereby moves this Honorable Court to remand the cause for further post-sentencing proceedings because of the failure to comply with Supreme Court Rule 604(d).

IN SUPPORT THEREOF, counsel states:

1. On November 28, 2000, the defendant was charged by indictment with two counts of robbery and one count of aggravated robbery. (C. 18-21)

2. The Kane County Public Defender's Office was appointed to represent the defendant, and Assistant Public Defender Beth Peccarelli appeared on his behalf. (C. 7; R.1)

3. On February 1, 2001, the defendant entered a non-negotiated guilty plea to the

EXHIBIT A

aggravated robbery charge. (C. 30; R. 31-39)  On April 11, 2001, the defendant was sentenced to prison for 15 years. (C. 40-41)

4. After imposing the sentence, the trial court advised the defendant of his right to appeal. Specifically, the court told the defendant that if he wished to appeal, he had to file a written motion within 30 days asking to withdraw the guilty plea. The court also advised the defendant that any issues not included in that motion would be waived, that the withdrawal of the plea would result in result in all of the charges being set for trial, and that he was entitled to a free copy of the transcript and to the appointment of counsel. (R. 94)

5. On April 17, 2001, the court advised the defendant that he could file a motion to reconsider the sentence as well as a motion to withdraw the plea, but that any motion to reconsider would also have to be filed prior to taking an appeal. (C. 44; R. 99)

6. On April 18, 2001, Ms. Peccarelli filed a written motion to reconsider the sentence. (C. 45-47)

7. On May 18, 2001, Ms. Peccarelli filed a certificate pursuant to Supreme Court Rule 604(d). (C. 55)  In that certificate, Ms. Pecarelli stated:

> (1) That I have personally consulted with the defendant, Zakii Wahiid, in person, regarding his contentions of error in the entry of the instant plea of guilty and court sentence on that plea;

> (2) That I have examined the trial court file as well as examined the record as contained in the computer banks of the Clerk of the Circuit Court;

> (3) That I have personally written and filed the motion to reconsider the sentence to the extent necessary to adequately represent his contentions of error in the proceedings;

2

(4) That I was the attorney of record throughout the proceedings, including the plea of guilty and the sentencing hearing, and have consulted all of the notes contained in the defendant's file with regard to the instant guilty plea and sentencing hearing;

(5) That I have also addressed the defendant's right to move to withdraw his plea of guilty in the instant matter and have been instructed by defendant that only the sentence will be challenged.

For the Court's convenience, a copy of Ms. Pecarelli's certificate is attached this motion.

8. A hearing on the motion to reconsider was held on May 18, 2001. The trial court denied the motion that same day. (C. 53; R. 102-04)  The defendant immediately filed a notice of appeal. (C. 54; R. 104)

9. A defendant who enters a non-negotiated guilty plea cannot appeal unless, within 30 days of sentencing, he files a written motion in the trial court seeking to withdraw the guilty plea and/or reconsider the sentence. Supreme Court Rule 604(d).

10. If such a motion is filed, Rule 604(d) requires defense counsel to file a certificate stating that she has consulted with the defendant regarding his contentions of error, examined the court file and the guilty plea transcript, and made any amendments to the motion that are necessary for an adequate presentation of any defects in the proceedings.  In the case at bar, defense counsel filed a motion to reconsider the sentence, but she failed to file a proper 604(d) certificate.  Counsel never certified that she had examined the guilty plea transcript. She certified only that she had examined the court file and "the record as contained in the computer banks of the Clerk of the Circuit Court" and "consulted" her notes regarding the guilty plea and sentencing. (C. 55)  Indeed, the record shows that the reports of proceedings

3

for both the guilty plea hearing and the sentencing hearing were not filed until July 5, 2001,

several weeks after the hearing on the motion to reconsider. (R. 31, 41, 102) Thus, counsel

could not have examined the guilty plea transcript prior to the hearing. *People v. Holford*,

233 Ill. App. 3d 12, 598 N.E.2d 420 (4th Dist. 1992).

11. Counsel's failure to comply with the certification requirement of Rule 604(d)

invalidates the order denying the motion to reconsider and entitles the defendant to a remand

for new proceedings on that motion. *People v. Janes*, 158 Ill.2d 27, 630 N.E.2d 790 (1994);

*People v. Ritchie*, 258 Ill. App. 3d 164, 630 N.E.2d 171 (2nd Dist. 1994). Counsel's failure

to certify that she had examined the guilty plea transcript requires a remand even though she

represented the defendant throughout the proceedings. *People v. Edwards*, 228 Ill. App. 3d

492, 592 N.E.2d 501 (4th Dist. 1992).

WHEREFORE, the defendant-appellant respectfully prays that this Honorable Court

reverse the order denying the motion to reconsider the sentence and remand this cause for

further proceedings in compliance with Rule 604(d).

Respectfully submitted,

Paul Alexander Rogers, Assistant Defender
OFFICE OF THE STATE APPELLATE DEFENDER
2010 Larkin Ave.,Elgin, IL 60123
(847) 695-8822

Counsel for Appellant

4

## VERIFICATION

STATE OF ILLINOIS      )
                           ) SS

COUNTY OF KANE       )


      Paul Alexander Rogers, Assistant Defender, OFFICE OF THE STATE APPELLATE DEFENDER, being first duly sworn, deposes and says that he has read the above and foregoing motion, knows the contents thereof, and that the matters and things therein stated are true.

_____
Paul Alexander Rogers, Assistant Defender


Subscribed and Sworn to
before me this 4th day
of September, 2001.

_____
Notary Public


```
**************************************
      OFFICIAL SEAL
   NORMA L. HUERTA
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9-29-2003
**************************************
```

5

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

MAY 18 2001

FILED 098

ENTERED

PEOPLE OF THE STATE OF ILLINOIS, )
                        Plaintiff, )
                                  )
                                  )      General Nos.  00 CF 2509
vs.                             )
                                  )
                                  )
Zakii Wahiid, )
                    Defendant. )

## CERTIFICATE PURSUANT TO SUPREME COURT RULE 604(d)

I, BETH PECCARELLI, Assistant Public Defender in the County of Kane, do hereby state
as follows:

1.    That I have personally consulted with the defendant, Zakii Wahiid, in person, to
ascertain his contentions of error in the entry of the instant plea of guilty and Court sentence
on that plea;

2.    That I have examined the trial court file as well as examined the record as
contained in the computer banks of the Clerk of the Circuit Court;

3.    That I have personally written and filed the timely motion to reconsider sentence to
the extent necessary to adequately represent his contentions of error in the proceedings;

4.    That I was the attorney of record throughout the proceedings, including the plea of
guilty and the sentencing hearing and have consulted all of the notes contained in the defendant's
file with regard to the instant guilty plea and sentencing hearing;

5.    That I have also addressed the defendant's right to move to withdraw his plea of
guilty in the instant matter and have been instructed by defendant that only the sentence will be
challenged.

_____
BETH E. PECCARELLI
Assistant Kane County Public Defender
Atty. # 06187655

SUBSCRIBED AND SWORN to
before me this 3rd day of May, 2001.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
JEANNE M. MEYER
Notary Public, State of Illinois
My Commission Expires 10/13/2002

NO. 2-01-0559

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

SECOND JUDICIAL DISTRICT

*ORIGINAL*

*FILED*
*SEP 10 2001*
*LOREN J. STROTZ, CLERK*
*APPELLATE COURT 2nd DISTRICT*

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of the 16th Judicial Circuit |
| Plaintiff-Appellee, | ) | Kane County, Illinois |
| -vs- | ) | No. 00 CF 2509 |
| ZAKII WAHIID, | ) | Honorable |
| | ) | James Doyle |
| Defendant-Appellant. | ) | Judge Presiding |

---

## NOTICE OF MOTION

To:  G. Joseph Weller
     2010 Larkin Avenue
     Elgin, Illinois 60123

PLEASE **TAKE** NOTICE that I have on September 10, 2001, caused to be filed in the office of the Clerk of the Appellate Court of Illinois, Second Judicial District, the original and three copies of response to motion for summary reversal and remand in the above entitled cause and hereby serve you with one copy of same.

*Martin P. Moltz*
For the State's Attorney

## CERTIFICATE OF ATTORNEY

The Undersigned, an attorney, certifies that (s)he served copies of the above-filed document on the person(s) to whom directed above by depositing same in the United States Mail in Elgin, Illinois, in a properly addressed, stamped and sealed envelope on September 10, 2001.

*Martin P. Moltz*

Martin P. Moltz

NO. 2-01-0559

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

SECOND JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 16th Judicial Circuit |
| Plaintiff-Appellee, | ) | Kane County, Illinois |
| | ) | |
| -vs- | ) | No. 00 CF 2509 |
| | ) | |
| ZAKII WAHIID, | ) | Honorable |
| | ) | James Doyle |
| Defendant-Appellant. | ) | Judge Presiding |

## RESPONSE TO MOTION FOR SUMMARY REVERSAL AND REMAND

Now come the People of the State of Illinois, by Meg Gorecki, State's Attorney in and for Kane County, Illinois, and Martin P. Moltz, Deputy Director, State's Attorneys Appellate Prosecutor, and respond as follows to the defendant's motion for summary reversal and remand in this cause:

1. In light of the fact that the issue raised by the defendant is fairly settled, the People at this juncture do not oppose defendant's request that he be excused from filing a full brief in this cause.

2. The People additionally note that our supreme court has now modified its Rule 23 to explicitly allow for the summary handling of certain appeals. Supreme Court Rule 23(c).

3. Accordingly, the People request that they be granted no less than 35 days from the date of the instant pleading in which to respond to the defendant's motion, either by brief or other appropriate pleading.

Respectfully submitted,

Meg Gorecki
State's Attorney
Kane County
St. Charles, Illinois 60175
(630) 232-3500

By _____

Martin P. Moltz
Deputy Director
State's Attorneys Appellate
    Prosecutor
2032 Larkin Avenue
Elgin, Illinois    60123
(847)   697-0020

STATE OF ILLINOIS        )
                         )  SS
COUNTY OF KANE           )

### AFFIDAVIT

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, I certify that the above statements are true to the best of my knowledge and belief.

_____

Martin P. Moltz



STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
ELGIN, ILLINOIS
60120-5558

Appeal from the Circuit Court of County of Kane

    Trial Court No.: 00CF2509

THE COURT HAS THIS DAY, 09/13/01, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

    Gen. No.: 2-01-0559

    People v. Wahiid, Zakii T.

        Upon consideration of the defendant's motion for
        summary reversal and remand and the State's
        response to the motion, the State's request to
        respond to the motion no later than October 18,
        2001, is allowed.  The defendant's motion is held
        in abeyance pending receipt of the State's
        response.

                            LOREN J. STROTZ
                            Clerk

cc: G. Joseph Weller, Deputy Defender
    Paul Alexander Rogers
    Honorable Meg Gorecki
    Martin P. Moltz, Deputy Director

NO. 2-01-0559

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

SECOND JUDICIAL DISTRICT

**FILED**

OCT 0 1 2001

LOREN J. STROTZ, CLERK
APPELLATE COURT 2nd DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | Appeal from the Circuit Court of the 16th Judicial Circuit, Kane County, Illinois. |
|     Plaintiff-Appellee, | |
|     -vs- | No. 00 CF 2509 |
| ZAKII WAHIID, | Honorable James Doyle, |
|     Defendant-Appellant. | Judge Presiding. |

## MOTION TO FILE CORRECTED CONFESSION OF ERROR IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY REMAND

NOW COME the People of the State of Illinois, by Meg Gorecki, State's Attorney of Kane County, Martin P. Moltz, Deputy Director, and Sally A. Swiss, Staff Attorney, State's Attorneys Appellate Prosecutor, and move to file a Corrected Confession of Error in response to defendant's Motion for Summary Remand.

IN SUPPORT THEREOF, IT IS AVERRED THAT:

1.  On September 28, 2001, the People filed a Confession of Error in Response to Defendant's Motion for Summary Remand. Unfortunately, counsel erred in using an appellate number which reflected the appellate number on the State Appellate Defender's Motion for Summary Remand, but which was otherwise incorrect.

2.  This Corrected Confession of Error in all respects follows form to the Confession of Error filed by the People on September 28, 2001, except that the correct appellate number is now used in the caption. Hereafter follows the exact text that appeared in the initial Confession of Error filed by the People.

**RECEIVED**

OCT 0 1 2001

LOREN J. STROTZ, CLERK
APPELLATE COURT 2nd DISTRICT

EXHIBIT B

3.   The State Appellate Defender filed on September 4, 2001, a Motion for Summary Remand based upon an argument that defense counsel at the trial level failed to comply with the certification requirement of Supreme Court Rule 604(d) in that counsel did not certify that she had examined the guilty plea transcript.  The certificate, attached to defendant's Motion for Summary Remand, set forth trial counsel's statements that she had examined the court file, the record as contained in the computer banks of the Clerk of the Circuit Court, and her notes regarding the guilty plea and sentencing.  The record shows that the transcripts were filed on July 5, 2001, several weeks after the hearing on the motion to reconsider sentence.  (ROP 31, 41, 102).

4.   This Court granted the State's Attorneys Appellate Prosecutor until October 18, 2001, to file its response to the defendant's Motion for Summary Remand.

5.   I, Sally A. Swiss, staff attorney for the State's Attorneys Appellate Prosecutor, have now reviewed defendant's motion and the applicable case law.

6.   The case law is clear that there must be strict, not just substantial, compliance with Supreme Court Rule 604(d).  People v. Mast, 305 Ill. App. 3d 727, 735, 713 N.E.2d 242, 238 Ill. Dec. 996 (2d Dist. 1999), citing People v. Janes, 158 Ill. 2d 27, 33, 630 N.E.2d 790, 196 Ill. Dec. 625 (1994).  Defense counsel must certify that he or she has examined the report of proceedings of the plea of guilty, and a failure to do so does not become harmless error merely because defense counsel was present throughout the proceedings.  Mast, 305 Ill. App. 3d at 734.  Supreme Court Rule 604(d), by its language, mandates a certificate even when only the sentence is being challenged.

7.  Defense counsel at trial, Beth E. Peccarelli, did not certify that she had examined the report of proceedings of the guilty plea, and it appears from the dates involved that the report of proceedings may not have been transcribed on the date the motion to reconsider sentence was considered.

WHEREFORE, based on the foregoing, the People of the State of Illinois confess error in response to defendant's Motion for Summary Remand, and respectfully request that this Honorable Court grant defendant's motion and remand this cause for further proceedings in compliance with Rule 604(d).

Respectfully submitted,

Meg Gorecki
State's Attorney
Kane County
St. Charles, Illinois 60175
(630) 232-3500

By _____

Sally A. Swiss
Staff Attorney
State's Attorney
  Appellate Prosecutors
2032 Larkin Avenue
Elgin, Illinois 60123
(847) 697-0020

STATE OF ILLINOIS )
                  ) SS
COUNTY OF KANE    )

A F F I D A V I T

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, I certify that the above statements are true to the best of my knowledge and belief.

_____
Sally A. Swiss

This Order Is Not Precedent And Is Not To Be Cited

No. 2--01--0559

**FILED**

**DEC 2 1 2001**

IN THE

C. JANE BRADLEY, ACTING CLERK
APPELLATE COURT 2nd DISTRICT

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court ) of Kane County. |
| Plaintiff-Appellee, | ) ) |
| v. | ) No. 00--CF--2509 ) ) |
| ZAKII T. WAHIID, | ) Honorable ) James T. Doyle, |
| Defendant-Appellant. | ) Judge, Presiding. |

### SUMMARY ORDER

Defendant, Zakii Wahiid, was charged by indictment with two counts of robbery and one count of aggravated robbery. Defendant entered a non-negotiated guilty plea to the aggravated robbery charge and was subsequently sentenced to 15 years' imprisonment. Defendant filed a timely motion to reconsider sentence, which was heard and denied on May 18, 2001.

Defendant appeals from the trial court's May 18, 2001, order denying his motion to reconsider the sentence. Defendant contends that defense counsel's failure to comply with the certification requirement of Supreme Court Rule 604(d) (188 Ill. 2d R. 604(d)) requires that the court's order be summarily reversed and the cause remanded for new proceedings in compliance with Rule 604(d). The State confesses error.

This case is controlled by Supreme Court Rule 604(d) and People v. Janes, 158 Ill. 2d 27 (1994). Rule 604(d) requires

EXHIBIT C

No. 2--01--0559

defendant's attorney to "file with the trial court a certificate
that the attorney *** has examined the trial court file and report
of proceedings of the plea of guilty." 188 Ill. 2d R. 604(d). In
Janes our supreme court stated that "with the exception of the
motion requirements addressed in [People v.] Wilk, [124 Ill. 2d 93
(1988)] and [People v.] Wallace, [143 Ill. 2d 59 (1991)], the
remedy for failure to strictly comply with each of the provisions
of Rule 604(d) is a remand to the circuit court for the filing of
a new motion to withdraw guilty plea or to reconsider sentence and
a new hearing on the motion." Janes, 158 Ill. 2d at 33.

In the present case defense counsel did not certify that she
had examined the report of proceedings of the guilty plea.
Moreover, as defendant points out, the record indicates that the
transcript of the proceedings for both the guilty plea hearing and
the sentencing hearing were not filed until July 5, 2001, several
weeks after the hearing on the motion to reconsider. Therefore,
defense counsel could not have examined the report of proceedings
of the guilty plea because it would not have been transcribed prior
to May 18, 2001, when the motion to reconsider was heard.

Based on defense counsel's failure to comply with Supreme
Court Rule 604(d) by filing a certificate evidencing compliance
and, in accordance with Supreme Court Rule 23(c)(2) (166 Ill. 2d R.
23(c)(2)), we remand this cause to the circuit court of Kane County
to allow defendant to file a new motion to reconsider sentence and
for a hearing thereon pursuant to Rule 604(d).

-2-

Reversed and remanded for compliance with Rule 604(d) as directed.

BOWMAN, j., WITH GROMETER and BYRNE, JJ., concurring.

RECEIVED

JUN 2 0 2003

SAAP SECOND DISTRICT

No. 2-02-1047

IN THE

## APPELLATE COURT OF ILLINOIS

### SECOND JUDICIAL DISTRICT

| | |
|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** ) | Appeal from the Circuit Court for the 16th Judicial Circuit, Kane County, Illinois. |
| Plaintiff-Appellee, ) | |
| -vs- ) | No. 00 CF 2509. |
| **ZAKII T. WAHIID,** ) | Honorable James T. Doyle, |
| Defendant-Appellant. ) | Judge Presiding. |

## BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

G. JOSEPH WELLER
Deputy Defender

PAUL ALEXANDER ROGERS
Assistant Defender
Office of the State Appellate Defender
2010 Larkin Avenue
Elgin, Illinois 60123
(847) 695-8822

COUNSEL FOR DEFENDANT-APPELLANT

## ORAL ARGUMENT REQUESTED

EXHIBIT D

## POINTS AND AUTHORITIES

Page

**THE TRIAL JUDGE ERRED BY IMPOSING A 15-YEAR PRISON TERM, WHERE THE JUDGE RELIED ON HIS PERSONAL ESTEEM FOR THE VICTIM'S GENERATION AND INDICATED THAT A HARSH SENTENCE WAS WARRANTED BECAUSE THIS COURT HAD ERRONEOUSLY REVERSED THE DEFENDANT'S PRIOR MURDER CONVICTION**.................................................................................14

Supreme Court Rule 615(b)(4)....................................................................14

*People v. Smith*, 318 Ill. App. 3d 64, 740 N.E.2d 1210 (2nd Dist. 2000)..................14

*People v. Daniels*, 261 Ill. App.3d 695, 634 N.E.2d 4 (2nd Dist. 1994)....................14

*People v. Margentina*, 261 Ill. App.3d 247, 634 N.E.2d 29 (3rd Dist. 1994)...........14

*People v. Henry*, 254 Ill. App. 3d 899, 627 N.E.2d 225 (1st Dist. 1993).............15,19

*People v. Dempsey*, 242 Ill. App. 3d 568, 610 N.E.2d 208 (5th Dist. 1993).......15,19

730 ILCS 5/5-5-3.2(a)(8) (West 2000)........................................................15

*People v. Helm*, 282 Ill. App. 3d 32, 669 N.E.2d 111 (4th Dist. 1996)...............15-16

*People v. Wardell & Reynolds*, 230 Ill. App. 3d 1093,
   595 N.E.2d 1148 (1st Dist. 1992)....................................................16

*People v. Martin*, 119 Ill. 2d 453, 519 N.E.2d 884 (1988)................................17,19

*People v. McCain*, 248 Ill. App. 3d 844, 617 N.E.2d 1294 (2nd Dist. 1993)......17,19

*United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed. 2d 554 (1997)......17

*People v. Jackson*, 149 Ill. 2d 540, 599 N.E.2d 926 (1992).....................................17

*North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072,
   23 L.Ed. 2d 656 (1969)..............................................................19

## NATURE OF THE CASE

The defendant-appellant, Zakii T. Wahiid, pled guilty to the offense of aggravated robbery and was later sentenced to 15 years in prison.

This is a direct appeal from the judgment of the court below. No issue is raised challenging the charging instrument.

## ISSUES PRESENTED FOR REVIEW

Whether the imposition of sentence was erroneous, where the sentence was based partly on the trial judge's personal admiration for the victim's generation and his opinion that the defendant's prior murder conviction had been wrongly reversed on appeal.

2

## JURISDICTION

This is a direct appeal from a final judgment of conviction in a criminal case. The defendant pled guilty on February 1, 2001. (C. 30)  On April 11, 2001, he was sentenced to 15 years in prison. (C. 40)  He filed a timely motion to reconsider his sentence, which was denied on May 18, 2001. (C. 45-47, 53)  He then filed a timely notice of appeal, and on December 21, 2001, this Court summarily remanded the cause for further post-sentencing proceedings because trial counsel had not filed a proper certificate under Supreme Court Rule 604(d). (C. 66-67)  Trial counsel filed a 604(d) certificate on March 21, 2002. (C. 72)  On September 19, 2002, counsel indicated that the defendant would stand on the prior motion to reconsider the sentence, and the trial court again denied the motion. (C. 84; R. 125)  A notice of appeal was filed that same day. (C. 85)

This Court has jurisdiction pursuant to Article VI, Section 6, of the Illinois Constitution, and Supreme Court Rules 604(d) and 606.

## STATEMENT OF FACTS

On October 4, 2000, a complaint was filed against the defendant, 45-year-old Zakii Wahiid, charging him with aggravated robbery in connection with an incident in which he had allegedly taken money from a man named Richard Miller. (C. 3, 8) The Kane County Public Defender's Office was appointed to represent the defendant. (C. 7)    An indictment was later filed charging the defendant with one count of aggravated robbery and two counts of robbery, based on the same alleged incident. (C. 18-20) Following the indictment, the case was assigned to the Hon. James Doyle.

On February 1, 2001, the defendant pled guilty to the aggravated robbery charge without any agreement regarding the sentence. (C. 30; R. 42)    Before accepting the plea, Judge Doyle advised the defendant of the nature of the charge, the potential penalties, and the rights that he would be waiving by pleading guilty. (R. 42-45)    The defendant said that he understood his rights, that he was not under the influence of drugs or alcohol, and that his plea had not been induced by any threats or promises. (R. 44, 47)

Judge Doyle also heard a factual basis to support the plea.  According to the State, evidence could be presented to show that Mr. Miller, who was 77 years old, had been on his way into a bank in downtown Aurora when the defendant knocked him to the ground, threatened to stab him, and then took $239 from him. The State further indicated that Mr. Miller had identified the defendant in a photographic line-up and that the defendant had made an incriminating statement to the police following his arrest. (R. 45-46)

4

A presentence investigation report (PSI) was ordered and subsequently filed. (C. 31, 34) The PSI indicated that the defendant had been convicted of armed robbery in Mississippi in 1980 and driving while license suspended in Kane County in 1995. (C. 35-36) He also had been convicted in Kane County of first degree murder in 1995, but that conviction had been reversed on appeal. (C. 36)   The defendant, who had earned a G.E.D. in the 1970s, was not employed at the time of the instant offense. He had been employed as a general laborer and forklift operator through an employment service from January of 2000 until mid-September of 2000. (C. 37) He reported that he lost that job when the employer learned about the murder case. (C. 38)

A sentencing hearing was held on April 11, 2001. At the outset of the hearing, defense counsel objected to the reversed 1995 murder conviction being included in the PSI. Judge Doyle replied, "It's inappropriate for the presentence. It may be appropriate with the approach that [the prosecutor] is taking on it." (R. 52) Defense counsel further indicated that the defendant had received a 20-year prison sentence for the 1980 armed robbery case in Mississippi, but that he had been released after serving only 2 years because "there was a recantation that came forth." (R. 52)

In aggravation, the State presented testimony from the victim, Richard Miller. He testified that the incident occurred as he was walking from his car toward the bank. He was carrying a checkbook in his left hand and some car keys in his right hand. As he was about to enter the bank, the defendant jumped him from behind and knocked him down. The defendant was on top of Mr. Miller, punching him in the

5

face and body and trying to take the checkbook. The defendant also threatened to stab Mr. Miller if he did not let go of the checkbook. Mr. Miller did not see a knife in the defendant's hands, so he resisted by swinging the car keys at the defendant. Eventually, Mr. Miller lost his grip on the checkbook, and the defendant ran away with it. There was $239 in cash inside the checkbook. Mr. Miller chased the defendant but quit when he realized he would not be able to catch him. Mr. Miller never got the money back. He suffered some bruises on his face and shoulder, but did not require medical treatment. (R. 53-59)

After defense counsel stated that she did not wish to cross-examine Mr. Miller, Judge Doyle asked, "Hey, Mr. Miller, did you serve in the military service?" (R. 59) Mr. Miller told the court that he had served in the Navy from June, 1940, to January, 1948, being stationed in the Philippines for at least part of that time. (R. 59) When Judge Doyle asked what action Mr. Miller had seen, Mr. Miller replied, "Well, I was in the Air Force and I'm not wounded or nothing. I don't have any battle scars or nothing. I just served my time, went where they told me to go." (R. 59)

Officer Danny Hornback of the Aurora Police Department testified that he had been on patrol in the downtown area at the time of the incident. Mr. Miller flagged Hornback down and told him what had happened. Hornback and other officers found Mr. Miller's checkbook near a dumpster about a block from the bank, but there was no cash in the checkbook. (R. 60-62)

Officer Kevin Baxter testified that he participated in the defendant's arrest on the morning of October 2, 2000, three days after the robbery. According to Baxter,

6

the defendant jumped from a bridge into the Fox River and ran south in the middle of the river. A fire department boat arrived on the scene, and Baxter boarded the boat, which was carrying another officer and a firefighter. The boat followed the defendant to a dam in the river. The defendant jumped over the dam, landing in water approximately 6-10 feet deep. When the defendant got caught in an undertow, the firefighter jumped into the water to rescue him. As that was occurring, the motor on the boat stalled, causing the boat to be carried over the dam. The boat also got caught in the undertow. It started to take on water and nearly capsized. Using a metal pole, the other officer managed to push the boat clear of the dam, and the firefighter and the defendant were then pulled from the water. They were taken to a hospital, where the firefighter was checked for hypothermia. (R. 63-68)

Officer Tom Kinney testified that Mr. Miller identified the defendant in a photographic line-up on October 3. Kinney later advised the defendant of his rights and interviewed him. According to Kinney, the defendant first identified himself as "Sylvester Wilson," but eventually gave his correct name, explaining that he had given the other name because of the prior murder case. (R. 69-72) The defendant told Kinney that he robbed Mr. Miller because he needed money to buy medicine for his pregnant girlfriend, although he also said that he used the money to buy "some grease for his hair." (R. 73) The defendant "broke down and was crying" during the interview. (R. 74) He expressed remorse about what he had done and wanted "to make it right." (R. 74) Kinney never attempted to confirm whether the defendant's girlfriend was having health problems at the time of the incident. (R. 73-74)

7

The State's final witness in aggravation was Officer Marshall Gauer. He related that he had been involved in the "foot pursuit" of the defendant on October 2 but that he had not been one of the officers who followed the defendant into the river. (R. 75)  After the defendant was taken into custody, Gauer searched him and found "a steak type knife" in his pocket. (R. 75)  The knife was about 5 or 6 inches long, with a serrated blade. (R. 75-76)  Gauer agreed with the prosecutor's assertion that the discovery of the knife was "significant." (R. 76)  At that point, the prosecutor began to ask Gauer about his involvement in the investigation of the prior murder case, 95 CF 2305.  When defense counsel objected to that line of questioning, Judge Doyle stated, "He can testify in reference to the facts. I can take judicial notice, of course, of the occurrence. I got the file here. I can take judicial notice of the file. And I understand, like I said, I've read that opinion. I've had a copy of that opinion because we've had to address that opinion on other occasions. So I'm completely aware of the case itself." (R. 76)

Gauer proceeded to describe some of the circumstances surrounding the murder case. He had testified at the murder trial and had been present when the verdict was returned. (R. 84)  The case arose from an incident in which the defendant fatally stabbed his girlfriend, Mona Vaughn, at her apartment. (R. 77-80, 85)  Gauer interrogated the defendant a day or two after the incident. The defendant was "somewhat cooperative" and "fairly calm" during the interrogation, although he did get upset when he learned that Vaughn had died. (R. 80-85)  According to Gauer, the defendant said that he had stabbed Vaughn after taking a knife away from her. He

8

also said that Vaughn had tried to cut him with a "box knife" one day prior to the fatal incident. (R. 82-83, 85) Gauer could not recall whether he had spoken to a witness who reported seeing Vaughn trying to stab the defendant at a particular location, but he acknowledged that he might have spoken to that witness. The defendant did have some cuts on his hands when Gauer saw him. The cuts were not fresh. (R. 86) Gauer testified that Vaughn and the defendant had been involved in "two or three incidents of domestic violence over a two or three day period." (R. 85)

After defense counsel indicated that there would be no evidence in mitigation, the prosecutor recommended a sentence of 15 years in prison. The prosecutor argued that none of the statutory factors in mitigation applied and that there were no circumstances excusing the offense. (R. 87-93) In reviewing the statutory factors in aggravation, the prosecutor referred to "number eight," which applies when the offense is committed against a person over 60 years of age. (R. 90) The prosecutor also asked the court to consider how the defendant had "put the lives of the officers and the firefighter into danger" when he jumped into the river. (R. 92) Citing the 1980 armed robbery conviction, the prosecutor described the defendant as a "violent person" and argued that he had "a history of very serious offenses." (R. 90, 93) The defendant's conduct "where he murdered somebody" could be used in aggravation, the prosecutor contended, even though the conviction was reversed because of a speedy trial violation. (R. 88)

Defense counsel argued that the murder conviction should not be considered "in light of its reversal." (R. 94) The rest of the defendant's criminal history, counsel

9

maintained, did not reveal "the lifetime of crime that the State is portraying here." (R. 95) Defense counsel acknowledged that the defendant's conduct was wrong, but she noted that the defendant had admitted his guilt and suggested that his conduct was mitigated by the situation he was facing with respect to his pregnant girlfriend. "[I]n his mind, at least," counsel argued, the situation was "prompting him or giving him provocation to act in the way he did." (R. 93) According to defense counsel, an appropriate sentence would not exceed 6 years. (R. 95)

In a statement in allocution, the defendant said that he had trouble finding employment because of the 1995 murder conviction. He eventually applied for a job without disclosing that he had been in prison in connection with the murder case. The company later found out about the murder case, however, and he got fired. At the time of the offense, he was making $35.00 per day working for a "labor temp service." (R. 96-97) He needed money for his pregnant girlfriend and tried unsuccessfully to get help from some local churches. (R. 97)

Judge Doyle then imposed the sentence. He began by remarking that the case "absolutely stands out in my courtroom as what I would say it's [sic] absolute good versus absolute evil." (R. 98) "I see," Judge Doyle continued, "all this incredible courage versus incredible cowardice." (R. 98) According to Judge Doyle, the "absolute good" was Mr. Miller, who "represents what I would call the great generation and what has been defined as a member of that great generation. I think you look at him as an American hero." (R. 98) Judge Doyle found that Mr. Miller "displayed incredible courage during his beating and attack." (R. 98) "You sit down

10

and you have to admire that generation," Judge Doyle stated. (R. 98)  Judge Doyle

described the defendant's conduct as "another display of cowardice" and contrasted

it with the "incredible heroism by the police and fire department." (R. 98-99)

Referring to Gauer's testimony regarding the murder case "and the statements

elicited in reference to his conduct in [the] murdering of his girlfriend at the time,"

Judge Doyle stated:

> I recognize the fact that the trial was on this floor.  Judge Hudson
> presided over it after the trial had been set by Judge Puklin.
>
> And I know that at the time when we were setting trials and we're
> checking on times and everybody agrees to the trial date.  And I know
> that the Appellate Court reversed, but I also notice our current, now
> Supreme Court Justice Thomas, was on that panel and he wrote a
> strongly worded dissent disagreeing with the other two justices that
> reversed this case that allowed him out.
>
> I'm not going to comment on the opinion.  I think that the Supreme
> Court Justice's Thomas's opinion on it, I happen to agree with [it]
> strongly.  And I've read the opinion and I'm aware of it.  But we do live
> with the law as the law is dictated here.
>
> The testimony is accurate.  I wouldn't use that case against him, but it
> came in by way of the detective's testimony and I'm allowed under the
> law to use that prior crime to come in.

(R. 99-100)

Judge Doyle agreed with the State's position regarding the lack of mitigation

and found that the "[f]actors in aggravation are very high." (R. 100)  In particular,

Judge Doyle found that the defendant's conduct "caused or threatened serious harm,"

that he had a history of "prior delinquency," that a deterrent sentence was necessary,

and that the victim was a "senior citizen." (R. 100-01)  Judge Doyle told the

defendant, "You know, Zakii, everything about you emanates evil," and "[M]y biggest regret is that I can't spend a couple million dollars to keep you there [in prison] the rest of your life." (R. 101)

After making those comments, Judge Doyle sentenced the defendant to "the maximum, which is 15 years." (C. 40; R. 101-02)   According Judge Doyle, that penalty "doesn't even come close to the sentence that would be appropriate for your background, your history, your conduct in this case. But I'm stuck with it." (R. 101)

Judge Doyle immediately advised the defendant of his right to appeal, informing him that he could not appeal unless he first filed a timely motion to withdraw the guilty plea. (R. 102)

On April 17, 2001, Judge Doyle had the defendant brought back for further admonishments. He advised the defendant that he could preserve his right to appeal by filing either a motion to withdraw the plea or a motion to reconsider the sentence. (R. 107) A motion to reconsider was filed the next day. The motion alleged that the sentence was excessive and that the court had erred by considering "the overturned murder conviction." (C. 46-47)

A hearing on the motion to reconsider was held on May 18, 2001.  At the outset of the hearing, defense counsel filed a certificate purporting to show compliance with Supreme Court Rule 604(d).  Following brief argument by the parties, Judge Doyle denied the motion without further comment. (C. 55; R. 111-12)

The defendant filed a timely notice of appeal. (C. 54)  On December 21, 2001, this Honorable Court entered a summary order. Finding that defense counsel had not

12

filed a proper 604(d) certificate, this Court remanded the cause for the defendant "to file a new motion to reconsider sentence and for a hearing thereon pursuant to Rule 604(d)." (C. 66-67)

On March 21, 2002, defense counsel filed a new 604(d) certificate. (C. 72) No new motion to reconsider was filed on remand. On September 19, 2002, defense counsel indicated that the defendant, who was present in open court, would stand on the prior motion. (C. 84; R. 125) Counsel argued that Judge Doyle had erred by considering the evidence of the murder case and that the sentence was excessive in light of the defendant's "dire circumstances" and "history of substance abuse." (R. 125) Stating that he had considered the latter factors, but not "the case that was reversed," Judge Doyle denied the motion again, and the defendant promptly appealed. (C. 84-85; R. 126)

## ARGUMENT

**THE TRIAL JUDGE ERRED BY IMPOSING A 15-YEAR PRISON TERM, WHERE THE JUDGE RELIED ON HIS PERSONAL ESTEEM FOR THE VICTIM'S GENERATION AND INDICATED THAT A HARSH SENTENCE WAS WARRANTED BECAUSE THIS COURT HAD ERRONEOUSLY REVERSED THE DEFENDANT'S PRIOR MURDER CONVICTION.**

The record shows that Judge Doyle's decision to impose the 15-year prison term was improperly motivated by his admiration for the victim's entire generation and his disagreement with this Court's reversal of the defendant's prior murder conviction. Accordingly, this Court should either reduce the sentence pursuant to Supreme Court Rule 615(b)(4) or vacate the sentence and remand the cause for a new sentencing hearing.

**Standard of review:** A sentence may be disturbed if it represents an abuse of discretion or rests on improper factors. *People v. Smith*, 318 Ill. App. 3d 64, 74, 740 N.E.2d 1210, 1218 (2nd Dist. 2000). An abuse of discretion occurs if the sentence is "contrary to the purpose and spirit of the law," *People v. Daniels*, 261 Ill. App.3d 695, 699, 634 N.E.2d 4, 6-7 (2nd Dist. 1994), and may be found even if the sentence is within statutory limits. *People v. Margentina*, 261 Ill. App.3d 247, 249, 634 N.E.2d 29, 31 (3rd Dist. 1994).

Here, Judge Doyle acted improperly by relying on his own views regarding the moral character and historical importance of the victim's entire generation. Judge Doyle commended the victim for showing "incredible courage" during the offense, (R. 98), but did not stop with that individualized finding. According to Judge Doyle,

14

the victim represented "absolute good" by being a member of "the great generation," the generation "you have to admire." (R. 98)  In effect, Judge Doyle considered the defendant's conduct to be particularly worthy of punishment because of the victim's membership in a favorite class.

A sentence should not be based on the trial judge's personal attitudes or "subjective feelings." *People v. Henry*, 254 Ill. App. 3d 899, 905, 627 N.E.2d 225, 229-30 (1st Dist. 1993); *People v. Dempsey*, 242 Ill. App. 3d 568, 597-98, 610 N.E.2d 208, 227 (5th Dist. 1993).  In this case, the sentence reflects Judge Doyle's bias in favor of the victim's generation.  Under 730 ILCS 5/5-5-3.2(a)(8) (West 2000), Judge Doyle had the right to consider the victim's age as an aggravating factor, and the State asked him to consider that statutory factor. (R. 90-91)  But Judge Doyle did not simply consider the victim's age:  he considered the victim's membership in a particular generation that he believed warranted special honor or respect.  Age and membership in a particular generation are not the same thing.  Subsection (a)(8) refers to victims who are 60 years of age or older, not victims who were born between 1915 and 1935. While a sentencing court may consider nonstatutory factors in aggravation, it must rely on evidence that is both reliable and relevant. *Dempsey*, 242 Ill. App. 3d at 598, 610 N.E.2d at 227. Judge Doyle's personal opinion regarding the goodness of the victim's entire generation is no more relevant than the trial judge's belief in *Henry* that the crime there was "disgusting," which necessitated a new sentencing hearing in that case.  254 Ill. App. 3d at 905, 627 N.E.2d at 229-30.

This is not a case like *People v. Helm*, 282 Ill. App. 3d 32, 669 N.E.2d 111 (4th

Dist. 1996), which held that the trial court could properly consider the victim's

gender, a nonstatutory factor at that time. The rationale in *Helm* was that gender

could be used as a proxy for vulnerability. 282 Ill. App. 3d at 35, 669 N.E.2d at 113-

14. The same could be said for the victim's age, but there is a big difference between

using age as a token for vulnerability and using membership in a particular generation

as a token for greatness.

In *People v. Wardell & Reynolds*, 230 Ill. App. 3d 1093, 1102-03, 595 N.E.2d

1148, 1154-55 (1st Dist. 1992), two defendants convicted of aggravated sexual assault

and other offenses were given new sentencing hearings because the trial court

considered the cross-racial nature of the crimes. The instant case presents a

comparable situation. In *Wardell & Reynolds*, the trial judge indicated that the

harsher punishment was in order because the victims belonged to a certain race, while

the trial judge here emphasized that the victim belonged to a particular generation.

The error in both cases is the same: using stereotypes and personal feelings to

determine the sentence.

The defendant in no way means to trivialize the sacrifices and

accomplishments of the victim's generation or to suggest that it is unworthy of

respect. The point, however, is not whether Judge Doyle's admiration for that

generation is widely-shared or justified, but whether that attitude should have any

bearing on the appropriate sentence. Crime victims can be categorized according to

all sorts of social or demographic classes that many people might hold in high esteem,

but others might not, *e.g.*, farmers, single-parents, intellectuals, or followers of a

16

certain religion. Absent specific legislative authorization to consider the victim's membership in a particular class as a factor in aggravation, a trial court's personal opinions on the subject should not count, even if they reflect majority sentiments.

The consideration of this improper factor warrants relief even though it was not raised as error below. Because the defendant's fundamental right to liberty is at stake, this Court may relax the waiver rule and address the issue under the plain error doctrine. *People v. Martin*, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886 (1988); *People v. McCain*, 248 Ill. App. 3d 844, 850, 617 N.E.2d 1294, 1299 (2nd Dist. 1993).

The defendant did raise an objection below to Judge Doyle's consideration of the prior murder conviction. Specifically, the defendant argued that the conviction should not have been included in the PSI, that it was improper for Officer Gauer to testify regarding the murder case, and that Gauer's testimony "consisted of hearsay and vague recollections." (C. 46; R. 52, 76, 94, 125) Judge Doyle agreed that the fact of the conviction itself could not be used, but ruled that the State could present evidence regarding the defendant's conduct in the prior case. (R. 52, 76) While pronouncing the sentence, Judge Doyle expressly relied on Gauer's testimony. (R. 99)

In light of *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed. 2d 554 (1997), and *People v. Jackson*, 149 Ill. 2d 540, 599 N.E.2d 926 (1992), the defendant cannot renew those objections in this Court. Under *Watts* and *Jackson*, a sentencing court may consider reliable evidence of a prior criminal act by the defendant, even if the evidence is insufficient to prove the defendant guilty of the prior offense beyond a reasonable doubt.

17

Here, the defendant had been convicted of first degree murder following a jury trial, but this Court reversed the conviction because of a speedy trial violation. *People v. Wahiid*, No. 2-97-0110 (Rule 23 order, Nov. 19, 1998). During the proceedings below, Judge Doyle indicated that he was familiar with that case and that he had read the file. (R. 76) Judge Doyle did not specifically state that he had read the trial transcripts, but the transcripts presumably were included in the record that would have been returned to the trial court following the issuance of the mandate in the prior case. Even if Judge Doyle did not read them, there would be little point in remanding the case so that he could do so. The jury in the murder case found the evidence sufficient to support a first degree murder conviction, and the defendant did not contest the sufficiency of the evidence when he appealed that case. *Wahiid*, slip op. at 1-6. Thus, whether Gauer's testimony at the sentencing hearing was adequate to prove the prior conduct is a moot point. Under the circumstances, Judge Doyle would be justified in finding that the State had established the prior conduct by a preponderance of the evidence.

Nevertheless, the record shows that Judge Doyle did more than find that there was sufficient evidence of the murder. He expressed his strong disagreement with this Court's decision to reverse the murder conviction. In short, Judge Doyle concluded that this Court had wrongly let the defendant get away with murder, and his comments implied that he intended to correct what he perceived as an injustice by imposing the harshest possible sentence in this case. (R. 99-100) In that respect, Judge Doyle erred. Just as due process prohibits a court from retaliating against a

18

defendant by imposing a more severe sentence following a remand for a new trial or resentencing, *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L.Ed. 2d 656 (1969), so should it prohibit a court from trying to even the score by imposing a more severe sentence because, in the court's personal opinion, the defendant got an undeserved break when a prior conviction was overturned. Regardless of any waiver resulting from the defendant's failure to raise this specific objection below, this Court should review the issue as plain error. *Martin*, 119 Ill. 2d at 458, 519 N.E.2d at 886; *McCain*, 248 Ill. App. 3d at 850, 617 N.E.2d at 1299.

The problem was not that Judge Doyle considered the murder case, but that he used it in an improper way. As noted above, a sentence may not be based on the trial judge's personal views. *Henry*, 254 Ill. App. 3d at 905, 627 N.E.2d at 229-30; *Dempsey*, 242 Ill. App. 3d at 597-98, 610 N.E.2d at 227. Judge Doyle professed to be bound by the law and acknowledged that he could not use the murder conviction itself as an aggravating factor, (R. 100), but nonetheless offered a gratuitous criticism of this Court's decision reversing the murder conviction. Judge Doyle had no legitimate reason to express that criticism in open court. While Judge Doyle could rely on the evidence of the defendant's prior conduct, he could not punish the defendant for what he regarded as this Court's error. Simply put, it was inconsistent for Judge Doyle to say, on the one hand, that he would not use the murder conviction against the defendant, and then proceed, on the other hand, as if that conviction would have remained in effect if only this Court had correctly applied the law. Whether Judge Doyle agreed with this Court's ruling was simply irrelevant.

19

For these reasons, this Court should vacate the defendant's 15-year prison term and either reduce the sentence or remand the cause for a new sentencing hearing.

## CONCLUSION

For the foregoing reasons, Zakii T. Wahiid, Defendant-Appellant, respectfully requests that this Court vacate his 15-year prison term and either reduce the sentence or remand the cause for a new sentencing hearing.


Respectfully submitted,

G. Joseph Weller, Deputy Defender

Paul Alexander Rogers, Assistant Defender
OFFICE OF THE STATE APPELLATE DEFENDER
2010 Larkin Avenue
Elgin, Illinois 60123
(847) 695-8822

COUNSEL FOR DEFENDANT-APPELLANT

# *APPENDIX*

Table of Contents of the Record on Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Indictment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A3

Guilty Plea  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A6

Sentencing Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A7

Motion to Reconsider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A8

604(d) Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A10

Order denying motion to reconsider  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A11

Notice of Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A12

## TABLE OF CONTENTS OF THE RECORD ON APPEAL

**COMMON LAW RECORD:**

| Page | Date Filed | Document |
|------|-----------|----------|
| C1 | 09-04-01 | Cover sheet |
| C2 | | Placita |
| C3 | 10-04-00 | Complaint |
| C5 | 10-04-00 | Remand to jail |
| C7 | 10-04-00 | Order appointing PDO |
| C8 | 10-04-00 | Arrest warrant |
| C9 | 10-17-00 | Bond reduction motion |
| C10 | 10-18-00 | Remand to jail |
| C11 | 10-17-00 | Preliminary hearing order |
| C12 | 10-25-00 | Preliminary hearing order |
| C13 | 10-25-00 | Preliminary hearing order |
| C14 | 11-01-00 | Preliminary hearing order: bond reduction denied |
| C15 | 11-08-00 | Preliminary hearing order |
| C16 | 11-09-00 | SOJ request |
| C17 | 11-09-00 | Order: cont. to 11-30/assigned to Judge Doyle |
| C18 | | Indictment dated 11-28-00 |
| C22 | | Felony case info. sheet |
| C23 | 11-30-00 | Arraignment order |
| C25 | 11-30-00 | Order: B/A continued to 12-19 |
| C26 | 12-19-00 | Order: M/D continued to 1-11 for status |
| C27 | 01-11-01 | Order: M/D continued to 2-1 for status |
| C28 | 01-25-01 | Notice of filing/State's supp. discovery answer |
| C30 | 02-01-01 | Guilty plea |
| C31 | 02-01-01 | Order for PSI |
| C32 | 02-01-01 | Order: continued to 4-11 for sentencing |
| C33 | 03-28-01 | Notice to appear: witnesses for sent. hearing |
| C34 | 04-11-01 | PSI |
| C40 | 04-11-01 | Judgment order |
| C41 | 04-11-01 | Mittimus to DOC |
| C43 | 04-16-01 | Order: continued to 4-17 for status |
| C44 | 04-17-01 | Order: cont. to 5-18/deft. advised of appeal rights |
| C45 | 04-18-01 | Notice/Motion to Reconsider Sentence |
| C48 | 04-27-01 | Order for habeas writ, etc. |
| C52 | 05-08-01 | State's Attorney's Statement to DOC |
| C53 | 05-18-01 | Order: motion to reconsider denied |
| C54 | 05-18-01 | Notice of Appeal |
| C55 | 05-18-01 | 604(d) certificate |
| C56 | 05-18-01 | Petition/order appointing counsel on appeal, etc. |
| C58 | 06-01-01 | Letter from OSAD to clerk |

**COMMON LAW RECORD:**

| Page | Date Filed | Document |
|------|-----------|----------|
| C59 | 06-13-01 | Verification of filing re: ROPs |
| C61 | 07-16-01 | Appellate court order re: due dates |
| C62 | 08-13-01 | Certificate in lieu of record |
| C64 | 08-14-01 | Verification of filing ROP |
| C65 | 01-22-02 | Mandate and Summary Order: 604(d) remand |
| C68 | 01-24-02 | Order: M/D continued to 3-21 |
| C69 | 03-04-02 | Petition for habeas, etc. |
| C72 | 03-21-02 | 604(d) certificate |
| C73 | 03-21-02 | Order: B/A continuance to 5-23 |
| C74 | 05-02-02 | Receipt of record |
| C75 | 05-23-02 | Order: B/A continuance to 7-18 |
| C76 | 07-19-02 | Order: B/A continuance to 9-19 |
| C77 | | Writ of habeas corpus dated 8-8 |
| C78 | 08-08-02 | Petition for habeas, etc. |
| C83A | 09-04-02 | Order to correct scrivener's error |
| C84 | 09-19-02 | Order: motion to reconsider denied |
| C85 | 09-19-02 | Notice of Appeal |
| C86 | 09-19-02 | Order appointing appellate counsel, etc. |

**Reports of Proceedings**

| Page | Date | Nature of Proceeding |
|------|------|----------------------|
| R1 | 10-17-00 | Continuance |
| R5 | 10-25-00 | Continuance |
| R9 | 11-01-00 | Bond reduction hearing |
| R19 | 11-08-00 | Continuance |
| R23 | 11-09-00 | SOJ motion/reassignment/continuance |
| R29 | 11-30-00 | Arraignment on indictment |
| R34 | 12-19-00 | Continuance |
| R37 | 01-11-01 | Continuance |
| R41 | 02-01-01 | Guilty Plea hearing |
| R51 | 04-11-01 | Sentencing hearing |
| R106 | 04-17-01 | Admonishments re: right to appeal |
| R110 | 05-18-01 | Hearing on motion to reconsider sentence |
| R115 | 03-21-02 | Remand |
| R118 | 05-23-02 | Continuance |
| R123 | 09-19-02 | Hearing on motion to reconsider sentence |

A2

IN THE CIRCUIT COURT FOR SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS
CRIMINAL DIVISION

PEOPLE OF THE STATE OF ILLINOIS    vs    ZAKII TAWWAB WAHIID

Defendant,

General Number 00 CF 2509

INDICTMENT

THE GRAND JURY CHARGES THAT:

Count One

On or about _____ September 29, 2000 _____

_____ Zakii Tawwab Wahiid _____

committed the offense of __ Aggravated Robbery, __

_____ Class 1 Felony _____

in violation of Chapter __ 720 __, Section 5/18-5(a) __ of the

Illinois Compiled Statutes, as amended, in that

said defendant, while indicating verbally to Richard Miller that he had

a knife, took property, being United State currency, from the person of

Richard Miller, by threatening the imminent use of force.

All of the foregoing occurred in Kane County, Illinois.



A3

Page One.

Multiple Count Indictment

Indictment:   PEOPLE V. ___ZAKII TAWWAB WAHIID___ , Pg. _2_

General Number _00 CF 2509_

THE GRAND JURY CHARGES THAT:

## Count Two

On or about _____September 29, 2000_____

_____Zakii Tawwab Wahiid_____

committed the offense of _Robbery,_____

_____Class 2 Felony_____

in violation of Chapter _720_, Section _5/18-1(a)_____ of the

Illinois Compiled Statutes, as amended, in that

said defendant, knowingly took property, being United States currency,

from the person of Richard Miller, by the use of force.

All of the foregoing occurred in Kane County, Illinois.

A4

Multiple Count Indictment

Indictment:   PEOPLE V.   ZAKII TAWWAB WAHIID_____ ,   Pg. __3__

General Number_00 CF 2509

THE GRAND JURY CHARGES THAT:

### Count Three

On or about _____ September 29, 2000 _____

_____ Zakii Tawwab Wahiid _____

committed the offense of __ Robbery, _____

_____ Class 2 Felony _____

in violation of Chapter __720__ , Section __5/18-1(a)_____ of the

Illinois Compiled Statutes, as amended, in that

said defendant, knowingly took property, being United States currency

from the person of Richard Miller, by threatening the imminent use of

force.

All of the foregoing occurred in Kane County, Illinois.

A TRUE BILL

_Gene Anderson_
Foreperson of the Grand Jury

A5

# IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS Case No. 00 CF 2509

| | | |
|---|---|---|
| Plaintiff(s) *People* | Defendant(s) *Zakii Wahid* | Clerk *Seyller* Kane Cou... Court |
| Pltf. Atty. *Crimmins* | Deft. Atty. *Peccarelli* | FEB 0 1 2001 |
| Judge *Doyle* | Court Reporter *RoseAnn* — Deputy Clerk *Janice* | FILED 028 ENTERED |
| A copy of this order ☐ should be sent ☐ has been sent to: ☐ Pltf. Atty. ☐ Deft. Atty. ☐ Other | | File Stamp |

## PLEA OF GUILTY

THE COURT HAVING ADDRESSED THE DEFENDANT IN OPEN COURT FINDS;

   That the defendant was advised of and understands that the state has the burden of proving him/her guilty beyond a reasonable doubt; that he/she is presumed innocent until proven guilty, the nature of the charge(s) and the possible punishment that might be imposed by the Court, including, if applicable, extended term or consecutive sentences and the right:

   (A) To plead not guilty or to persist in that plea if already made.
   (B) To present evidence in his/her own defense.
   (C) To use the subpoena power of the Court.
   (D) To a jury trial or a trial before the judge without a jury.
   (E) To confront the witnesses against him/her.
   (F) To counsel and if indigent, to appointed counsel.
   (G) To pursue an appeal within 30 days, and if indigent, to a transcript of all the proceedings in his/her case without charge to assist in the appeal process.

☐   That the defendant has waived right to counsel.

☐   That the defendant understands that if he/she is not a U.S. citizen that this plea could result in his/her deportation.

☑   That a plea agreement as stated to the Court was voluntarily arrived at: The defendant has stipulated that if witnesses were called that they would testify competently to sufficient facts to support a finding of guilty to the offense(s) of:

*Aggravated Robbery* _____ Class *I* _____ Statute *720 ILCS §5/18-5*
Count _____   ☐ Original ☐ Amended

☑   That the defendant pleads guilty to the offense(s) stated above, and waives his rights as stated in (A) thru (E) above.

~~☐   That the defendant agrees to the imposition of a specific sentence and waives the right to a pre-sentence investigation and an aggravation and mitigation hearing.~~

~~☐   That the Court has considered the history of criminality of the defendant, statements of the State, Defense counsel and the defendant regarding the offense(s) charged, victim input and recommendations of arresting authority.~~

☑   That the defendant makes an unconditional (COLD) plea(s) to the charge(s) and asserts the right to a pre-sentence and aggravation and mitigation hearing.

☑   That the probation office of this Court is directed to conduct a pre-sentence investigation. A written copy is to be furnished to the Court, the defendant and the State's Attorney not less than three (3) Court days before the date set herein for sentencing.

☑   Sentencing hearing is continued to *April 11, 2001* ___ at *9:00 A*. m. in Rm. *311*

_____
Defendant's Signature *AG*        Date *2-1-01*

GPLEA

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

*Clerk of the Circuit Court*
*Kane County, IL*

*APR 1 1 2001*

GEN. NO. 00CF 2509

THE PEOPLE OF ILLINOIS    **FILED**    092    VS. Zakii Wahiid

**ENTERED**

PLAINTIFF    DEFENDANT

| JUDGE Doyle | COURT REPORTER Grady R | PLTF. ATTY. Coleman    X |
| DEPUTY CLERK Merse | A copy of this order ☐ should be sent to: ☐ has been sent to: | — CHECK IF PRESENT — DEFT. ATTY. Piccarilli    X |

intwj offense: 9/22/00

**JUDGMENT ORDER**
Illinois Department of Corrections

Crime For Which Defendant Convicted:
Aggravated Robbery
Chapter and Section:
720 ILCS 5/18-5 (Class1)

Credit for Time Served:
☒ Kane County Jail:
196 Day(s) _____ Month(s) ☐ NONE
☐ To be determined by Sheriff

☐ Other Credit:_____
(Type/Place/Agency)

_____ Day(s) _____ Month(s) ☐ NONE

Costs of These Proceedings:

Fine                          $ _____

Circuit Clerk's Costs         _____

State's Attorney's Costs      _____

Sheriff's Costs               _____

Surcharge                     _____

Sub-total _____ (A)

Bond on Deposit    $ _____

Less 10% (if applicable) (_____)

Credit Amount (_____) (B)

BALANCE DUE (A–B)    $ _____

Balance Due:
☐ Instanter ☐ _____, 19__

Sentence of the Court:

_____ Days(s) _____ Month(s) 15 Year(s)
(if applicable):
☐ Concurrent ☐ Consecutive with Case Number(s):

☐ Finding of guilty but mentally ill

Municipality of Arrest (if over 25,000 pop.):
Aurora

THE COURT being advised in the premises;

IT IS HEREBY ORDERED that the defendant named herein is guilty of the crime set forth in this case; and,

IT IS FURTHER ORDERED that the defendant be given credit for such time served as determined by the Court; and, that the defendant pay all costs of these proceedings.

NOW, THEREFORE, is is Ordered, Adjudged and Decreed that the defendant be sentenced to the Illinois Department of Corrections for the crime he/she stands convicted, for a term of days, months or years as set forth herein; and,

FURTHER, that the defendant be taken from the bar of this Court to the Kane County Jail, and from there, by the Sheriff of Kane County, to the nearest reception and classification center of the Illinois Department of Corrections, and the Illinois Department of Corrections is hereby required and commanded to take the body of the defendant and confine him/her in a Penitentiary or State Penal Farm, according to law, from and after delivery thereof until discharged according to law, provided such term of imprisonment shall be not less than nor more than the term of days, months or years for which the defendant stands convicted.

Date    4-11-01

Enter: _____
(Judge)

_____

A7

IN THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,          )
                                          )
                    Plaintiff,            )
                                          )
                                          )   General Number 00 CF 2509
vs.                                       )
                                          )
Zakii Wahiid,                             )
                                          )
                    Defendant.            )

APR 1 8 2001

ENTERED

### DEFENDANT'S MOTION TO RECONSIDER SENTENCE

NOW COMES the defendant, Zakii Wahiid, by and through his attorney, Beth E.
Peccarelli of the Kane County Public Defender, and moves this Honorable Court to reconsider
the sentence imposed upon the defendant. In support of this motion, the defendant asserts as
follows:

1.      That the defendant plead guilty of Aggravated Robbery, a Class 1 felony, before the
Honorable Judge Doyle, on February 1, 2001;

2.      That the defendant was sentenced to a term of fifteen years on the charge of Aggravated
Robbery on April 11, 2001 by this Court;

3.      That the Court erred in sentencing the defendant to a term of years, the maximum, in
light of the charge and the current state of the law;

4.      That the sentence of fifteen years is excessive in light of the defendant's criminal history,
which included a twenty one year old armed robbery for which the defendant served a fraction of
the sentence and a murder charge that was reversed for a constitutional speedy trial violation;

5.      That the Court erred in considering the overturned murder conviction as prior criminal
history, over the defense's objection. Said incident was presented through testimony of an
investigating officer from the original case and consisted of hearsay and vague recollections.

6.      That the Court failed to adequately assess the defendant's dire situation at the time
of the instant offense, his expression of remorse and his willingness to take responsibility
for his actions;

7.      That this sentence is not formulated to restore the defendant to useful citizenship.

1 of 2 pages

A8

WHEREFORE, the defendant respectfully prays that this Honorable Court enter an order which will re-sentence the defendant to the minimum sentence allowed pursuant to statute or some lesser sentence of years.

Respectfully submitted,

BETH E. PECCARELLI
Assistant Public Defender
Kane County Public Defender
#06187655

2 of 2 pages

A9

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS, )
                                 Plaintiff, )
                                 )       General Nos.  00 CF-2300
vs.                              )
                                 )
Zakii Wahiid,                    )
                                 Defendant. )

## CERTIFICATE PURSUANT TO SUPREME COURT RULE 604(d)

I, BETH PECCARELLI, Assistant Public Defender in the County of Kane, do hereby state as follows:

1.      That I have personally consulted with the defendant, Zakii Wahiid, in person, by phone and by mail, to ascertain his contentions of error in the entry of the instant plea of guilty and Court sentence on that plea;

2.      That I have examined the trial court file, as well as examined the record of the proceedings for this matter, including an appeal, and the information contained in the computer banks of the Clerk of the Circuit Court;

3.      That I have personally written and filed the timely motion to reconsider sentence previously which was argued without a Certificate pursuant to Court Rule 604(d). I have reviewed all the information gathered from the record to the extent necessary to adequately represent his contentions of error in the proceedings;

4.      That I was the attorney of record throughout the proceedings and have reviewed relevant Court transcripts regarding the past proceedings, sentencing hearing and the appeal;

5.      That I have addressed the defendant's right to move to withdraw his plea of guilty in the instant matter and am proceeding in accordance with the defendant's wishes

_Beth E. Peccarelli_
BETH E. PECCARELLI
Assistant Kane County Public Defender
Atty. # 06187655

SUBSCRIBED AND SWORN to
before me this 20th day of March, 2002.

_Maria Chapa_
NOTARY PUBLIC

**"OFFICIAL SEAL"**
MARIA CHAPA
Notary Public   State of Illinois
My Commission   Expires 08/28/04

1 page of 1 page(s)

A10

NO. 2-02-1047

IN THE

APPELLATE COURT OF THE STATE OF ILLINOIS

SECOND JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of the 16th Judicial Circuit, |
| Plaintiff-Appellee, | ) ) | Kane County, Illinois. |
| -vs- | ) ) | No. 00 CF 2500 |
| ZAKII T. WAHIID, | ) ) | Honorable James T. Doyle, |
| Defendant-Appellant. | ) | Judge Presiding. |

BRIEF AND ARGUMENT FOR PLAINTIFF-APPELLEE

<div style="margin-left:40%">

Meg Gorecki
State's Attorney
Kane County
St. Charles, Illinois 60175
(630) 232-3500

</div>

Norbert J. Goetten, Director
State's Attorneys Appellate
  Prosecutor

Martin P. Moltz
Deputy Director
State's Attorneys
  Appellate Prosecutor
2032 Larkin Avenue
Elgin, Illinois 60123
(847) 697-0020

Bonnie McGrath

OF COUNSEL

COUNSEL FOR PLAINTIFF-APPELLEE

EXHIBIT E

## POINT AND AUTHORITIES

PAGE

THE TRIAL JUDGE DID NOT ERR BY IMPOSING A 15-YEAR
PRISON TERM ON THE DEFENDANT.    . . . . . . . . . . . .  3

People v. Enoch, 122 Ill.2d 176, 522 N.E.2d 1124,
        119 Ill.Dec. 265 (1988) . . . . . . . . . . . . . .  3

People v. Martin, 119 Ill.2d 453, 519 N.E.2d 884,
        116 Ill.Dec. 669 (1988) . . . . . . . . . . . . . .  3

People v. McCain, 248 Ill.App.3d 844, 617 N.E.2d 1294,
        187 Ill.Dec. 573 (2d Dist. 1993) . . . . . . . . . 3, 4

People v. Smith, 318 Ill.App.3d 64, 740 N.E.2d 1210,
        251 Ill.Dec. 639 (2d Dist. 2000) . . . . . . . . . .  4

People v. Daniels, 261 Ill.App.3d 695, 634 N.E.2d 4,
        199 Ill.Dec. 404 (2d Dist. 1994) . . . . . . . . . .  4

730 ILCS 5/5-5-3.2(a)(8)(West 2000) . . . . . . . . . . .  5

People v. Dempsey, 242 Ill.App.3d 568, 610 N.E.2d 208,
        182 Ill.Dec. 784 (5th Dist. 1993) . . . . . . . . .  8

People v. Henry, 254 Ill.App.3d 899, 627 N.E.2d 225,
        194 Ill.Dec. 109 (1st Dist. 1993) . . . . . . . . .  8

People v. Wardell, 230 Ill.App.3d, 595 N.E.2d 1148,
        172 Ill.Dec. 478 (1st Dist. 1992) . . . . . . . . .  8

People v. Ryan, 336 Ill.App.3d 268, 783 N.E.2d 187,
        270 Ill.Dec. 612 (2d Dist. 2003) . . . . . . . . . .  9

People v. Bouyer, 329 Ill.App.3d 156, 769 N.E.2d 145,
        263 Ill.Dec. 943 (2d Dist. 2002) . . . . . . . . . .  9

## NATURE OF THE CASE

The defendant-appellant, Zakii T. Wahiid, pled guilty to the offense of aggravated robbery and was later sentenced to 15 years in prison. This is a direct appeal from the judgment of the court below. No issue is raised challenging the charging instrument.

## ISSUE PRESENTED FOR REVIEW

Whether the imposition of a 15-year sentence on the defendant was erroneous in a case, where the trial judge expressed mere admiration for the victim's generation and an opinion that the reversal of the defendant's prior conviction for murder was erroneous.

ARGUMENT

THE TRIAL JUDGE DID NOT ERR BY IMPOSING A 15-YEAR SENTENCE ON THE DEFENDANT.

The defendant in the instant case seeks to have Your Honors either reduce his 15-year sentence, or vacate his sentence and remand the cause for a new sentencing hearing. The defendant maintains that such action is required because the trial judge who sentenced him expressed a momentary admiration for the victim's generation--and also expressed the opinion that the reversal of the defendant's prior conviction for murder (due to speedy trial violations) was erroneous. The expression of both opinions during the course of the defendant's hearing does not indicate that the imposition of the sentence on the defendant was improper or erroneous.

The defendant admits that this Court could decline to consider his argument due to him not objecting to these specific points in the record. This would constitute a waiver of the issues. People v. Enoch, 122 Ill.2d 176, 186, 522 N.E.2d 1124, 119 Ill.Dec. 265 (1988). However, he relies on People v. Martin, 119 Ill.2d 453, 458, 519 N.E.2d 884, 116 Ill.Dec. 669 (1988) and People v. McCain, 248 Ill.App.3d 844, 853, 617 N.E.2d 1294, 187 Ill.Dec. 573 (2d Dist. 1993), which state that when a defendant's fundamental right to liberty is at stake, this Court may relax the waiver rule and address the issue under the plain error doctrine. In both of these cases, however, the fundamental

3

fairness of the sentence (and the denial of liberty) were far more serious than in the instant case.

In McCain, the issue was the consideration of an aggravating factor in sentencing that was presumed to have been provided for when establishing the sentencing range. In Martin, the evidence presented during the sentencing hearing favored leniency--it was not balanced. Neither of these situations are present in the instant case, where the court followed only appropriate factors in sentencing, and therefore the People ask that you decline to follow the plain error doctrine and instead follow the waiver rule.

Should this Court consider the substance of the defendant's argument, however, the defendant is correct that an otherwise proper sentence may be changed by a reviewing court--but only if it was administered by a court that abused its discretion by considering improper factors, or if the sentence is contrary to the spirit and purpose of the law. People v. Smith, 318 Ill.App.3d 64, 74, 740 N.E.2d 1210, 251 Ill.Dec. 639 (2d Dist. 2000); People v. Daniels, 261 Ill.App.3d 695, 699, 634 N.E.2d 4, 199 Ill.Dec. 404 (2d Dist. 1994). However, nothing in the record indicates that Judge Doyle abused his discretion, considered improper factors or contravened the spirit or purpose of the law.

Although the defendant argues that Judge Doyle relied on his views regarding the victim's generation as "the great generation," a generation "you have to admire," and that the victim expressed courage while he was being attacked (R. 98), it is not indicated in the record that such a "compliment" to the victim or the victim's generation caused Judge Doyle to abuse his discretion or disregard the spirit or purpose of the law. In fact, Judge Doyle went on to say that the defendant, in looking at the victim, looked "at a senior citizen, somebody who clearly in his view looking [sic] at somebody who is 78, now 78, 77 years old at the time, trying to take advantage of him, looking as weak, easy prey and attacking him."

Considering the victim's age is appropriate in sentencing. 730 ILCS 5/5-5-3.2(a)(8)(West 2000). The generation that the victim belongs to, and the fact that he is a senior citizen, are conceptually the same. They are equally definitive of who the victim is in the instant case. Nothing is wrong with identifying the victim as a member of a particular generation. It is the same as identifying his age group. It defines his age. Nothing in the record indicates that the trial court relied on anything improper. The age of the victim, who was a senior citizen, indicates that he is in fact a member of a generation that is generically called "The Great Generation." It is akin to being called "A Baby Boomer," a member of the

"Beat Generation," or "Generation X."  These labels merely indicate a time frame--and it so happens that members of the "Great Generation" are now senior citizens.

After complimenting the victim on his courage during the attack, and pointing out his advanced age, the judge went on to reiterate the scenario that was brought before the court during the hearing as part of the plea agreement.  He pointed out that the victim, after being attacked and wounded, courageously tried chasing the defendant to get his property back--after which, the defendant ran and jumped into the water to get away, thereby additionally endangering rescue workers. (R. 98-99).  This was proper to consider.  Although the court stated that it admired this kind of courage in the victim's generation (R. 98), nothing in the record indicates that he improperly considered and weighed such "admiration" in imposing sentence.

As the defendant points out, it was also appropriate that the trial court consider another aggravating factor:  the fact that the defendant had been convicted of murdering his girlfriend.  (R. 99)  Although the Appellate Court reversed his conviction on the basis of speedy trial violations, the trial court stated that it agreed with the dissent.  Nothing in the record indicates, however, that the trial court considered the reversal in imposing sentence.  In fact, the court said specifically, "I wouldn't use that case against him, but it came

6

in by way of the detective's testimony and I'm allowed under the law to use that prior crime to come in." (R.100). Absolutely nothing indicates that the court "punished" the defendant for this. The defendant argues incorrectly when he says that Judge Doyle "intended to correct what he perceived as an injustice by imposing the harshest sentence possible in this case." (Defense Brief p. 18). Nothing in the record even remotely indicates that the judge's agreement with the dissent in that case was considered at the time of sentencing.

In fact, Judge Doyle averred that he found no factors in mitigation--and that the factors in aggravation were "very high." (R. 100). The judge listed the proper factors as follows: that the defendant's conduct caused "serious harm"; that he had a history of "prior delinquency"; that the sentence was necessary to deter others; and that a senior citizen was involved. (R. 100-101). The court concluded that fifteen years (the maximum sentence allowed) "doesn't even come close to the sentence that would be appropriate for your background, your history, your conduct in this case." (R. 101). All of these considerations are totally appropriate.

Nothing in the record concerning the judge's comments indicates that anything other than the victim's age, and the defendant's conduct (in this case--and in the past), were

influencing the trial court in the imposition of the sentence. All of this was proper for him to consider.

The defendant relies on several cases regarding improper considerations when imposing a sentence. One such case, People v. Dempsey, 242 Ill.App.3d 568, 598, 610 N.E.2d 208, 182 Ill.Dec. 784 (5th Dist. 1993), concerned a trial judge who was so prejudiced by fear of HIV/AIDS that he let improper factors influence him and did not consider the requisite statutory factors. That is nothing like the instant case, where all factors which the judge considered were proper.

In People v. Henry, 254 Ill.App.3d 899, 905, 627 N.E.2d 225, 194 Ill.Dec. 109 (1st Dist. 1993), the trial judge told the defendant that his crime was disgusting and that's why he was getting that amount of time. Again, that is nothing like the instant case where the judge reiterated totally proper factors in aggravation before imposing the maximum sentence.

In People v. Wardell, 230 Ill.App.3d 1093, 1102, 595 N.E.2d 1148, 172 Ill.Dec. 478 (1st Dist. 1992), the trial judge commented that the defendants (who were black), and who were charged with aggravated criminal sexual assault, decided to have some fun with some white girls. Again, this is dissimilar to the instant case, in which the trial court considered totally proper factors--the age of the victim, the nature of the crime and the defendant's criminal background.

Your Honors have ruled on the consideration of improper factors during sentencing many times. This Court has determined that when the record reveals that the weight placed on an allegedly improper factor is read in context, and is so insignificant that it does not lead to a greater sentence--as in the instant case--a new sentencing hearing is not required. <u>People v. Ryan</u>, 336 Ill.App.3d 268, 274-275, 783 N.E.2d 187, 192, 270, Ill.Dec. 612 , 617 (2d Dist. 2003).

This Court recently found that consideration of an improper factor during sentencing may be an abuse of discretion that requires resentencing. <u>People v. Bouyer</u>, 329 Ill.App.3d 156, 161-163, 769 N.E.2d 145, 149, 263 Ill.Dec. 943, 947 (2d Dist. 2002). However, in <u>Bouyer</u>, the trial judge, through actions and comments throughout the proceedings, made it clear that the defendant was being punished primarily for falling behind in his restitution payments. That is unlike the instant case.

For these reasons, Your Honors should let the defendant's sentence stand.

## CONCLUSION

WHEREFORE, based on the foregoing, the People of the State of Illinois respectfully request that this Honorable Court affirm the conviction and sentence of Zakii T. Wahiid, and assess statutory State's Attorney's fees pursuant to 55 ILCS 5/4-2002(a) and People v. Nicholls, 71 Ill.2d 166 (1978).

Respectfully submitted,

Meg Gorecki
State's Attorney
Kane County
St. Charles, Illinois 60175
(630) 232-3500

By _____

Martin P. Moltz
Deputy Director
State's Attorneys
  Appellate Prosecutor
2032 Larkin Avenue
Elgin, Illinois 60123
(847) 697-0020

Bonnie McGrath

OF COUNSEL

COUNSEL FOR PLAINTIFF-APPELLEE

10

**FILED**

DEC 3 1 2003

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

No. 2--02--1047

*This Order Is Not Precedential And Is Not To Be Cited*

### IN THE

### APPELLATE COURT OF ILLINOIS

### SECOND DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court ) of Kane County. |
| Plaintiff-Appellee, | ) |
| v. | ) No. 00--CF--2509 |
| ZAKII T. WAHIID, | ) Honorable ) James T. Doyle, |
| Defendant-Appellant. | ) Judge, Presiding. |

### RULE 23 ORDER

Defendant, Zakii T. Wahiid, was charged with two counts of robbery (720 ILCS 5/18--1(a) (West 2000)) and one count of aggravated robbery (720 ILCS 5/18--5 (West 2000)). He entered an open plea of guilty to aggravated robbery and was sentenced to 15 years' imprisonment. The State nolle prossed the remaining counts. On appeal, defendant argues that the trial judge abused his discretion in sentencing defendant because the trial judge was improperly motivated by his personal admiration for the victim's generation and his opinion that this court erred in reversing defendant's prior murder conviction. We affirm.

According to the presentence investigation report, defendant had prior convictions of armed robbery and driving while license suspended. Defendant had also been convicted of first degree murder, but that conviction was reversed on appeal.

No. 2--02--1047

At the sentencing hearing, the victim testified that he was 77 years old on September 29, 2000. He was walking from his car to his bank, holding a checkbook, when defendant knocked him down. Defendant hit him on the shoulders and face. Defendant told the victim to let go of the checkbook, saying that he had a knife and would stab the victim. Defendant took the checkbook, which contained $239 in cash, and ran away. The money was never recovered.

The trial judge asked the victim if he had served in the military. The victim replied that he was a 71/2-year Navy veteran. When asked if he had seen any "action," the victim replied that he was never wounded.

Several police officers testified about defendant's arrest, which involved rescuing defendant from a river after he jumped from a bridge. The final police officer to testify said that he had also been involved with the case in which defendant had been charged with murder. Defendant objected and the trial judge overruled the objection, commenting that he was familiar with the case and the appellate court's decision. The officer described the murder investigation and said that defendant had confessed to stabbing his girlfriend.

After hearing the evidence, the trial judge stated that the victim "represents what [he] would call the great generation and what has been defined as a member of the great generation" that "you have to admire." He said that the victim showed courage while defendant showed cowardice by trying to take advantage of a 77-year-old senior citizen.

The trial judge commented on the testimony about defendant's murder confession. He then stated:

"And I know that the Appellate Court reversed [defendant's murder conviction], but I also

-2-

No. 2--02--1047

notice our current, now Supreme Court Justice Thomas, was on that panel and he wrote a strongly worded dissent ***.

I'm not going to comment on the opinion. I think that the Supreme Court Justice Thomas's opinion on it, I happen to agree with strongly. And I've read the opinion and I'm aware of it. But we do live with the law as the law is dictated here.

*** I wouldn't use that case against him, but it came in by way of the detective's testimony and I'm allowed under the law to use that prior crime to come in."

The trial judge stated that he did not find any mitigating factors. He listed the following aggravating factors: "defendant's conduct caused or threatened serious harm. Certainly has that history of prior delinquency. Sentence is certainly necessary to deter others. We're talking about a senior citizen." The trial judge sentenced defendant to the maximum term of 15 years' imprisonment, stating that the sentence "doesn't even come close to the sentence that would be appropriate for [defendant's] background, [his] history, [his] conduct in this case. But I'm stuck with it."

Defendant filed a motion to reconsider, arguing that the trial court erred by considering the reversed murder conviction as criminal history. Defendant also argued that the sentence was excessive in light of his criminal history and his "dire situation" at the time of the offense, that is, he had needed the money for a pregnant girlfriend. The trial court denied the motion. Defendant appealed, arguing that his trial counsel did not file a proper certificate under Supreme Court Rule 604(d) (188 Ill. 2d R. 604(d)). This court reversed and remanded, directing the trial court to allow defendant to file a new motion to reconsider and to hold a hearing thereon under Rule 604(d). People v. Wahiid, No. 2--01--0559 (2001) (unpublished order under Supreme Court Rule 23).

-3-

On remand, defendant stood on his prior motion. The trial judge stated that he had "covered all the factors in aggravation and mitigation" and had not taken "the case that was reversed" into consideration. The trial judge denied defendant's motion, and defendant timely appealed.

On appeal defendant contends that the trial judge erred by considering his admiration for the victim's generation and his disagreement with the decision to reverse defendant's murder conviction. The State maintains that defendant waived these contentions by not objecting at sentencing or raising the issues in his postsentencing motion. Contentions of error in imposing a sentence are waived if not raised before the trial court in a post-sentencing motion. People v. Reed, 177 Ill. 2d 389, 394-95 (1997). Defendant did not raise the contention that the trial judge impermissibly considered his admiration of the victim's generation in his motion to reconsider sentence. Nor did defendant raise the specific contention that the trial judge imposed a maximum sentence in order to punish him for the reversal of his previous murder conviction. Consequently, both contentions are waived. Defendant argues that both alleged sentencing errors constitute plain error and, therefore, the waiver rule should be relaxed in this case. We disagree.

In the context of a sentencing hearing, we will review an error that was not properly preserved as plain error where the evidence is closely balanced or the error is so fundamental that it may have deprived defendant of a fair sentencing hearing. People v. Thomas, 178 Ill. 2d 215, 251 (1997). "Absent reversible error there can be no plain error." People v. Johnson, Nos. 90678, 90693, 90706, slip op. at 4. Obviously, absent error there can be no reversible error. For the reasons that follow we conclude that the first alleged sentencing error, if error at all, was harmless, and the second alleged sentencing error did not constitute error. Therefore, neither alleged error constitutes plain error and the procedural default must be honored. See People v. Johnson, Nos. 90678, 90693,

No. 2--02--1047

90706, slip op. at 4. Consequently we hold that the two contentions defendant raises on appeal were not properly preserved for appeal and are waived.

We will not disturb a sentence absent an abuse of discretion. People v. Rogers, 197 Ill. 2d 216, 223 (2001). A trial court has wide latitude in sentencing a defendant as long as it does not ignore relevant mitigating factors or consider improper aggravating factors. People v. Roberts, 338 Ill. App. 3d 245, 251 (2003).

Defendant first argues that the trial judge improperly considered the victim's membership in a generation that he admired. The trial court's comments about the victim's membership in the "great generation" preceded comments about the victim's advanced age. The trial judge specifically stated that he was considering the victim's age as an aggravating factor, which defendant concedes was permissible. See 730 ILCS 5/5--5--3.2(a)(8) (West 2000). However, defendant argues that the trial judge went beyond the victim's age and considered the fact that the victim was a member of "the great generation" and was therefore due more honor and respect that the ordinary crime victim. Defendant maintains that it was improper for the trial judge to consider the victim's membership in a particular class as a factor in aggravation absent a specific legislative authorization to do so.

Even if we assume that the trial judges comments concerning the victim's generation demonstrate that the trial judge considered an improper factor in aggravation, the error was harmless. A new sentencing hearing is not required upon a finding that the trial court considered an improper aggravating factor where the record reveals that the weight given to the allegedly improper factor was so insignificant that it did not lead to a longer sentence. People v. Ryan, 336 Ill. App. 3d 268, 274 (2003). In this case the trial court mentioned numerous aggravating factors that were appropriately considered including the fact that defendant's conduct caused or threatened serious harm (730 ILCS

-5-

No. 2--02--1047

5/5--5--3.2(1) (West 2002)); that defendant had a history of prior delinquency or criminal activity

(730 ILCS 5/5--5--3.2(3) (West 2002)) including a conviction of armed robbery; that defendant had

previously stabbed his former girlfriend to death (see People v. Jackson, 149 Ill. 2d 540, 548 (1992)

(defendant's criminal conduct for which there has been no conviction properly considered at

sentencing)); that the sentence was necessary to deter others from committing the same crime (730

ILCS 5/5--5--3.2(7) (West 2002)); and that defendant committed the offense against a person 60

years of age or older (730 ILCS 5/5--5--3.2(8) (West 2002)). In contrast, the trial court found no

factors in mitigation. The record, therefore, reflects that the disputed factor was not significant to

the trial judge's ultimate sentencing decision because, excluding the alleged improper aggravating

factor, the appropriately considered aggravating factors and the lack of mitigating factors support the

15-year sentence.

Defendant also argues that the trial judge imposed the maximum sentence to punish defendant

for his prior murder conviction that was reversed on appeal. Defendant recognizes that the trial court

was allowed to consider evidence of his conduct in the murder case. See Jackson, 149 Ill. 2d at 548.

While the trial judge expressed his disagreement with this court's decision to reverse defendant's

murder conviction, he also stated, "we do live with the law as the law is dictated here" and that he

"wouldn't use that case against" defendant. The trial judge named several aggravating factors to

support the maximum sentence imposed. Furthermore, on remand, the trial judge again stated that

he had not considered defendant's murder conviction as a sentencing factor. The record refutes

defendant's contention that the trial judge considered his disagreement with the reversal of defendant's

murder conviction as an aggravating factor in sentencing defendant.

No. 2--02--1047

For the foregoing reasons, we believe defendant has waived his right to challenge the alleged

sentencing errors and, therefore, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

KAPALA, J., with McLAREN and BOWMAN, JJ., concurring.

**ORIGINAL**

# 97748

NO. _____

## IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| People State of Illinois, | ) | Appellate Court, |
| | ) | Second District |
| Respondent | ) | No.   2-02-1047 |
| | ) | |
| v. | ) | Circuit Court, |
| | ) | Kane County |
| Zakii T. Wahiid, | ) | No.   00 CF 2509 |
| | ) | |
| Petitioner | ) | Hon. James T. Doyle, |
| | ) | Judge Presiding |

### PETITION FOR LEAVE TO APPEAL

**FILED**

JAN 2 6 2004

**SUPREME COURT CLERK**

Zakii T. Wahiid
Reg. No. K-52467
R.R. #2, P. O. Box 31
Sumner, IL 62466

35-020404
R-123103
No RH

EXHIBIT G

NO. _____

RECEIVED

JAN 16 2004

SUPREME COURT CLERK

IN The

Supreme Court of the State of ILLinois

People of the State of ILLinois )

Plaintiff - Respondent, )

-vs- )

Zakii Tawwab Wahiid )

Defendant-Petitioner )

PeTiTion For Leave To Appeal
From The AppellaTe CourT oF
ILLinois, Second Judicial
DistricT

No. 2--02--1047

There heard on Appeal From
The CircuiT Court For The
16Th Judicial Circuit, Kane
County, ILLinois No. 00-CF-280

Honorable James T. Doyle,
Judge Presiding

## PeTiTion For Leave To Appeal

## Zakii Tawwab Wahiid, pro se

## PeTiTion For Leave To Appeal

To The Honorable JusTices oF The Supreme CourT oF
The STaTe oF ILLinois:

May IT Please The CourT:

## Prayer For Leave To Appeal

The deFendanT-peTiTioner, Zakii Tawwab Wahiid,
proceeding pro se, pursuanT To Supreme CourT Rules
315 And 612, RespecTFully peTiTions This CourT For Ieave
To Appeal From The decision oF The AppellaTe CourT oF
ILLinois, Second Judicial DistricT, AFFirming The peTiTioner's

Conviction and Sentence For Aggravated Robbery.

## Date Of Judgement

On April 11, 2001, Petitioner was found guilty of Aggravated Robbery. Petitioner was subsequently sentenced to 15 years. On December 31, 2003 the Appellate Court, Second Judicial District, affirmed the judgement of the Circuit Court. A Petition for Rehearing was not filed. An affidavit of intent to file a Petition for Leave to Appeal was filed Jan. 9, 2004.

## Point Relied Upon For Reversal

That the Appellate court erred by affirming defendant 15 years prison term. Where The Trial Judge relied on his personal esteem for the victim's generation and indicated that a harsh sentence was warranted because The Appellate Court had erroneously reversed the defendant's prior murder conviction.

That the Appellate court erred by agreeing that defendant has a Criminal History. A armed Robbery from 1980. Which defendant served only 2 years, because There was a recantation that came forth. And driving while license suspended in 1995. Defendant arguing That the murder conviction should not of been considered in light of it's reversal. Then The rest of defendant's criminal history, Trial Judge maintains, reveals no lifetime of crime the Trial Judge is portraying here. Stating Sentencing is certainly necessary To Deter Others. The Trial Judge comment on The Testimony about defendant's murder case. He stated: I wouldn't use That case against him, but it came in by way of The detective's Testimony and I'm allowed under The law To use That prior crime to come in. If the Trial Judge wasn't going To use That case Against me Then Why let it come in as Testimony.

Trial judge also stated. And I know that at the time when we were setting trials and we're checking on times and everybody agrees to the trial date. And I know that the Appellate Court reversed, but I also noted our current, now Supreme Court Justice Thomas, was on that panel and he wrote a strongly worded dissent disagreeing with the other two justices that reversed this case that allowed him out. Judge Doyle told the defendant, "you know, Zaku, everything about you emanates evil" And my biggest regret is that I can't spend a couple million dollars to keep you there in prison the rest of your life. After making those comments, Judge Doyle sentenced the defendant to the maximum, which is 15 years. Judge Doyle stated that penalty, "doesn't even come close to the sentence that would be appropriate for your background, your history,

## STATEMENT OF FACTS

## STATEMENT OF FACTS

On October 4, 2000, a complaint was filed against the defendant, 45-year-old Zakii Wahiid, charging him with aggravated robbery in connection with an incident in which he had allegedly taken money from a man named Richard Miller. (C. 3, 8) The Kane County Public Defender's Office was appointed to represent the defendant. (C. 7)   An indictment was later filed charging the defendant with one count of aggravated robbery and two counts of robbery, based on the same alleged incident. (C. 18-20) Following the indictment, the case was assigned to the Hon. James Doyle.

On February 1, 2001, the defendant pled guilty to the aggravated robbery charge without any agreement regarding the sentence. (C. 30; R. 42)  Before accepting the plea, Judge Doyle advised the defendant of the nature of the charge, the potential penalties, and the rights that he would be waiving by pleading guilty. (R. 42-45)  The defendant said that he understood his rights, that he was not under the influence of drugs or alcohol, and that his plea had not been induced by any threats or promises. (R. 44, 47)

Judge Doyle also heard a factual basis to support the plea.  According to the State, evidence could be presented to show that Mr. Miller, who was 77 years old, had been on his way into a bank in downtown Aurora when the defendant knocked him to the ground, threatened to stab him, and then took $239 from him.  The State further indicated that Mr. Miller had identified the defendant in a photographic line-up and that the defendant had made an incriminating statement to the police following his arrest. (R. 45-46)

face and body and trying to take the checkbook. The defendant also threatened to stab Mr. Miller if he did not let go of the checkbook. Mr. Miller did not see a knife in the defendant's hands, so he resisted by swinging the car keys at the defendant. Eventually, Mr. Miller lost his grip on the checkbook, and the defendant ran away with it. There was $239 in cash inside the checkbook. Mr. Miller chased the defendant but quit when he realized he would not be able to catch him. Mr. Miller never got the money back. He suffered some bruises on his face and shoulder, but did not require medical treatment. (R. 53-59)

After defense counsel stated that she did not wish to cross-examine Mr. Miller, Judge Doyle asked, "Hey, Mr. Miller, did you serve in the military service?" (R. 59) Mr. Miller told the court that he had served in the Navy from June, 1940, to January, 1948, being stationed in the Philippines for at least part of that time. (R. 59) When Judge Doyle asked what action Mr. Miller had seen, Mr. Miller replied, "Well, I was in the Air Force and I'm not wounded or nothing. I don't have any battle scars or nothing. I just served my time, went where they told me to go." (R. 59)

Officer Danny Hornback of the Aurora Police Department testified that he had been on patrol in the downtown area at the time of the incident. Mr. Miller flagged Hornback down and told him what had happened. Hornback and other officers found Mr. Miller's checkbook near a dumpster about a block from the bank, but there was no cash in the checkbook. (R. 60-62)

Officer Kevin Baxter testified that he participated in the defendant's arrest on the morning of October 2, 2000, three days after the robbery. According to Baxter,

6

A presentence investigation report (PSI) was ordered and subsequently filed. (C. 31, 34) The PSI indicated that the defendant had been convicted of armed robbery in Mississippi in 1980 and driving while license suspended in Kane County in 1995. (C. 35-36) He also had been convicted in Kane County of first degree murder in 1995, but that conviction had been reversed on appeal. (C. 36) The defendant, who had earned a G.E.D. in the 1970s, was not employed at the time of the instant offense. He had been employed as a general laborer and forklift operator through an employment service from January of 2000 until mid-September of 2000. (C. 37) He reported that he lost that job when the employer learned about the murder case. (C. 38)

A sentencing hearing was held on April 11, 2001. At the outset of the hearing, defense counsel objected to the reversed 1995 murder conviction being included in the PSI. Judge Doyle replied, "It's inappropriate for the presentence. It may be appropriate with the approach that [the prosecutor] is taking on it." (R. 52) Defense counsel further indicated that the defendant had received a 20-year prison sentence for the 1980 armed robbery case in Mississippi, but that he had been released after serving only 2 years because "there was a recantation that came forth." (R. 52)

In aggravation, the State presented testimony from the victim, Richard Miller. He testified that the incident occurred as he was walking from his car toward the bank. He was carrying a checkbook in his left hand and some car keys in his right hand. As he was about to enter the bank, the defendant jumped him from behind and knocked him down. The defendant was on top of Mr. Miller, punching him in the

5

face and body and trying to take the checkbook. The defendant also threatened to stab Mr. Miller if he did not let go of the checkbook. Mr. Miller did not see a knife in the defendant's hands, so he resisted by swinging the car keys at the defendant. Eventually, Mr. Miller lost his grip on the checkbook, and the defendant ran away with it. There was $239 in cash inside the checkbook. Mr. Miller chased the defendant but quit when he realized he would not be able to catch him. Mr. Miller never got the money back. He suffered some bruises on his face and shoulder, but did not require medical treatment. (R. 53-59)

After defense counsel stated that she did not wish to cross-examine Mr. Miller, Judge Doyle asked, "Hey, Mr. Miller, did you serve in the military service?" (R. 59) Mr. Miller told the court that he had served in the Navy from June, 1940, to January, 1948, being stationed in the Philippines for at least part of that time. (R. 59) When Judge Doyle asked what action Mr. Miller had seen, Mr. Miller replied, "Well, I was in the Air Force and I'm not wounded or nothing. I don't have any battle scars or nothing. I just served my time, went where they told me to go." (R. 59)

Officer Danny Hornback of the Aurora Police Department testified that he had been on patrol in the downtown area at the time of the incident. Mr. Miller flagged Hornback down and told him what had happened. Hornback and other officers found Mr. Miller's checkbook near a dumpster about a block from the bank, but there was no cash in the checkbook. (R. 60-62)

Officer Kevin Baxter testified that he participated in the defendant's arrest on the morning of October 2, 2000, three days after the robbery. According to Baxter,

6

the defendant jumped from a bridge into the Fox River and ran south in the middle of the river. A fire department boat arrived on the scene, and Baxter boarded the boat, which was carrying another officer and a firefighter. The boat followed the defendant to a dam in the river. The defendant jumped over the dam, landing in water approximately 6-10 feet deep. When the defendant got caught in an undertow, the firefighter jumped into the water to rescue him. As that was occurring, the motor on the boat stalled, causing the boat to be carried over the dam. The boat also got caught in the undertow. It started to take on water and nearly capsized. Using a metal pole, the other officer managed to push the boat clear of the dam, and the firefighter and the defendant were then pulled from the water. They were taken to a hospital where the firefighter was checked for hypothermia. (R. 63-68)

Officer Tom Kinney testified that Mr. Miller identified the defendant in a photographic line-up on October 3. Kinney later advised the defendant of his rights and interviewed him. According to Kinney, the defendant first identified himself as "Sylvester Wilson," but eventually gave his correct name, explaining that he had given the other name because of the prior murder case. (R. 69-72) The defendant told Kinney that he robbed Mr. Miller because he needed money to buy medicine for his pregnant girlfriend, although he also said that he used the money to buy "some grease for his hair." (R. 73) The defendant "broke down and was crying" during the interview. (R. 74) He expressed remorse about what he had done and wanted "to make it right." (R. 74) Kinney never attempted to confirm whether the defendant's girlfriend was having health problems at the time of the incident. (R. 73-74)

7

The State's final witness in aggravation was Officer Marshall Gauer. He related that he had been involved in the "foot pursuit" of the defendant on October 2 but that he had not been one of the officers who followed the defendant into the river. (R. 75)  After the defendant was taken into custody, Gauer searched him and found "a steak type knife" in his pocket. (R. 75)  The knife was about 5 or 6 inches long, with a serrated blade. (R. 75-76)  Gauer agreed with the prosecutor's assertion that the discovery of the knife was "significant." (R. 76)  At that point, the prosecutor began to ask Gauer about his involvement in the investigation of the prior murder case, 95 CF 2305. When defense counsel objected to that line of questioning, Judge Doyle stated, "He can testify in reference to the facts. I can take judicial notice, of course, of the occurrence. I got the file here. I can take judicial notice of the file. And I understand, like I said, I've read that opinion. I've had a copy of that opinion because we've had to address that opinion on other occasions. So I'm completely aware of the case itself." (R. 76)

Gauer proceeded to describe some of the circumstances surrounding the murder case. He had testified at the murder trial and had been present when the verdict was returned. (R. 84) The case arose from an incident in which the defendant fatally stabbed his girlfriend, Mona Vaughn, at her apartment. (R. 77-80, 85) Gauer interrogated the defendant a day or two after the incident. The defendant was "somewhat cooperative" and "fairly calm" during the interrogation, although he did get upset when he learned that Vaughn had died. (R. 80-85) According to Gauer, the defendant said that he had stabbed Vaughn after taking a knife away from her. He

8

also said that Vaughn had tried to cut him with a "box knife" one day prior to the fatal incident. (R. 82-83, 85) Gauer could not recall whether he had spoken to a witness who reported seeing Vaughn trying to stab the defendant at a particular location, but he acknowledged that he might have spoken to that witness. The defendant did have some cuts on his hands when Gauer saw him. The cuts were not fresh. (R. 86) Gauer testified that Vaughn and the defendant had been involved in "two or three incidents of domestic violence over a two or three day period." (R. 85)

After defense counsel indicated that there would be no evidence in mitigation, the prosecutor recommended a sentence of 15 years in prison. The prosecutor argued that none of the statutory factors in mitigation applied and that there were no circumstances excusing the offense. (R. 87-93) In reviewing the statutory factors in aggravation, the prosecutor referred to "number eight," which applies when the offense is committed against a person over 60 years of age. (R. 90) The prosecutor also asked the court to consider how the defendant had "put the lives of the officers and the firefighter into danger" when he jumped into the river. (R. 92) Citing the 1980 armed robbery conviction, the prosecutor described the defendant as a "violent person" and argued that he had "a history of very serious offenses." (R. 90, 93) The defendant's conduct "where he murdered somebody" could be used in aggravation, the prosecutor contended, even though the conviction was reversed because of a speedy trial violation. (R. 88)

Defense counsel argued that the murder conviction should not be considered "in light of its reversal." (R. 94) The rest of the defendant's criminal history, counsel.

9

maintained, did not reveal "the lifetime of crime that the State is portraying here." (R. 95) Defense counsel acknowledged that the defendant's conduct was wrong, but she noted that the defendant had admitted his guilt and suggested that his conduct was mitigated by the situation he was facing with respect to his pregnant girlfriend. "[I]n his mind, at least," counsel argued, the situation was "prompting him or giving him provocation to act in the way he did." (R. 93) According to defense counsel, an appropriate sentence would not exceed 6 years. (R. 95)

In a statement in allocution, the defendant said that he had trouble finding employment because of the 1995 murder conviction. He eventually applied for a job without disclosing that he had been in prison in connection with the murder case. The company later found out about the murder case, however, and he got fired. At the time of the offense, he was making $35.00 per day working for a "labor temp service." (R. 96-97) He needed money for his pregnant girlfriend and tried unsuccessfully to get help from some local churches. (R. 97)

Judge Doyle then imposed the sentence. He began by remarking that the case "absolutely stands out in my courtroom as what I would say it's [sic] absolute good versus absolute evil." (R. 98) "I see," Judge Doyle continued, "all this incredible courage versus incredible cowardice." (R. 98) According to Judge Doyle, the "absolute good" was Mr. Miller, who "represents what I would call the great generation and what has been defined as a member of that great generation. I think you look at him as an American hero." (R. 98) Judge Doyle found that Mr. Miller "displayed incredible courage during his beating and attack." (R. 98) "You sit down

10

and you have to admire that generation," Judge Doyle stated. (R. 98)  Judge Doyle

described the defendant's conduct as "another display of cowardice" and contrasted

it with the "incredible heroism by the police and fire department." (R. 98-99)

Referring to Gauer's testimony regarding the murder case "and the statements

elicited in reference to his conduct in [the] murdering of his girlfriend at the time,"

Judge Doyle stated:

> I recognize the fact that the trial was on this floor.  Judge Hudson
> presided over it after the trial had been set by Judge Puklin.

> And I know that at the time when we were setting trials and we're
> checking on times and everybody agrees to the trial date.  And I know
> that the Appellate Court reversed, but I also notice our current, now
> Supreme Court Justice Thomas, was on that panel and he wrote a
> strongly worded dissent disagreeing with the other two justices that
> reversed this case that allowed him out.

> I'm not going to comment on the opinion.  I think that the Supreme
> Court Justice's Thomas's opinion on it, I happen to agree with [it]
> strongly.  And I've read the opinion and I'm aware of it.  But we do live
> with the law as the law is dictated here.

> The testimony is accurate.  I wouldn't use that case against him, but it
> came in by way of the detective's testimony and I'm allowed under the
> law to use that prior crime to come in.

(R. 99-100)

Judge Doyle agreed with the State's position regarding the lack of mitigation

and found that the "[f]actors in aggravation are very high," (R. 100)  In particular,

Judge Doyle found that the defendant's conduct "caused or threatened serious harm,"

that he had a history of "prior delinquency," that a deterrent sentence was necessary,

and that the victim was a "senior citizen." (R. 100-01)  Judge Doyle told the

11

defendant, "You know, Zakii, everything about you emanates evil," and "[M]y biggest regret is that I can't spend a couple million dollars to keep you there [in prison] the rest of your life." (R. 101)

After making those comments, Judge Doyle sentenced the defendant to "the maximum, which is 15 years." (C. 40; R. 101-02)  According Judge Doyle, that penalty "doesn't even come close to the sentence that would be appropriate for your background, your history, your conduct in this case. But I'm stuck with it." (R. 101)

Judge Doyle immediately advised the defendant of his right to appeal, informing him that he could not appeal unless he first filed a timely motion to withdraw the guilty plea. (R. 102)

On April 17, 2001, Judge Doyle had the defendant brought back for further admonishments. He advised the defendant that he could preserve his right to appeal by filing either a motion to withdraw the plea or a motion to reconsider the sentence. (R. 107) A motion to reconsider was filed the next day. The motion alleged that the sentence was excessive and that the court had erred by considering "the overturned murder conviction." (C. 46-47)

A hearing on the motion to reconsider was held on May 18, 2001. At the outset of the hearing, defense counsel filed a certificate purporting to show compliance with Supreme Court Rule 604(d). Following brief argument by the parties, Judge Doyle denied the motion without further comment. (C. 55; R. 111-12)

The defendant filed a timely notice of appeal. (C. 54) On December 21, 2001, this Honorable Court entered a summary order. Finding that defense counsel had not

filed a proper 604(d) certificate, this Court remanded the cause for the defendant "to file a new motion to reconsider sentence and for a hearing thereon pursuant to Rule 604(d)." (C. 66-67)

On March 21, 2002, defense counsel filed a new 604(d) certificate. (C. 72) No new motion to reconsider was filed on remand. On September 19, 2002, defense counsel indicated that the defendant, who was present in open court, would stand on the prior motion. (C. 84; R. 125) Counsel argued that Judge Doyle had erred by considering the evidence of the murder case and that the sentence was excessive in light of the defendant's "dire circumstances" and "history of substance abuse." (R. 125) Stating that he had considered the latter factors, but not "the case that was reversed," Judge Doyle denied the motion again, and the defendant promptly appealed. (C. 84-85; R. 126)

Supreme Court Rule 615 (b) (4)

People v. Smith, 318 Ill. App. 3d 64, 740 N.E. 2d 1210 (2nd Dist. 2000)

People v. Daniels, 261 Ill. App. 3d 695, 634 N.E. 2d 4 (2nd Dist. 1994)

People v. Marquntina, 261 Ill. App. 3d 247, 634 N.E. 2d 29 (3rd Dist. 1994)

People v. Henry, 254 Ill. App. 3d 899, 627 N.E. 2d 225 (1st Dist. 1993)

People v. Dempsey, 242 Ill. App. 3d 568, 610 N.E. 2d 208 (5th Dist. 1993)

730 ILCS 5/5-5-3.2 (a) (8) (West 2000)

People v. Helm, 282 Ill. App. 3d 32, 669 N.E. 2d 111 (4th Dist)

People v. Martin, 119 Ill. 2d. 453, 519 N.E. 2d 884 (1988)

People v. McCain, 248 Ill. 3d 844, 617 N.E. 2d 1294 (2nd Dist. 1993)

North Carolina v. Pearce, 395 U.S. 711, 89 S.CT. 2072, 23 L. Ed. 2d 656 (1969)

# ARGUMENT

That The Appellate Court erred by Affirming defendant 15 years prison term. Where the trial judge Relied on his personal esteem for the Victim's Generation And Indicated that a Harsh sentence was warranted because The Appellate Court had erroneously Reversed The defendant's prior murder conviction.

The Record shows that Judge Doyle decision To impose The 15 year prison term was improperly Motivated by his admiration for the Victim's entire generation and his disagreement with the Appellate Court's reversal of The defendant's prior murder conviction. Accordingly, This Court should either Reduce the sentence pursuant To <u>Supreme Court Rule 615(b)(4)</u> or Vacate The sentence And Remand The cause for a new sentencing hearing.

Standard of Review: A sentence may be disturbed if it Represents An Abuse of discretion or Rests on improper Findings. <u>People v. Smith, 318 Ill. App. 3d 104, 14, 740 N.E. 2d 1210, 1218 (2nd Dist. 2000)</u>. An Abuse of discretion occurs if The sentence is "Contrary To The purpose and spirit of The law," <u>People v. Daniels, 261 Ill. App. 3d 695, 699, 634 N.E. 2d 4, 6-7 (2nd Dist 1994),</u> And may be found even if The sentence is Within statutory limits. <u>People v. Margentina, 261 Ill. App. 3d 247, 249, 634 N.E. 2d 25, 31 (3rd Dist. 1994)</u>

Judge Doyle Acted improperly by Relying on his own Views Regarding The moral character And Historical importance Of The Victim's entire generation. Judge Doyle commended The Victim for showing "incredible courage" during The offense, but did not stop with that individualized finding. According To Judge Doyle, The Victim Represented "Absolute good" by being A Member of "The Great Generation" The generation "you have To Admire. In effect, Judge Doyle considered The defendant's conduct To be particularly Worthy of punishment because of The Victim's Membership in A favorite class.

A sentence should not be based on the trial judge's personal attitudes or "subjective feelings." People v. Henry, 254 ILL. App. 3d 899, 905, 627 N.E. 2d 225, 229-30 (1st Dist 1993); People v. Dempsey, 242 ILL. App. 3d 568, 597-98, 610 N.E. 2d 208, 227 (5th Dist. 1993). In this case, the sentence reflects Judge Doyle's bias in favor of the victim's generation. Under 730 ILCS 5/5-5-3.2 (a) (8) (West 2000), Judge Doyle had the right to consider the victim's age as an aggravating factor, and the State asked him to consider that statutory factor. But Judge Doyle did not simply consider the victim's age: he considered the victim's membership in a particular generation that he believed warranted special honor or respect. Age and membership in a particular generation are not the same thing. Subsection (a)(8) refers to victims who are 60 years of age or older, not victims who were born between 1915 and 1935. While a sentencing court may consider nonstatutory factors in aggravation, it must rely on evidence that is both reliable and relevant. Dempsey, 242 ILL. App. 3d at 598, 610 N.E. 2d at 227. Judge Doyle's personal opinion regarding the goodness of the victim's entire generation is no more relevant than the trial judge's belief in Henry that the crime there was "disgusting," which necessitated a new sentencing hearing in that case. 254 ILL. App. 3d at 905, 627 N.E. 2d at 229-30.

This is not a case like People v. Helm, 282 ILL. App. 3d 32, 669 N.E. 2d 111 (4th Dist. 1996), which held that the trial court could properly consider the victim's gender, a nonstatutory factor at the time. The rationale in Helm was that gender could be used as a proxy for vulnerability. 282 ILL. App. 3d at 35, 669 N.E. 2d at 113-14. The same could be said for the victim's age, but there is a big difference between using age as a token for vulnerability and using membership in a particular generation as a token for goodness.

The consideration of this improper Factor warrants
relief even though it was not raised as error below.

The defendant's Fundamental right to liberty is at
stake, this Court may relax the waiver rule and address
the issue under the plain error doctrine. People v. Martin,
119 Ill. 2d 453, 458, 519 N.E. 2d 884, 886 (1988); People v. McCain
248 Ill. App. 3d 844, 850, 617 N.E. 2d 1294, 1299 (2nd Dist. 1993).

The defendant did raise an objection below to Judge
Doyle's consideration of the prior murder conviction.
Specifically, the defendant argued that the conviction
should not have been included in the PSI, that it was
improper for Officer Gauer to testify regarding the
murder case, and that Gauer's testimony "consisted of
hearsay and vague recollections.

Judge Doyle did not specifically state that he had read
the transcripts, but the transcripts presumably were
included in the record that would have been returned to the
trial court following the issuance of the mandate in the
prior case. Nevertheless, the record shows that Judge
Doyle did more than find that there was sufficient evid-
ence of the murder. He expressed his strong disagree-
ment the Appellate Court's decision to reverse the
murder conviction. In short, Judge Doyle concluded that
the Appellate Court had wrongly let the defendant get
away with murder, and his comments implied that he
intended to correct what he perceived as an injustice
by imposing the harshest possible sentence in this case.
In that respect, the Appellate Court erred. Just as due
process prohibits a court from retaliating against a
defendant by imposing a more severe sentence follow-
ing a remand for a new trial or resentencing, North
Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 25 L. Ed. 2d
656 (1969), so should it prohibit a court from trying
to even the score by imposing a more severe sentence
because, in the court's personal opinion, the defendant

got an undeserved break when his prior conviction was overturned. Regardless of any waiver resulting from the defendant's failure to raise this specific objection below, this Court should review the issue as plain error. Martin, 119 Ill. 2d at 458, 519 N.E. 2d at 886; McCain, 248 Ill. App. 3d at 850, 617 N.E. 2d at 1299.

The problem was not that Judge Doyle considered the murder case, but that he used it in an improper way. As noted above, a sentence may not be based on the trial judge's personal views. Judge Doyle professed to be bound by the law and acknowledged that he could not use the murder conviction itself as an aggravating factor but nonetheless offered a gratuitous criticism of the Appellate Court's decision reversing the murder conviction. Judge Doyle had no legitimate reason to express that criticism in open court. He could not punish the defendant for what he regarded as the Appellate Court's error. Simply put, it was inconsistent for Judge Doyle to say, on the one hand, that he would not use the murder conviction against the defendant, and then proceed, on the other hand, as if that conviction would have remained in effect if only the Appellate Court had correctly applied the law. Whether Judge Doyle agreed with the Appellate Court's ruling was simply irrelevant.

For these reasons, this Court should vacate the defendant's 15 year prison term and either reduce the sentence or remand the cause for a new sentencing hearing.

# CONCLUSION

Wherefore, the petitioner, Zakii Tawwab Wahiid, respectfully requests this Honorable Court to grant this Petition for Leave to Appeal and vacate his 15-year prison term Reduce the sentence or remand the cause for a new sentencing hearing.

Respectfully Submitted
Zakii Tawwab Wahiid
Zakii To Wahiid
K52467
R.R.2, Box 31
Sumner, IL. 62466

STATE OF ILLINOIS
SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the eighth day of March, 2004.

Present: Mary Ann G. McMorrow, Chief Justice

Justice Charles E. Freeman        Justice Thomas R. Fitzgerald
Justice Robert R. Thomas          Justice Thomas L. Kilbride
Justice Rita B. Garman            Justice Philip J. Rarick

---

On the twenty-fourth day of March, 2004, the Supreme Court entered the following judgment:

No. 97748

People State of Illinois,

    Respondent

    v.

Zakii T. Wahiid,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Second District
2-02-1047
00CF2509

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto
subscribed my name and affixed the Seal
of said Court, this fifteenth day
of April, 2004

*Juliann Hornyak*

    Clerk,
Supreme Court of the State of Illinois



809 N.E.2d 1292 (Table)                                                    Page 1
208 Ill.2d 554, 809 N.E.2d 1292 (Table), 284 Ill.Dec. 346


**H**
People v. Wahiid
Ill. 2004.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)

Supreme Court of Illinois
People
v.
Zakii T. Wahiid
NO. 97748

MARCH TERM, 2004
March 24, 2004

Lower Court: No. 2-02-1047


Disposition: Denied.

Ill. 2004.
People v. Wahiid
208 Ill.2d 554, 809 N.E.2d 1292 (Table), 284
Ill.Dec. 346

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

EXHIBIT H

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

V.                              00CF2509

ZAKII T. WAHIID

Clerk of the Circuit Court
Kane County, IL

APR 1 3 2007

FILED          76
ENTERED

## ORDER

This cause coming before the Court on Petitioner's, Zakii T.Wahiid, Petition For Leave To File Petition of Mandamus.

The Court finds that pursuant to People v. Shellstrom, 216 Il.2d 498, Petitioner is granted leave to withdraw his petition and amend it to a post-conviction petition. This Court afforded Petitioner leave to amend and sent notice on March 13, 2007.

Petitioner failed to amend his petition to a post-conviction petition for relief on or before April 13, 2007. Petitioner, did, however, file an amended petition under 735 ILCS 5/2-1401 alleging precisely the same as his Petition For Mandamus. Therefore, the Court will address the allegations contained herein in Petitioner's Petitioner For Mandamus and his 735 ILCS 5/2-1401 Petition For Judgment Relief.

The Court being fully advised in the premises finds that on February 1, 2001, Petitioner was advised of his rights and penalties and he pled guilty to Aggravated Robbery, a class 1 felony. Petitioner was sentenced on April 1, 2001 to a term of 15 years in the Illinois Department of Corrections.

On April 18, 2001, Petitioner filed A Motion To Reconsider Sentence. The motion was heard and denied on May 18, 2001.

On May 18, 2001, Petitioner filed his Notice of Appeal. On December 21, 2001 the Appellate Court remanded the cause to the trial court based on defense counsel's failure to comply with Supreme Court Rule 604(d).

On March 24, 2002 a Certificate Pursuant To Supreme Court Rule 604(d) was filed by Petitioner's attorney.

On September 19, 2002, the Court heard Petitioner' Motion To Reconsider and the motion was denied.

EXHIBIT I

On September 19, 2002, Petitioner filed his Notice of Appeal. On December 31, 2003, the Appellate Court, in a Rule 23 Order, affirmed the trial court.

On August 17, 2004, Petitioner filed A Petition For Habeas Corpus alleging the Post-Conviction Relief Act.

On June 14, 2005, Petitioner filed A Petition For Leave To File Writ of Mandamus. On June 15, 2005, the Court ruled it did not have jurisdiction to hear the petition.

On February 7, 2007, Petitioner filed A Petition of Mandamus. This Court granted Petitioner leave to amend his petition to a post-conviction relief act petition and he has failed to amend his petition to that format.

On March 19, 2007, Petitioner filed a Petition For Judgment Relief and a Motion For Relief From Judgment citing 735 ILCS 5/2-1401.

In his petition he alleges *pro forma* that he was not advised of Mandatory Supervised Release. Contrary to Petitioner's allegations, he was advised of Mandatory Supervised Release.(*See transcript of proceedings*).

Therefore, the Court finds that Petitioner's Petition is frivolous and patently without merit and is dismissed.

The Clerk of the Circuit Court of Kane County is ordered to send a copy of this order to the petitioner and all counsel of record certified mail within 10 days of the date of this order.

Date: April 13, 2007

Enter: TIMOTHY Q. SHELDON
                            Judge

95