CASE NO.     08cv637

ATTACHMENT NO.     1

EXHIBIT     J - 1

TAB (DESCRIPTION) _____

# 11901

NO. _____

## IN THE

## SUPREME COURT OF ILLINOIS

Zakii Tawwab Wahiid,                )
                                    )
    Petitioner                 )
                                    )
    v.                         )
                                    )
People State of Illinois and Prisoner    )
Review Board,                       )
                                    )
    Respondents                )

## MOTION BY PETITIONER FOR RELIEF
## UNDER SUPREME COURT RULE 381

**FILED**

JUL 2 7 2007

SUPREME COURT
CLERK

Zakii Tawwab Wahiid
Reg. No. K-52467
Pontiac Correctional Center
P. O. Box 99
Pontiac, Illinois  61764

EXHIBIT J

# SUPREME COURT OF THE STATE OF ILLINOIS

Zakii Tawwab Wahiid,
     Complainant

vs

                               CASE NO:_____

People OF The STATE
Prison Review Board, et al
     Accused

### Motion For Leave To File Complaint Seeking Appropriate Relief Pursuant To Article VI, Section 4(a) OF The Constitution

Zakii TawwabWahiid, Pro se

### Motion For Leave To File Complaint

To The Honorable Justices OF The Supreme Court OF The State OF Illinois

May IT Please The Court:

The Complainant Zakii Tawwab Wahiid, proceeding pro se pursuant To Supreme Court Rule 381 Article VI, Section 4(a) OF The Constitution. Respectfully petition This Court For leave To File complaint seeking Appropriate Relief.

(1)   Complainant presents For Review issues OF Law pertaining To his sentencing April 11, 2001.

(4)   Complainant contends That The issue To be presented Are concerning his Rights Under Article VI, Section 4(a) OF The Constitution.

② Complainant alleges in this Motion to this Honorable Court that the Circuit Court of Kane County erred in Complainant Habeas Corpus petition on Mandatory Supervised Release stating Lack of Jurisdiction. (See Order dated June 15, 2006).

④ Jurisdiction. 730 ILCS 5/5-7-7, § 5-7-7. The Court which committed the offender to periodic imprisonment shall retain jurisdiction over him during the Term of Committment and may order a diminution of the Term if his conduct, diligence and general attitude merit such diminution.

③ Complainant then Files Petition of Mandamus in U.S. Dist. Court for the Southern Dist. of Ill. Chief Dist. Judge Patrick Murphy. Case dismissed to exhaust his state court remedies. (See Exhibit Civil No. 06-740-GPM)

④ Complainant then refile petition of Mandamus back to Circuit Court Kane County Sixteenth Judicial Circuit. Court sends order to withdraw his petition and amend to a Post-Conviction petition before April 13, 2007.

⑤ Complainant then Files Post-Conviction Petition to Kane County Court Court stamped File it April 10, 2007. (See Post-Conviction). And Order dated Mar. 13, 2007.

⑥ Complainant then recieves other order dated April 13, 2007, stating Petitioner Failed to amend his petition to a Post-Conviction. (See order dated April 13, 2007).

⑦ Complainant then Files Habeas Corpus to Appellate Court Second District. Clerk sent only part of Habeas Corback stating in memo File First to Circuit Court I Sent to Court Habeas Corpus I Filed to Circuit Court Oct. 04, 2004. Complainant hasn't recieved verification of Clerk Filing and docket for hearing. (Exhibit letters Enclosed)

(10) (3)

(9) REPORT OF PROCEED● OF HEARING ON FEB. 01, 20●1, THE COURT STATED THAT MY CHANGES CARRYS A CLASS ONE 4 TO 15 YEARS, 15 TO 30 EXTENDED TERM IF IT WAS DETERMINED IT WOULD APPLY. PERIOD OF MSR OF TWO YEARS, USED TO BE CALLED PAROLE. FINES OF UP TO $25,000, COURT STATES THIS WHAT ID CARRY'S

(10) RECORDS REVEALS THAT THE COURT FAILED AT SENTENCING ON APRIL 11, 2001, TO ADIVE COMPLAINANT OF THE APPLICABLE MANDATORY SUPERVISED RELEASE (HEREAFTER MSR). WHEN COMPLAINANT WAS SENTENCED TO 15 YEARS. COMPLAINANT HAS AN LEGITIMATE ARGUMENT FOR WHICH RELIEF IS AVAILABE.

(11) STATEMENT OF FACTS, PAGE 12 OF SENTENCING PROCEEDING JUDGE DOYLE, SENTENCE COMPLAINANT TO ONLY 15 YEAR. MSR WAS NEVER MENTION AT SENTENCING HEARING. ONLY ON FEB. 01, 2001, BEING ADVISED OF WHAT CHARGES CARRYED.

(12) IN PEOPLE V WHITFIELD, 840 N.E. 2d 658 (2005), THE COURT HELD WHITFIELD, PLED GUILTY TO 25 YEARS BUT WAS NOT INFORMED THAT 3 YEARS (MSR) WOULD BE ATTACHED UPON HIS RELEASE WHICH UNDER PLEA AGREEMENT GUIDELINESS, THE DEFENDANT'S MUST BE INFORMED OF POSSIBLE (MSR) ATTACHMENT DEFORE PLEADING. WHITFLIED, PLEADS GUILTY TO A SPECIFIC SENTENCE 25 YEARS AND THAT 3 YEARS (MSR) WOULD BE IMPOSED UPON HIS RELEASE INCREASED HIS SENTENCE TO 28 YEAR FOR WHICH HE HAD NOT AGREED TO SINCE (MRS) IS ALSO A FORM OF CUSTODY.

(13) THE COURT AGREED WITH WHITFIELD, AND HELD THAT HIS CONSTITU-TIONAL RIGHTS TO DUE PROCESS HAD BEEN VIOLATED. COMPLAINANT THAT THE RULE OF CONSTITUTIONAL AND STATUTORY LAW APPLIED IN WHITFIELD, APPLIES TO COMPLAINANT, IN THE LEGISLATURES INTENT TO BE APPLIED IN THIS CASE BY THE TRIAL COURT BUT ONLY IN THE AREA OF A LESSER PERIOD OF (MSR) TERM SUCH THAT COMPLAINANT TOTAL SENTENCE OF IMPRISON-MENT DOES NOT EXCEED HIS DETERMINATE AND SPECIFIC SENTENCE OF 15 YEARS. COMPLAINANT DOES NOT WISH TO WITHDRAW HIS PLEA BUT HAVE MODIFIED TO 5½ YEARS IMPRISONMENT PLUS 2 YEARS (MSR).

(15)

The ILL. Dept. of Correction uses the (MSR) period as an AFTERThought, They do not incorporate the (MSR) release period within The sentence imposed by The court. The Dept. of Corr. computes The Amount of Time an individual may be incarcerated by dividing The sentence by Two For Application of day-For-day good Time statute. The (MSR) period is administered as an isolated statute. Rather than abide by The written statute, The Dept. of Corr. elects To add (MSR) period AFTER The total incarceration Time has been served. By serving one-half of The imposed sentence day-For-day, The entire sentence has been diminished. Sentence is To include a Term of imprisonment, Term of imprisonment is To include (MSR). Therefore, sentence is To include (MSR).

(16)

The ILL. Dept. of Correction is Failing To Aggragate The (MSR) period into The period of incarceration To satisfy The entire sentence of imprisonment. Therefore, The ILL. Dept. of Corr. unlawfully calculates a sentence of imprisonment For Failure To include The Term of (MSR) into The Term of imprisonment. 15 years Sentence; 5 1/2 years incarceration is 40% Total Sentence; 2 years (MSR) release is 10% of Total Sentence; day-For-day Time is 50% of Total sentence; This Fulfill 100% of The Courts imposed sentence.

## Conclusion

Therefore, Complainant believes That he has sufficiently established his entitlement To Recieve The Relief sought pursuant To Statute 730 ILCS 5/5-8-1 (d)-(I) and has exhibited Due Diligence in his efforts To bring This issue of Error To The Attention of This Honorable Court For Correction. Complainant urges This Court To construe The instant pleading in That light And grant The Relief Complainant is entitled To Recieve pursuant To 735 ILCS 5/2 617; 735 ILCS 5/2-140 sec. (F) And 725 ILCS 5/2 122-et; seg. Complainant believes in good Faith he has a Meritorious Claim

[15] 5

To pursue in this court as alleged in his Post-Conviction Petition.

Wherefore, Complainant prays that this Honorable Court will grant Complainant all relief sought in this Motion. Modify Complainant sentence or remand back to Trial Court with instruction to 5½ years Imprisonment plus Two years (MSR). Complainant became entitled to release no sooner than Mar. 25, 2006, if earned credit time is restored, and no later than Sept. 25, 2007, if earned credit isn't restored to begin service of Two years (MSR). Declaratory judgement that defendants acts, policies and practices violated Complainant's rights under the United States Constitution. Compensatory and Punitive damages in amounts of $50.000 from each defendants.

Complainant request futher this Honorable Court to enjoin the defendants ~~and their~~ from Applying the ILL. State 730 ILCS 5/3-7-6. That allows the practice of ILL. Dept. of Correction confiscating the Financial result from this claim and any other relief this Honorable Court deems Appropriate and proper.

(S) Zakii T. Wahiid

Executed this 16ᵀᴴ day of July 2007 under penalty of perjury pursuant to (735 ILCS 5/1-109 ILL. Code of Civil Procedure).

(5) 6

① U.S. CONST. AMEND XIV

② ILL. REV. STAT. 1990 SUPP, Ch. 38 Sec. 1005-8-1 (d)

③ 725 ILCS 5/122-2.1 (a) (2) (2002)

④ 725 ILCS 5/122-4 TO 122.6 (2002)

⑤ 735 ILCS 5/2-6/7 (2002)

⑥ 735 ILCS 5/14-101, ET SEQ. (2002)

⑦ PEOPLE V. WHITFIELD, 840 N.E. 2d 658 (2005)

⑧ U.S. EX. REL. MILLER V. McGINNIS, 774 F.2d 819 (7th CIR 1985)

⑨ U.S. EX. REL. FERRIS V. FINKBEINER, 551 F.2d 185 (7th CIR. 1977)

⑩ U.S. EX. REL. BAKER V. FINKBEINER, 551 F.2d 180 (7th CIR. 1977)

⑪ SUPREME COURT RULE 402 (a) (2)

⑫ SUPREME COURT RULE 402 (d) (2)

April 23, 2001

Re: PETITION OF HABEAS CORPUS ON MANDATORY SUPERVISED RELEASE
~~☒ ☒~~ VIOLATION FROM CIRCUIT COURT 16ᵗʰ JUDICIAL
KANE COUNTY,

CLERK OF THE COURT
APPELLATE COURT Bldg.
55 Symphony Way
Elgin, IL. 60120

DEAR CLERK,
Enclosed are ONE (1) ORIGINAL AND TWO (2) COPIES OF
HABEAS CORPUS PETITION ON MANDATORY SUPERVISED
RELEASE VIOLATION, PLEASE STAMP FILE AND docket FOR
HEARING BEFORE THIS COURT AND RETURN A STAMPED
FILE COPY FOR MY RECORD, Also, ENCLOSED IN OTHER
ENVELOPE IS SAME PETITION OF HABEAS CORPUS IN
CARE OF YOUR ADDRESS TO BE FORWARDED TO THE
STATE APPELLATE DEFENDER FOR THE PEOPLE, ONE (1)
COPY ENCLOSED IN THAT ENVELOPE FOR THE PEOPLE
OF THE STATE.

C. C.                              RESPECTFULLY SUBMITTED
                                   Zakii Tawwat Wakii'd
                                   K52467
                                   P.O. Box 99
                                   PONTIAC, IL. 61764

IN THE
Appellate Court OF The State OF Illinois
Second Judicial District

Zakii Tawwab Wahiid
Plaintiff

vs

CASE NO: 00-CF-2509

People OF The State
Prison Review Board et al
Defendants

## PROOF OF SERVICE

Party / Address Mailed To:

Clerk OF The Court
Appellate Court Bldg.
55 Symphony Way
Elgin, IL. 60120

DESCRIPTION OF DOCUMENT

Petition For Habeas Corpus
Mandatory Supervised Release
Violation

Party / Address Mailed To:

People OF The State
States Atty. Office
C/o Clerk OF The Court
Appellate Court Bldg.
55 Symphony Way
Elgin, IL. 60120

DESCRIPTION OF DOCUMENT

Petition For Habeas Corpus
Mandatory Supervised Release
Violation

I, Zakii Tawwab Wahiid, The Undersigned being First duly Sworn on
Oath, deposes and states That I Mailed A copy OF The Above documents
To persons Named Above, by placing same in properly Addressed
Sealed postage paid envelopes and depositing Them in The United
States Mail on April 23, 2007.

Zakii Tawwab Wahiid  pro se

C.C.                    89

RECEIVED

APR 2 7 2007

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

IN THE

Appellate Court OF The State OF ILLinois
Second Judicial District

Lakii Tawwab Wahiid
Plaintiff

vs                                                    Case No: 00-CF-2509

People OF The State
Prison Review Board, et, al
Defendants


Petition For Writ OF Habeas Corpus For Judgement
Relief On Mandatory Supervised Release

Now Comes, Lakii Tawwab Wahiid, pro se plaintiff herein
And pursuant To 735 ILCS 5/2-1401 et. seeking leave To File
This Habeas Corpus Petition To Address The points OF law And
Constitutional Violations herein Filed pro se And hereby pet-
ition This Honorable Court To grant Judgement Relief From
Judgement entered by Kane County Circuit Court on Ap-
ril 11, 2001.

In Support Thereof, Plaintiff states The Following:

① The Circuit Court OF Kane County erred in Plaintiff's
Petition For Leave To File Petition OF Mandamus stating
pursuant To People v. Shellstrom, 216 IL. 2d 498, And Post-
Conviction Petition, stating Post Conviction Petition WASN'T
~~filed~~ Amended on or before April 13, 2007. Post Convic-
Tion Petition was Mailed To The Court Mar. 21, 2007.
Amend- To Alter Formally in Phraseology.

10

(2)   Records Reveals That The Court Failed At Sentencing on April 11, 2007, To Advise plaintiff of The Applicable Manda-Tory Supervised Release hereafter (MSR) When Plaintiff Was Sentenced To 15 years For Aggravated Robbery. Plaintiff has an legitimate Argument For which Relief is Available.

(3)   Report of proceeding of hearing on Feb. 01, 2001, The Court Stated that my charges carried on class One 4 To 15 yrs. 15 To 30 Extended Term if it was determined it would Apply; period of MSR of Two years, Used To Be called parole; Fines of up To $25,000. Same For Count Two And Count Three. Page 3 1-10. Page 3, 22 - $1 on page 4. Page 8, 14 - 20.

(4)   Statement of Facts page 12, Judge Doyle Sentenced Plaintiff To only 15 years which was the Maximum. MSR was Never Mention After being Advised of All Counts on Feb. 01, 2001. At Sentencing on Judgement Order.

(5) PLAINTIFF is FACED WITH THE POSSIBILITY OF SERVING MORE TIME IN PRISON AND ON (MSR) THAN WHAT IS REQUIRED BY ILLINOIS LAW DUE TO THE MISINTERPRETATION OF THE STATUTES AND DAY-FOR-DAY LAW BY ILL. DEPT. OF CORRECTIONS WHICH RESULTED IN A VOID JUDGEMENT IN VIOLATION OF PLAINTIFF 4th 5th 6th AND 14th AMENDMENTS RIGHTS SECURED TO HIM UNDER THE UNITED STATES CONSTITUTION AND IN VIOLATION OF ARTICLE 1, SECTION 2,8,10, 12 AND 24 OF THE ILL. CONSTITUTION OF 1970.

(6) IF PLAINTIFF SERVES 7½ YEARS OF PHYSICAL IMPRISONMENT OF HIS 15 YEARS DAY-FOR-DAY DETERMINATED AND SPECIFIC SENTENCE SUCCESSFULLY, THEN THIS IS TANTAMOUNT OF SERVING A MAXIMUM SENTENCE. ONCE PLAINTIFF HAS SERVED A MAXIMUM SENTENCE (MSR) CANNOT BE ATTACHED BECAUSE IT CREATES AN ADDITIONAL TIME PLAINTIFF WASN'T SENTENCE TOO.

(7) Chapter 38, PARAGRAPH 1003-6-3 (2) STATES:
Each day OF Good Conduct Credit shall Reduce one day THE INMATES PERIOD OF INCARCERATION. THEREFORE, ONCE THE ILL. DEPT. OF CORR. DIVIDES A SENTENCE BY TWO AND OBTAINS A QUOTIENT (CONSIDERED AS TIME TO BE IN CUSTODY), THEN THE (MSR) PERIOD AND TERM OF IMPRISONMENT MUST BE ADDED TOGETHER TO EQUAL THIS QUOTIENT.

(8) IN People v. Whitfield, 840 N.E. 2d 658 (2005), THE COURT held Whitfield, PLED GUILTY TO 2.5 YEARS BUT WAS NOT INFORMED THAT 3 YEARS (MSR) WOULD BE ATTACHED UPON HIS RELEASE WHICH UNDER PLEA AGREEMENT GUIDELINES. THE DEFENDANT'S MUST BE INFORMED OF POSSIBLE (MSR) ATTACHMENT BEFORE PLEADING. Whitfield, PLEADS GUILTY TO A SPECIFIC SENTENCE 2.5 YEARS AND THAT 3 YEARS (MSR) WOULD BE IMPOSED UPON HIS RELEASE INCREASED HIS SENTENCE TO 2.8 YEARS FOR WHICH HE HAD NOT AGREED TO SINCE (MSR) IS ALSO A FORM OF CUSTODY.

(14) The Court agreed with Whitfield, and held that his Constitutional Rights to Due Process had been violated. Plaintiff contends that the rule of constitutional and statutory law applied in Whitfield, applies to Plaintiff in the legislatures intent to be applied in this case by the trial court but only in the area of a lesser period of (MSR) term such that Plaintiff's total sentence of imprisonment does not exceed his determinate and specific sentence of 15 years. Plaintiff does not wish to withdraw his plea but have modified to 5½ years imprisonment plus 2 years (MSR).

(15) The ILL. Dept. of Corr. uses the (MSR) period as an <u>Afterthought</u>. They <u>do not</u> incorporate the (MSR) release period within the sentence imposed by the Court. The Dept. of Corr. computes the amount of time an individual may be incarcerated by dividing the sentence by two for application of day-for-day good time statute. The (MSR) period is administered as an isolated statute. Rather than abide by the written statute, the Dept. of Corr. elects to <u>Add</u> (MSR) period <u>After</u> the total incarceration time has been served. By serving one-half of the imposed sentence day-for-day, the entire sentence has been diminished. "Sentence is to include a term of imprisonment, <u>term of imprisonment is to include (MSR)</u>. Therefore, sentence is to include (MSR).

(16) The ILL. Dept. of Corr. is failing to aggregate the (MSR) period <u>INTO</u> the period of incarceration to satisfy the entire sentence of imprisonment. Therefore the ILL. Dept. of Corr. unlawfully calculates a sentence of imprisonment for failure to include the term of (MSR) <u>into</u> the term of imprisonment. 15 years sentence; 5½ years incarceration is 40% total sentence; 2 years (MSR) release is 10% of total sentence; day-for-day time is 50% of total sentence; this fulfills 100% of the Courts imposed sentence.

CONCLUSORY

Therefore, Plaintiff believes that he has sufficiently established his entitlement to recieve the relief sought pursuant to statute 730 ILCS 5/5-8-1(d)-(I) and has exhibited due dilligence in his efforts to bring this issue of error to the attention of this Honorable Court for correction. Plaintiff urges this Court to construe the instant pleading in that light and grant the relief plaintiff is entitled to recieve pursuant to 735 ILCS 5/2 617; 735 ILCS 5/2-140 Sec. (F) And 725 ILCS 5/2 122-et; seg. Plaintiff believes in good faith he has a ~~meritorious~~ meritorious claim to pursue in this Court as alleged in his Post-Conviction Petition.

Wherefore, Plaintiff prays that this Honorable Court will grant plaintiff all relief sought in this Habeas Corpus. Modify plaintiff sentence to 5½ years imprisonment plus two years (MSR). Plaintiff became entitled to release no sooner than Mar. 25, 2006, if earned credit time is restored, and no later than Sept. 25, 2007, if earned credit isn't restored to begin service of two years (MSR). Declaratory judgement that defendants acts, policies, and practices violated plaintiff's rights under the United States Constitution. Compensatory and punitive damages in amounts of $350,000 from each defendants.

Plaintiff request futher this Honorable Court to enjoin the defendants from applying the ILL. State 730 ILCS 5/3-7-6. That allows the practice of ILL. Dept. of Correction confiscating the financial result from this claim and any other relief this Honorable Court deems appropriate and proper.

/S/ Jukii To Wahiid

Executed this ~~12~~ day of
~~April~~ 2007 under penalty
of perjury pursuant to (735 ILCS 5/1-109
ILL. Code of Civil Procedure)

## AFFIDAVIT OF AFFIRMATION UNDER PENALTY OF PERJURY

I, Zakii Tawwab Wahiid , affiant, do hereby declare
and affirm under penalty of perjury as defined in 735 ILCS 5/1-109,
28 USC 1746 or 18 USC 1621 that everything contained herein is true
and accurate to the best of my knowledge and belief. I further declare
and affirm that the contents of the foregoing document(s) is/are known
to me and is/are accurate to the best of my knowledge and belief.
Finally, I do declare and affirm that the matter at hand is not taken
either frivolously or maliciously and that I believe the foregoing matter
is taken in good faith.

Signed on this 22 day of April ,
2007 .

Zakii To Wahiid
                                                        **Affiant**

9  15

STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/ 695-3750

APPELLATE COURT BUILDING
ELGIN, ILLINOIS
60120-5558

Mr. Wahid,

Your habeas corpus writ must first be filed at the trial court level – not the appellate. If denied in the trial court you may then appeal to the 2nd District

Sincerely,

Robert J Mangan

16

COUNTY OF Livingston )

## AFFIDAVIT

I, ZAKII Tauwah Wahiid _____ do hereby declare and affirm that the following information within this affidavit is true and correct in substance and in facts:

HAbEas Corpus PeTiTion ExhibiT From KAne CounTy ThAT WAS FilEd OcT. 04, 2007, ORdER From ThAT HAbEas Corpus DaTEd JunE 15, 2005, STATing lAcK OF JuRisdicTion, Copy OF MAil CARds WiTH DaTEs FiRST FilEd To 2nd DisT. CouRT on M.S.P. ViolaTion, HAbEac Corpus PETion STAmp FilEd OcT. 04, 2007 CASE No. 00-CF-2509.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed on this 6th day of MAY _____, 2007.

Zakii To Wahiid
_____
Affiant

17

IN THE CIRCUIT COURT OF THE 16th
Judicial Circuit Kane County

ZAKII TANWAB WAHIID
PLAINTIFF
VS

CASE NO. 00 CF 2509

JASON C. GARNETT
DEFENDANT

PRISON REVIEW BOARD, ET, AL
DEFENDANTS

Deborah Seyller
Clerk of the Circuit Court
Kane County, IL

OCT 0 4 2004

FILED      020
ENTERED

## Notice Of Filing

## Habeas Corpus

Now comes Petitioner, Zakii Tanwab Wahiid, pro se, pursuant to the Illinois Post Conviction Hearing (725 ILCS 5/122-1 et seq.) and requests this Court to vacate a portion of his sentence for the following reasons:

1.) Petitioner was convicted of Aggravated Robbery

and sentenced to 15 years
in the Illinois Department of Corrections on April 18, 2001.

2.) Petitioner now asserts that his Constitution Rights were under the Constitutions of the State of Illinois and the United States to wit:

3) Petitioner contends that the Unified Code of Corrections provision for Mandatory Supervised Release Thereafter MSR) 730-ILCS 5/5/5-1(d) and 730 ILCS 5/3-14-2, in it's application for those sentenced and released as a result of a determinated sentence, is unconstitutional.

Indeterminate Sentence: Pre-1978
(Including Parole)
18

64

4) Prior to 1978, an offender was sentenced to an indeterminate sentence, For example, assume a sentence of one to three years was imposed by the trial court. After serving a portion of that sentence the offender would have the opportunity, if eligible, to be granted parole by the parole board. If granted parole of that time, the parole offender would be required to serve a term of parole while simultaneously serving the remainer of his sentence outside the confines of the prison. The purpose of parole at that time was multifold, but for the sake of arguendo here, it's purpose was to govern and discipline the offender while the service of that sentence outside of the prison was being completed. See People ex rel. Abner v. Kinney, 195 N.E. 2d 651. Since the maximum term of the offender's sentence had not been fully completed per the law at that time, close monitoring and constant supervision were required to ensure that he not violate any laws, to ensure that he not violate any conditions of his parole, and finally, because he was serving a portion of a yet unserved sentence while not actually being confined in prison. If, before successfully completing the parole term, the offender violated the conditions (while not actually having been charged with a new case,) the parole board could take any of several actions. One being to recommit the offender to serve the remainer of the unserved sentence or uncompleted parole term, whichever happened to be the more lengthy of the two. Morrisey v. Braewer, 408 U.S. 471, 477-479 (set forth an acceptable description of the parole process.)

5) An offender's release to a term of parole was solely discretionary as decided by the parole board, per statute, because the maximum term required to be served by law had not yet been completed. See People ex rel Johnson v. Pate, 265 N.E. 2d 144. Not until the offender's maximum term, per the law had been served or completed, whether by actual service in prison or by way of successful parole term, was he no longer bound by any restrictions and entitled to release.

Determinate Sentence: Post-1978

6) In Feb. 1978, as a result of Public Act 80-1099, Illinois

(b) 14

converted to a determinate sentencing structure. Underserving a determinate sentence was permitted, as of rights and by statute, pursuant to 730 ILCS 5/3-6-3, to earn a day of good-time for each day that was successfully served with no rule infractions. Under this new method, for each day that was served the offender would be credited for one additional day as though that day had actually been served, and that day would be deducted from the maximum or sentence. Per the determinate sentencing law, the offender would now only serve one-half of the sentence imposed by the trial court. The remaining one half of what would appear to be an unserved portion has actually been eliminated as a result of that earned day for day good-time. Although this had every appearance of being released early, after only serving half of his sentence, the offender has actually served the entire sentence, and unlike the pre-1978 law, the entire sentence was served while being confined in the prison.

1) Under the pre-1978 law, good-time credit towards, and the diminutive, the sentence was discretionary. People ex rel. Jefferson v. Brantley, 253 N.E. 378; People ex rel. Gwartney v. Meyer 341 N.E. 2d 732. The application of this rule, however, proved no longer valid with the enactment of the determinate sentencing structure, which requires that the offender be released according to statute, 730 ILCS 5/3-6-3. Release is no longer a discretionary matter. Rather, it is now a mandatory application toward the diminution of the offender's sentence used in calculating the offender's release date, or the completion of his sentence according to law. People ex rel. Jefferson v. Brantley, supra, People ex rel. Michael v. Bower, 12 N.E. 2d 625. According to this rationale, the State no longer has jurisdiction, nor should it be able to exercise control over the offender. Futher establishing this principle, the U.S. Supreme Court announced in Wolff v. McDonald, 418 U.S. 539 (1974), that, "Illinois State prisoners have the statutory right to recieve good-time credit, and such a State-created entitlement to good-time

credits is a liberty interest, protected by the Fourteenth Amendment." An offender is entitled to good-time credits as the credit vests when a prisoner actually served the terms of imprisonment with good behavior. Williams V. Irving, 424 N.E. 2d 381, 386. As a result, the sentence should be fully served and completed according to Illinois Law, and release is Mandatory.

8.) However, contrary to this established principle, the Illinois Legislature requires a fixed term of Mandatory Supervised Release (MSR), be imposed, or added onto every determinate sentence, as though it were written in the sentence imposed by the court.

## Mandatory Supervised Release

9.) As a result of the enactment of Public Act 80-1099, in conjuction with the new determinate sentencing structure, a fixed term of MSR is required by statute, to be added onto every sentence the court imposed. This is pursuant to 730 ILCS 5(5-8-1(d), which states: Except where a term of natural life is imposed, every sentence shall include as though written therein a term in addition to the term of imprisonment.

10.) Public Act 80-1099 created the Prisoner Reveiw Board (P.R.B.) to perform essentially, the same functions as the Parole Board (the parole board being eliminated in name only.) In addition, However, the P.R.B. new duties would require them to oversee the newly released offender while serving the MSR term. The purpose of the MSR term was presumably similar to that of the parole term, even though the released offender has completed his maximum sentence according to Illinois Law.

11.) Once released, pursuant to the conditions of MSR, if the offender violates the terms of his MSR, much like the old parole system, the offender faces the possibility of being recommitted to prison for the period of time that

67

REMAINS UNSERVED ON his MSR TERM.

12.) Problematic with the new system of parole, simply, under guise of a new title, is that the paroled offender that was the product of the pre-1978, law, was actually released early from an unserved and uncompleted sentence, while the offender would have served and completed a determinate sentence continues to find himself bound by the same restrictions and limitations as that of his predecessor. The offender, upon his release, and after serving his determinate sentence according to law, should now be free from any restrictions and limitations upon his liberty.

13.) Yet, the offender finds himself bound by, for all interests and purposes, an extention and continuation of his sentence. In support of this unconstitutional doctrine, the Court, in People v. Smart, 723 N.E. 2d 1246, re-affirms that MSR is part of the sentence of unprisonment. This rationale is presumably drawn from the logic in People ex rel. Scotty v. Israel, 361 N.E. 2d 1108, where MSR's predecessor, parole, was held to be part of the original sentence by operation of law. However, recall that the pre-1978 parole operated to affect those offenders whose sentence had not yet been completed according to law, and who were serving a portion of their sentence outside of prison. This rationale can be fully accepted in that situation. However, offenders under the new determinate sentencing structure, having fully completed there sentences according to law before they are released. For the Illinois Legislature to attempt to advance this procedure forward, and to attempt it's application in unlike and varied circumstances, is unlawful. ~~bring~~ Consequently, the application results in a deprivations of the offender's liberty.

14.) After successfully completing his prison term the offender became subject to the conditions of MSR. The restrictions and limitation placed on an offender consist of a

68

myriad of conditions which the P.R.B. may choose from. Some of which may be statutorily questionable. These may include where the offender may go, when he may go, whom he may go with, how long, where he may work, and a multitude of after care programs, including electronic home detention for unspecified periods of time, subject an offender, after successfully completing the maximum term of his court imposed sentence, to such restrictions and limitations, undoubtably places limitations on an offender in exercising his liberty, and as a result, deprives him of such.

15.) The U.S. Supreme Court in Jones v. Cunningham, 371 U.S. 236, accurately commented on just such restrictions and depreciations of liberty that resulted from an offender placed on parole. The court said that such custody and control involves significant restraints of the offender's liberty. After noting the myriad of conditions imposed, the court further noted that what mattered is that the conditions significantly restrain the offender's liberty to do things in this country that free men are entitled to do. Jones v. Cunningham, 371 U.S. 242, 243.

16.) As well, our own Illinois Supreme Court, in People v. Martin Trigona, 489 N.E. 2d 1356, appears to be in lockstep with the rationale of Jones, when it reiterates that the courts of this state have determined a person on MSR are deprived of their liberty in some meaningful way. People v. Martin Trigona, 489 N.E. 2d 1358.

17.) Simply then, petitioner argues that MSR is a wholly unconstitutional infringement on an ex-offender's constitutional right because stripped to the essentials, MSR, at the point it subjects an offender to it's conditions, had become an extention of his sentence that continues to deprive him of his liberty. IT MUST BE ADDRESSED HERE, then, in support of this contention, that because MSR is not a judicially imposed component of this offenders sentence, rather, it is, as the Illinois Legislature pretends

23

69

in the statute", as though written therein," it violates Due process.

## Due Process

18.) The Fifth Amendment of the United States Constitutio states that no person shall be deprived of life, liberty or property without <u>due process</u> of law. When the Illinois Legislature adopted language and enacted the statute that would permit Illinois Department of Correction an or Prisoner Review Board to impose a term of MSR, and essentially extend an offender's sentence beyond the time imposed by the court as punishment for an offens convicted of, as though the MSR term was already auto matically written into the sentencing parameters, it violated the offender's right to due process. Moreover, such an act would also appear to be an infringement upo: The Role of the judiciary.

19.) In <u>People v. Fowler</u>, 151 N.E. 2d 324, The ILL. Supreme Court again falls into line with <u>the gist</u> of the position put foward herein. The Fowler Court noted, while relying on <u>People v. Montana</u>, 44 N.E. 2d 569, That a change by an Administrative body That tends to increase the sentence, and in effect, the judgement of the court, was an unlaw-ful delegation of judicial power, <u>Fowler</u>, 151 N.E. 2d 329. In the instant matter, clearly the ILL. Legislature has found itself practicing just delegation, and as such finds itself violating the seperation of power doctrine.

20.) It appears to this petitioner that the ILL. Legislature has no valid constitutional authority to enact such a statute, and therefore, it must be conceded that MSR is unconstitutional.

21.) In <u>People ex. rel. Jefferson v. Brantley</u>, 253 N.E. 2d 378, The court found, while addressing a similar parole issue, The State has jurisdiction over an offender until he has served the maximum sentence, or until the sentence has been terminated according to law, 253 N.E. 2d at 380.

2.4

70

22.) In People ex.rel. Michaels v. Bowen, 12 N.E. 2d 625, The ILL. Supreme Court determined The law is established in ILL. That a offender is made To appear That he is held in confinement after his sentence has expired, Taking into account Time earned by him by reason of good conduct.

23.) Both 730 ILCS 5/5-8-1(d) and 730 ILCS 5/5-4-1(b), indicates That a sentence and punishment shall be imposed by The Trial Court only. Additionally, 730 ILCS 5/5-3 (disposition) lists each method That may be employed as appropriate dispositions for, or part of, a sentence for a felony. Yet, The ILL. Courts continue, and have since 1978, acquiesce To accept, comply, or submit without open opposition (syn consent,) To This statutory intrusion on an ex-offender constitutional rights, and The Illinois P.R.B, as well, continues To impose MSR limitation and restrictive conditions on offenders after They have fully completed Their prison sentence imposed by The Courts, an unconstitutionally so.

### Mandatory Supervised Release Violation

24.) To extend The constitutional violation a degree further, we need To only look at The situation when The P.R.B. determines That The ex-offender has violated The Terms of his MSR, The first problem area seems To arise with The "Warrant" giving The ILL. Dept. of Correction The authority To Take offender's into custody once The alleged violation is Thought To have occured. The authority for The use of This "Warrant" is currently drawn from statute. Under pre-1978 indeterminate sentence statutes where offenders were paroled, This Warden's "Warrant" was a proper authority for The reincarceration of a paroled offender who violated The Terms or conditions of his parole because a portion of The sentence remained unserved. People ex rel. Johnson v. Pocto, 265 N.E. 2d 146. But under The post-1978 law, an offender was sentenced To a determinate sentence, and served The entire sentence

25

according to law before he was released. Again, There is no unserved portion of The sentence That remains, But The ILL. Legislature, here again attempts to advance The principles of law That Appropriately applied to The situation pre-1978, Where paroled offenders had not yet completed Their sentences. However, These principles are no longer valid post-197 First, in application, because There is no need, and Secondly, because The application becomes constitutionally repugnant as The ex-offender's sentence is completed by law. The "warrant" used by ILL. Dept. of Correction and The P.R.B. is unconstitutional and should be prohibited.

25.) Once The alleged violation is Thought To have occurred, The parole agent Takes The offender into custody and have him reincarcerated. This becomes The second area brought with constitutional violations. Upon The final determination of The offender's MSR violation, he is now required To serve The portion remaining on his MSR Term, day for day good conduct credits, per 730 ILCS 5/3-6-3 is applicable.

26.) As a result, The violator will now serve one/one half of The remaining MSR Term. This is Treated in The exact same way as The offenders original sentence. This is also evidence That The ILL. Dept of Correction Treats MSR as a extention of The sentence imposed by The Courts, However, This sentence was not judicially imposed, Rather, it was Legislatively mandated.

27.) The applicability of common law statute 720 ILCS 5/1-3 states That no conduct constitutes an offense unless it is described as an offense in This code or in another statute in This state. No where in The Illinois Criminal Code, or any where else in The Illinois statute, does it states That a violation of The Illinois MSR Terms is a felony punishable by imprisonment, nor has it been codified as a specific class of offense. The Illinois Legislature has no authority To authorize The P.R.B. To recommit an ex-offender for any Time beyond That of The sentence imposed by The Court. The author-

26

72.

ity stipulated in the statute that allows this does not meet the requirements of due process and is unconstitutional.

28.) The third area that requires attention is that once an ex-offender is determined to have violated his MSR, there exist per statute, some instances where the P.R.B. may add up to on year to the remaining MSR term to be served upon recommitment, 703 ILCS 5/3-3-9 et seq. To enable the two methods mus be utilized, both of which offend the guarantee of due process First, for the P.R.B. to arbitrarily add more time to an ex-offender's sentence, A.) Without being charged with a new offense B.) Without being found guilty in a court of law for that offense C.) That not only are the previous two factors absent, but that the additional of the one year is imposed without the benefi of any semblance of due process and is therefore unconstitutional. Second, If the additional one year that the P.R.B. adds onto the unserved MSR term results from the P.R.B. revoking that year from the offender's earned good-time from his previously completed sentence that he's served and was released from again problems surface. NOTE: The courts statement in Hamilton v. O'Leary, 976 F. 2d 341 (7th Cir. 1992,) citing authority from Wolff v. McDonald, that the maximum requirement of due process; unless the finding of a prison disciplinary board are supported by some evidence from the record. Since the offender does not appear before any disciplinary board for any rule infractions as a result of an MSR violation, this certainly would seem instructive. And, recall as well, that the ILL. State prisoner's earned good conduct credits area protected liberty interest that cannot be revoked simply because the ILL. Legislature enacts law that makes the process available. The constitutional process becomes offended when either of these two methods are administere

29.) The P.R.B. has absolutely no valid authority, that enab them to add any time to an offender's sentence, whether it be upon the recommitment of an MSR violation, or for any matter, to be served consecutively to the term

27

43

imposed by The COURT FOR The OFFENSE The OFFENDER WAS FOUND guilty OF, and appropriately sentenced To ACCORDING To punishments prescribed FOR That OFFENSE.

30.) These Three AREAS ARE MERELY The by-product OF The unconstitutional MSR procedures.

31.) IF ILL. OFFENDERS should be ~~COMMENSURATE WITH The~~ REQUIRED To SERVE A MSR TEAM, The MSR TERM should be CUMMENSURATE WiTh The NUMBER OF YEARS REMAINING ON The OFFENDER's SENTENCE.

32.) THEREFORE The ENACTMENT OF Public ACT 80-1099, by The ILL. LEGISLATURE THAT AUTHORIZED The P.R.B. To impose A TERM OF MSR ViOLATES The SEPARATION OF POWERS DOCTRINE, VIOLATES The ILL. PRISONER CONSTITUTIONAL RIGHTS, To due proCESS AND UNCONSTITUTIONALLY deprives him OF his liberty.

33.) BECAUSE MSR is UNCONSTITUTIONAL, This PETITIONER should NOT be REQUIRED To SERVE A TERM OF MSR WHEN Added UNTO his SENTENCE by The P.R.B. AFTER he has lawfully completed The judicially imposed MAXIMUM prison SENTENCE.

34.) A CONSTITUTIONAL challenge To A STATUTE CAN be RAISED AT ANY TIME, People V. BRYANT, 125 ILL. 2d 448, 132 ILL. Dec. 415, 537 N.E. 2d 1221, (1989); People V. Zeigler, 125 ILL. 2d 42, 125 ILL. Dec. 845, 531 N.E. 2d 24 (1988). (CAN be RAISED FOR The FIRST TIME IN POST CONVICTION PETITION.)

Wherefore, for all the above foregoing reasons, this Petitioner prays that this Honorable Court will grant him the following relief.

A. Vacate this Petitioner sentence as unconstitutional.

B. Grant a Hearing in this matter.

C. Allow Petitioner to Supplement this Petition.

D. Appoint Counsel to re-present this Petitioner because he is Indigent.

Respectfully Submitted

Zakii Tawwab Wahiid

K52467

B.B.2, Box 31

Sumner, IL.

62466

EXHIBIT 16:

# IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Case No. _00 cf~ 2509_

| | |
|---|---|
| *People* | *Zalcii Wahiid* |
| Plaintiff(s) | Defendant(s) |
| *Mhndolu* | |
| Plaintiff(s) Atty. | Defendant(s) Atty. |

Judge _Sheldon_   Court Reporter _Deb H._   ☐ None (NCRP)   Deputy Clerk

A copy of this order   ☐ should be sent to:   ☐ has been sent to:

☐ Plaintiff Atty.   ☐ Defense Atty.   ☐ Other _____

Deborah Seyller
Clerk of the Circuit Court
Kane County, IL

JUN 15 2005

FILED   0138
ENTERED

File Stamp

## ORDER

☐ Defendant is present in Open Court (DPOC)
☐ Defendant is present via Closed Circuit TV (CCTV)
☑ Defendant did not appear (DNAOC)
☐ Interpreter present (INTPR)
☐ Other _____

☐ Defendant has been advised of his rights and penalties (DFRPE)
☐ Inabsentia explained (IAE)
☐ Defendant remanded for transport by sheriff (OROT)
☐ Defendant remanded for CCTV appearance (ORCTV)
☐ Defendant to appear in street clothes and bring lunch (DFASC)

☐ CASE CONTINUED TO _____ at ____ m. room _____

☐ By agreement (MAGRE)
☐ On Motion of State (MPROS)
☐ On Motion of Defendant (MDEFN)
☐ On Motion of Court (MCORT)

☐ Pre-trial/status _____
☐ Bench trial
☐ Jury trial
☐ Attorney
☐ VOP Hearing
☐ Hearing on Motion for _____
☐ _____

## THE CLERK IS ORDERED TO:

☐ Send bail forfeiture notice returnable _____ at ____ m. room _____ (BN)
☐ Issue summons returnable _____ at ____ m. room _____ (OISUM)
☐ Take Judgment on forfeiture
☐ Send failure to pay notice returnable _____ at ____ m. room _____
☐ Send failure to pay notice and close upon non-payment
☐ Send final notice returnable _____ at ____ m. room _____
☐ Issue warrant forthwith (OIWAR)(504)

   Bail set at _____   ☐ 10% to apply   ☐ Full Cash   ☐ Hold Without Bond   ☐ No Recog.

☐ Strike court date of _____ (OCDST)   ☐ Vacate all other court dates
☐ Recall outstanding warrants on this file only (WRNTC)
☑ Other 1) Ct. receives correspondence from D requesting writ — Ct finds
Ct. lacks jurisdiction to deal with issue raised in Ds
correspondence

30

Entered _6/15/05_   Judge _Sheldon_

P1-CF-001 (07/03)   White - Clerk   Yellow - Sheriff or P.D   Pink - Defendant   Gold - SAO

1 OF 2

May 06, 2007

Office Of The Clerk
Appellate Court
55 Symphony Way
Elgin, I.L. 60120-5558

Dear Mr. Robert J. Mangan,
   In reference to your letter and partial copy of my 66 page
Habeas Corpus Petition on Circuit Court Error I recieved May
04, 2007. Enclosed is my Exhibit to be added to Habeas
Corpus Petition sent to this court dated April 22, 2007.
I filed to Kane County Circuit Court on Dec. 04, 2007
an Habeas Corpus Petition on M.S.R. Violation.
   Please stamp copy and file for hearing before this court
my 66 page Habeas Capus and this Habeas Corpus from
Circuit Court as Exhibit and return stamp file complete
Petition for total pages filed Habeas Corpus 82 pages.
   I didn't feel I needed to send this Habeas as an
Exhibit with Habeas Corpus I sent. I wasn't admonish
about the Mandatory Supervised Release term to be added
to my sentence at sentencing hearing by state or courts
I was only mention this Feb. 01, 2001 hearing when I
plead guilty was told what I could recieve pages 2 & 3
of Feb. 01, 2001 hearing report. I was on April 11, 2001
Sentence to only 15 years.

31

(2)

No M.S.R. was mention by court or state this viole
violate my Due Process and 14th Amendment. Please
File and Stamp Copy present Habeas Corpus Petition &
Exhibits for this court hearing on Mr. S.R. Violation
and Return Stamp file complete copies of Habeas
Corpus Petition this Exhibits added makes it 82 pages
and Returns for my Files.

C.C.

Zakiu To Wahiid
KS2467
P.O. Box 99
Pontiac, IL. 61764

June 03, 2007

Clerk of The Court
Appellate Court
55 Symphony Way
Elgin, ILL. 60120-5558

Dear Robert J. Manigan,

On May 06, 2007, I written a letter explaining why I didn't file as an exhibit Habeas Corpus That was filed to Kane County Circuit Court on Dec. 04, 2004.

When I filed Habeas Corpus to this Court on April 22, 2007, Upon recieving your letter and half of Habeas Corpus petition. I then filed to this Court the Habeas Corpus petition to be placed as exhibit in Habeas Corpus petition on M.S.R. to this Appellate Court. On May 08, I forward Circuit Court Habeas. I haven't recieved my filed copy of complete petition for the Court to review or remand back to Circuit Court with instruction. Would the Clerk please forward complete filed Stamp copy of Habeas Corpus petition case no. 00-CF-2509 Mandatory Supervised Release and hearing date if petition.

C.C.

Zakte To Wahiid
KS2467
P. O. Box 99
Pontiac, ILL. 61764

33

June 24, 2007

Clerk of The Court
Appellate Court Bldg.
55 Symphony Way
Elgin IL. 60120


Dear Clerk of The Court,
        On April 22, 2007, I Filed To This Court
A Habeas Corpus Petition on Mandatory Supervised Release.
The Clerk sent back To me part of Petition That was
Filed stating I have To File In Circuit Court.
        I Forward back To This Clerk Copy of Habeas
Corpus That was Filed in Circuit Court Kane County. This was
On May 06, 2007. After not hearing From The Court
I wrote Another letter dated June 03, 2007, Asking
About Case being Docketed For hearing. It's June 24,
2007, And I Still haven't Recieved my Stamped File
Copy of Habeas Corpus Petition on (M.S.R.) For This
Court hearing Also Ruling From Circuit Court decision.
May I please be Forward Stamp File Copy of said Petition
& Circuit Court Case No. 00-CF-2509.


C.C.

                                            Zakii To Wahiid
                                            K52467
                                            P.O. Box 99
                                            Pontiac, Ill. 61764

34

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZAKII TAWWAB WAHIID, )
Inmate #K52467, )
 )
               Petitioner, )
 )
vs. ) CIVIL NO. 06-740-GPM
 )
JASON C. GARNETT, PRISONER )
REVIEW BOARD, and ILLINOIS )
DEPARTMENT OF CORRECTIONS, )
 )
               Respondents. )

## MEMORANDUM AND ORDER

MURPHY, Chief District Judge:

Petitioner, acting *pro se*, brings this action seeking a writ of mandamus pursuant to Illinois

statute. *See* 735 ILCS 5/14-101 *et seq.* Plaintiff requests that the Court order officials of the Illinois

Department of Corrections to alter the term of mandatory supervised release that he is required to

serve at the end of the criminal sentence imposed by an Illinois court because the statute dictating

that term is unconstitutional on its face and in its application. Without expressing any opinion as

to the merits of his claim, the Court finds that the action must be dismissed.

The Illinois statute under which Plaintiff brings this action does not bind a federal court.

That procedural statute governs the issuance of writs of mandamus by Illinois state courts. "The

federal government is not the enforcer of state law." *Pasiewicz v. Lake County Forest Preserve*

*Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Thus, Plaintiff has chosen the wrong procedural vehicle for

bringing his claims.

Page 1 of 3

 35

A federal court may, under certain circumstances, have the power to compel a state official

to action. *See* 28 U.S.C. § 1651. Mandamus, however, is an extraordinary remedy reserved only

for "extreme situations." *See United States v. Byerley*, 46 F.3d 694 (7th Cir. 1995).

> A writ of mandamus "traditionally is available only 'to confine an inferior court to
> a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority
> when it is its duty to do so.'" *Id.* (citation omitted). The party seeking mandamus
> has "the burden of showing that its right to issuance of the writ is 'clear and
> indisputable.'"

*Id., citing Will v. United States*, 389 U.S. 90, 96 (1967). Petitioner has made no showing of a "clear

and indisputable" right to mandamus. Even if he had, there is no need to resort to such extraordinary

relief when the avenue of habeas corpus is available to Petitioner for bringing his claim provided

he has exhausted the remedies available to him in state court. Habeas corpus is the sole federal

remedy for challenging the fact or duration of an inmate's confinement. *Preiser v. Rodriguez*, 411

U.S. 475, 500 (1973).

> Federal law requires that state prisoners give state courts a fair opportunity to act on
> their claims before bringing habeas claims in federal court. *See* 28 U.S.C. § 2254(c);
> *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 144
> L. Ed. 2d 1 (1998); *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998). The
> requirement that state courts have the first opportunity to cure a claim of continued
> confinement in an unconstitutional fashion stems from the understanding that state
> courts are equally obliged to follow federal law and from the desire for comity
> between state and federal court systems. *See O'Sullivan*, 526 U.S. at 844-45, 119
> S. Ct. 1728; *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S. Ct. 2546, 115
> L .Ed. 2d 640 (1991). A "fair presentment" of a petitioner's claims requires that a
> petitioner give state courts "a meaningful opportunity to pass upon the substance of
> the claims [petitioner] later presses in federal court." *Howard v. O'Sullivan*, 185
> F.3d 721, 725 (7th Cir. 1999).

*Spreitzer v. Schomig*, 219 F.3d 639 , 644-45 (7th Cir. 2000). "A petitioner presents [his] claims fully

simply by pursuing all available avenues of relief provided by the state before turning to the federal

courts." *Howard*, 185 F.3d at 725; *Kurzawa*, 146 F.3d at 440. Further, "[i]f a prisoner fails to

Page 2 of 3

present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999); *see also O'Sullivan*, 526 U.S. at 848.

Plaintiff has presented some evidence that he attempted to challenge his sentence in state court, but the scant information he provides is ambiguous as to whether the state court has issued a final ruling on the claim, or even as to whether Plaintiff presented this particular claim to the state court at all. If Petitioner chooses to bring this claim in a habeas corpus action, the Court *strongly urges* Petitioner to do so on the Court's form upon which Petitioner may clearly indicate the procedural posture of the claim in state court. The Clerk of Court is **DIRECTED** to forward to Petitioner with a copy of this order the Court's state habeas corpus form.

Accordingly, this claim is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, *but only after he has exhausted his state court remedies.*

**IT IS SO ORDERED.**

DATED: 01/10/07

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge



37

COPY

43

# SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Zakii Tawwab Wahiid
PLAINTIFF

VS

CASE NO. 00-CF-2509

Jason C. Garnett
Warden
Prison Review Board, et, al
DEFENDANTS

FILED
ENTERED
2001 FEB -7 A 10:
DEBORAH SEYLLER
CIRCUIT COURT CLERK
KANE COUNTY, IL

# PROOF OF SERVICE

PARTY/ADDRESS MAILED TO:

Clerk OF The Court
P.O.Box 112
Geneva, ILL. 60134-0112

DESCRIPTION OF DOCUMENTS

PETITION OF MANDAMUS (MSA)

PARTY/ADDRESS Mailed TO:

States Attorney Office
37 W 777 RT. 38
St. Charles, ILL. 60175

DESCRIPTION OF DOCUMENTS

PETITION OF MANDAMUS (MSA)

I, Zakii TawwabWahiid, The undersigned being First duly sworn
on oath, deposes and states that I mailed a copy of The above docu-
ments To The persons Named above, by placing same in properly
Addressed sealed, postage paid envelopes and depositing Them in The
United States Mail on _____, _____.

Zakii TawwabWahiid PRO SE
K52467
P.O.Box 99
PONTIAC, ILL. 61764

*COPIES SENT TO: JUDGE, STATE'S DEFENSE

36

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS

V.                                        00CF2509

ZAKII T. WAHIID

### ORDER

This cause coming before the Court on Petitioner's, Zakii T.Wahiid, Petition For Leave To File
Petition of Mandamus.

The Court finds that pursuant to People v. Shellstrom, 216 Il.2d 498, Petitioner is granted leave
to withdraw his petition and amend it to a post-conviction petition.

Petitioner is ordered to withdraw his Petition for Mandamus and amend it to a Petition For Post-
Conviction Relief on or before April 13, 2007, or the Court will summarily dismiss the present
petition.

The Clerk of the Circuit Court of Kane County is ordered to send a copy of this order to the
petitioner instanter.

Date: March 13, 2007                     TIMOTHY Q. SHELDON
                                         Enter: _____
                                                      Judge

Clerk of the Circuit Court
Kane County, IL

MAR 13 2007

FILED        28
ENTERED



This is a true copy of the
original document which is
filed in the lead case in my
office

Deputy: _____
Circuit Court Clerk, Kane County, Illinois

COPY

## Offender Authorization for Payment

Posting Document # _____     Date Mar 19, 2007

Offender Name Zakii Tawwab Wahid     ID# K52467     Housing Unit _____

Pay to POSTAGE

    Address _____

    City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of _____

☒ I hereby authorize payment of postage for the attached mail. . ☐ I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature _____     ID# K52467

Witness Signature _____

☐ Approved ☐ Not Approved   Chief Administrative Officer Signature _____

Postage applied in the amount of _____ dollars and _____ cents.

Distribution:  Business Office, Offender

*Printed on Recycled Paper*

DOC 0296 (Eff. 1/2006)
(Replaces DC 828)

---

COPY

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Authorization for Payment

Posting Document # _____     Date April 04, 2007

Offender Name Zakii Tawwab Wahid     ID# K52467     Housing Unit W-118

Pay to POSTAGE

    Address _____

    City, State, Zip _____

The sum of _____ dollars and _____ cents charged to my trust fund

account, for the purpose of _____

☒ I hereby authorize payment of postage for the attached mail. . ☐ I hereby request information on electronic
funds transfers to be placed in the attached mail.

Offender Signature _____     ID# K52467

Witness Signature _____     504279   APR. 05. 2007

☐ Approved ☐ Not Approved   Chief Administrative Officer Signature _____

Postage applied in the amount of _____ dollars and _____ cents.

Distribution:  Business Office, Offender

*Printed on Recycled Paper*

DOC 0296 (Eff. 1/2006)
(Replaces DC 828)

# IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT, KANE COUNTY, ILL.

Zakii Tawwab Wahiid
PETITIONER

VS

People Of The STATE
RESPONDENT
Prisoner Review Board et, al

CASE NO. OO CF 2509

Clerk of the Circuit Court
Kane County, IL

APR 10 2007

FILED
ENTERED

97

# POST-CONVICTION 725 ILCS 5/122-1 ET Seq. AND SUPPORTING MEMORANDUM OF LAW

# PROCEDURAL BACKGROUND

On Oct. 4 2000, Petitioner was charged by way of Information to wit: Aggravated Robbery ( 720 ILCS 5/18-5) (West 2000) Unified Code, Class One (1) Felony. Subsequently Thereafter Counsel was Appointed by The Court To Represent Petitioner.
On Feb. 1, 2001, Petitioner entered a plea of guilty.

# STANDARD OF REVIEW

The purpose of a Post-Conviction proceeding is to allow inquiry into constitutional issues involving The original conviction and sentence that have not been, And could not have been adjudicated previously on direct Appeal. People v. Morgan, 719 N.E. 2d 681 (1991). The Post-Conviction Hearing Act provides The mechanism by which Those under a criminal sentence can assert That Their conviction were The result of a substantial denial of Their constitutional Rights. People v. Coleman, 701 N.E. 2d 1063 (1998).

(1)  41

A Post-Conviction should not be dismissed where liberally construing the record in favor of the petitioner. The petitioner can make a substantial showing of a constitutional violation, People v. Hudson, 195 ILL. 2d 417 (2001), and liberally construed to afford a convicted person an opportunity to present questions of deprivation of constitutional rights, People v. Pier, 281 N.G. 2d 289 (1972). In deciding to proceed on a post-conviction petition a post-conviction court may examine constitutional violations. That are based on facts by no fault of the petitioner, and could not have been presented on Direct Appeal. People v. Gosier, 649 N.G. 2d 364 (1995).

### Below is a Delineation of the Issue Petitioner Presents for This Courts Review

"The Circuit Court's decision of only a 15 year sentence without admonishment of the additional two years Mandatory Supervised Release (MSR) Term." Amount to a unilateral modification and Breach of the plea Agreement."

In the case at bar, Petitioner contends that his constitutional rights to Due process and fundamental fairness was violated because he pled guilty in exchange for a specific sentence, but recieved a different more "onerous" sentence than the one he agreed to. On Feb. 1, 2001, Petitioner entered a plea of guilty to the charge of Aggravated Robbery, pursuant to plea Agreement.
At no time during the plea Hearing on April 11, 2001, did the prosecutor or court advice petitioner that pursuant to 730 ILCS 5/5-8-1 (d) (1) (West 1998). Unified Code of Correction, He would be subjected to a two year period of Mandatory Supervised Release (MSR). Following his 15 year sentence for Aggravated Robbery.

While Petitioner was in prison he learned of the two year MSR Team added to his sentence. Petitioner contends that his Fifth and Fourteenth Amendments, Due Process Rights were violated because of the MSR Team, which he was never advised has been added to his sentence. And results in a "more onerous" sentence than the one he plead guilty too.

Petitioner does not ask to have his plea withdrawn. Instead, he seeks to hold the state to the terms plead upon. Petitioner argues that the appropriate relief would be to reduce his 15 year prison term by the length of the Statutorily required MSR Team. Petitioner believes it's appropriate, at the outset, to identify the exact nature of his claim. When seeking relief from a guilty plea, either directly or collaterally, there are two separate though closely related, constitutional challenge that may be made.

① That the plea of guilty was not made voluntarily and with full knowledge of the consequences.

② That Petitioner did not recieve the benefit of the plea he made when he plead guilty.

In the case at bar, Petitioner contends that he is raising a "benefit of the plea agreement" claim i.e., that his constitutional right to Due Process and Fundamental Fairness was violated.

Petitioner further maintains that, because the Circuit Court failed to admonish him, adding the MSR Team to his sentence violates Due Process, Fundamental Fairness, and principles of the contact law. The Illinois Supreme Court Rule 402 (a) and the Due Process Clause of the Illinois and United States Constitution requires the Circuit Court to admonish him, before accepting his plea for the offense of Aggravated Robbery. That the two year MSR Team would be added to his sentence.

In light of the argument raised, examine the two types of constitutional claims. The first constitutional claim deprives from Boykin v. Alabama, 395 U.S. 238 (1969). In Boykin, the defendant entered pleas of guilty to five counts of robbery and was subsequently sentenced to death. The record of the defendants plea hearing, however, showed that the trial court asked defendant no questions concerning his plea and the defendant did not address the court.

On review, the Supreme Court held that for a guilty plea to be valid under the Due Process Clause, the record must affirmatively show that the plea was entered intelligently and with full knowledge of its consequences. In that case, it could not be determined from the record of defendants plea hearing that his plea had been entered voluntarily or that he was aware of the consequences of his plea. The Court reversed defendant's conviction and sentence. The "benefit of the plea claim finds it's roots in Santobello v. New York, 404 U.S. 257 (1971). In Santobello, the defendant agreed to plead guilty in exchange for various concessions by the government, including a promise by the prosecutor that no sentencing recommendation would be made by the government. Defendant plead guilty and, after a lengthy hiatus, was sentenced by the court. At defendants hearing, the government was represented by a different prosecutor, recommended a sentence to the court over defendants objection.

The court adopted the recommended sentence. On appeal, the government conceded that the promise to refrain from making a sentence recommendation had been made during plea negotiation. Accordingly, the United States Supreme Court addressing the issue. Santobello, 404 U.S. at 262.

The cause was remanded to State Court, to determine whether specific enforcement of the plea agreement was the appropriate remedy or whether fundamental fairness required that defendant be given the opportunity to withdraw his plea.

Boykin and Santobello, deals with two different aspect of a plea its acceptance and its implementation. As these decisions make clear, principles of Due Process applys to both aspects to the procedure of accepting the plea, aware of these facts, again, as to the process of implementing the plea itself. Mabry v. Johnson, 467 U.S. 504 (1984). (Both the validity of a plea and it's enforcement are governed by Due Process); See Also People v. Walker, 54 Cal. 3d 1013 (1991).

Petitioner does NOT challenge the validity of the plea and, accordingly, does NOT seek the withdrawal of his plea of guilty.

Instead, Petitioner concedes that a term of Supervised Release is statutorily mandated and therefore, cannot be legally struck from his sentence. See 730 ILCS 5/5 8-1-1(d)(1)(West 1998). For this reason Petitioner asks that his sentence be modified to 5½ years imprisonment plus two years of Mandatory Supervised Release to approximate the plea agreement.

Pursuant to Illinois Supreme Court Rule 402 every defendant who enters a plea of guilty has a Due Process Right to be properly and fully admonished that the mandatory period of parole [now called Mandatory Supervised Release] ("MSR") pertaining to the offense is a part of the sentence that will be imposed." See Also People v. McCoy, 385 N.E. 2d 696 (1979).

Under the circumstances it would be incongruous to hold that petitioner forfeited the right to bring a post-conviction claim because he did NOT object to the Circuit Courts

Failure To Admonish him. To so hold would place the onus on petitioner to ensure his own admonishment in accord with Due Process. Moreover, petitioner alleges that it was not until he was in prison, that he learned that his sentence had been increased by a two year period of MSA. Therefore, petitioner could not have raised the error in a motion (Petitioner Exhibit C).

As discussed earlier, the court held in <u>Santobello</u>, that, "When a plea rests in any significant degree on a promise or Agreement of the Prosecutor, so that it can be said to be part of the inducement or consideration such a promise must be Fulfilled" <u>Santobello</u>, 404 U.S. at 262.

By this holding, the court recognized that plea agreement may be enforceable on constitutional grounds. In other words, if a defendant shows that his plea of guilty was entered in reliance on a plea agreement, he may have a Due Process right to enforce the terms of the agreement. <u>Mabry v. Johnson</u>, 467 U.S. 504 (1984); <u>People v. Navaroli</u>, 521 N.E. 2d 891 (1988).

This is because a plea agreement once embodied in the judgement of the court, deprives a defendant of liberty and other constitutionally protected interest. <u>Mabry v. Johnson</u>, 467 U.S. at 507-08. The Ill. Supreme court recognized the constitutional underpinnings of a plea agreement in, <u>People v. Evans</u> 673 N.E. 2d 244 (1996). When held:

> "Courts must keep in mind that defendants
> "contract" right is constitutionally based
> and therefore reflects concerns that
> differ fundamentally from and run
> wilder than those of commercial contract
> law. [Citation] As a result the app-
> lication of contract law principles to
> plea agreement may require temping
> in some instances."

(6)

46

Applying the principles first espoused in Santobello, the court held Evans, that when a defendant enters a plea of guilty in exchange for a specified benefits, such as the dismissal of certain counts on the promise of a certain sentence or sentencing recommendation, both state and the defendant must be bound by the team of the agreement. Evans, 673 N.E. 2d 244. Although in Evans the court was concerned with the constitutionality of holding defendant's to the teams of their plea agreement of the court. The court quoted with favor U.S. v. Harvey, 791 F. 2d 294, 300 (4th Cir. 1986), for the proposition that [N]either side should be able, anymore than would private contracting parties unilaterally to renege or seek modification simply because of uninduced mistake or change of mind. Evans, 673 N.E. 2d 244.

In the case U.S. ex rel. Baker v. Finkbeiner, 551 F.2d 180 (7th Cir. 1977), and U.S. ex rel. Ferris v. Finkbeiner, 551 F.2d 185 (7th Cir. 1977). The defendants, like petitioner entered pleas of guilty in exchange for the promise of a specific sentence and were not enformed by the court prior to the court's acceptance of their pleas, that a statutorily required mandatory period of parole would be attached to the prison sentence. Having been denied relief in state court, the defendants sought writ of Habeas Corpus. The Baker court ruled that the defendants due process rights had been violated. Baker, 551 F.2d at 183.

Citing Santobello v. New York 404 U.S. 257 (1971). The Baker court held that the addition of the mandatory parole team made the defendant's sentence "more onerous" than what he had been promised and as a result, he did not recieve the benefit of the bargain he made with the state.

The Baker, court concluded that, because the defendant had entered his plea in exchange for a specific sentence, the failure of the prosecutor and the trial court to advise Baker, of the mandatory parole term "created a defect of constitutional dimension in his guilty plea" in that the guilty plea was "unfairly induced in violation of the Due Process Clause, Baker, 55t F.2d at 181, 184.

In Ferris, too, had been substantially prejudice by the additional parole term, and that Due Process notions of fundamental fairness required that he recieve the benefit of the bargain he had struck.

On the other hand, petitioner plea agreement for a specified sentence. The court's failure to advise petitioner on record, concerning the MSR term has been held to be reversible error and a violation of Due Process, as explained in People v. Didley, 572 N.E. 2d 423 (1991):

> "When a defendant has plead guilty in contemplation of recieving a specific sentence imposing additional and unbargained for term or conditions is not permissible.

See also People v. Smith, 676 N.E. 2d 234 (1996). (Where defendant agreed to plead guilty in exchange for an 11 year sentence, the failure to advise defendant that a three year MSR term would be added to his sentence made his plea unknowing. People v. Moore, 574 N.E. 2d 2037 (1991). Because defendant negotiated for a predetermined sentence, the failure to admonish him regarding the MSR was error). People v. D'Toole, 529 N.E. 2d 554 (1988). Defendant entitled to post-conviction relief because Due Process was violated where the court advised defendant that he would be sentence to a "flat ten years" and did not tell him that a term of MSR would be added). People v. Kull, 525 N.E. 2d 1223 (1988). (Plain error occured because defendant plead guilty in exchange for an agreed 22 year sentence but was given 22 years plus three years MSR. (A.)

48

Petitioner notes The above case, conclude That, Although substan-
tial compliance with Rule 402 is sufficient To establish Due process
People v. Fuller, 793 N.E.2d 526 (2002). People v. Burt, 658 N.E.2d
375 (1995). And an ymperfect admonishment is not Reveasible
Eraar unless real justice has been denied or the defendant has
been prejudiced by The inadequate admonishment. People v.
Davis, 582 N.E.2d 714 (1991). There is no substantial compliance with
402 and Due Process is violated when a defendant pleads guilty in
exchange for a specific sentence and The Trial court fails To
advice The defendant prior To Accepting his plea. That The Man-
datory Supervised Release Team will be added To That sent-
ence. In The circumstances, Addition To The MSR Team To the
Agreed upon sentence Violates Due Process because The sent-
ence Imposed more Onerous Than The one defendant Agreed
To at The Time of The plea hearing. Under These circumstances,
The addition of The MSR constitutes an unfair breach of
The plea Agreement.
Furthermore, and most ymportantly, Due Process Requires That
It be evident from The record That a defendant plea of guilty
is entered with Full knowledge of The consequences. See
People v. Day, 724 N.E.2d 994 (2000).

> " Due Process is violated where a court admonishes a
> defendant That he will Recieve a shorter sentence
> Than he Actually recieves; This includes The Fai-
> lure To Advise A defendant of The Three years
> MSR Attached To his sentence."

Where As here, The record contains no evidence
That affirmatively shows That petitioner knew That he
would be subject To an MSR Team, Petitioner's Alleges
unawareness must be Taken As True. Petitioner Fur-
ther notes That MSR Terms are statutorily Req-
uyred And That The State has no Right To Offer The
withholding of such a period as A part of The plea.

And *** The Court has No power To withhold such a period in imposing sentence. People v. Brown, 695 N.E. 2d 1374 (1998). IT is NOT NECESSARY FOR petitioner To demonstrate a Reasonable probability That, but FOR THE ERROR, he would NOT have pleaded guilty. Based ON THE RECORD, Petitioner's guilty plea was induced by The promise OF A specific sentence, which he did NOT RECIEVE. Thus, petitioner has established That his constitutional Right To Due Process And Fundamental Fairness was violated.

Having established That his constitutional Rights were substantially violated, Petitioner is entitled To Post-Conviction Relief.

The Supreme Court, in Santobello, provides FOR Two possible Remedies When a defendant does NOT Recieve The benefit OF The bargain. EiTHer The promise MUST be Filled" OR defendant MUST be given The oppoRtuniTy To withdraw his plea. Santobello v 404 U.S. AT 262-63.

The Remedy petitioner Requests in The case at bar, is Enforcement OF The plea Agreement As he understood iT. Having conceded earlier That The promise which induced his plea is unfulfillable under State Law. Petitioner Asks That his sentence be Modified To 5½ years impaisonment plus Two years MSR. To appoax-imate The plea That was stauck between The parties. After reviewing decisions by courts in other jurisdiction, Petitioner Finds The Remedy Sought To be Appropriate. James v. State, 699 N.W. 2d 723 (Minn.2005). The court concluded ThaT defendant's plea was induced by An unfulfillable promise And ThaT he was entitled To with-draw his plea OR have his sentence "Modified in A way ThaT does NOT violate The Agreement." See State v. Jumping Eagle, 620 N.W. 2d 42 (Minn.2000).

In Commonwealth v. Zuber, 466 Pa. 453 (1976). The defendants plea had been induced by illegal promise and granted defendants request to have his sentence reduced stating:

"By so doing, Appellant will then have achieved the benefit of the bargain made with the Commonwealth and still serve a prison sentence commensurate with the contemplated by all parties of the plea Agreement proceeding", Zuber, 466 Pa. at 462.

In U.S. ex rel, Ferris v. Finkbeiner, 551 F.2d 185, 187 (7th Cir. 1977) cited earlier the Court of Appeals for the Seventh Circuit Held:

Since Ferris has substantially begun performing his side of the bargain, it would not be fair to vacate the plea and require him to go through the procedure anew. Fundamental fairness can be had by limiting his term of custody to the portion of the sentence which comports with the bargain made.

Recently, in People ex rel. Ryan v. Roe, 778 N.E. 2d 701 (2002). The ILL. Supreme Court exercised it's discretion and fashioned an appropriate remedy in a situation where a guilty plea had been induced by a legally unfulfillable promise. After finding that the sentence, which had been imposed pursuant to a plea agreement, violated the law and, therefore, was void. The Court held that an "equitable solution would be to modify the sentence to one which defendant proposed and which would approximate the penal consequences contemplated by the original plea agreement. In light of Roe, Justice Douglas, admonition that "A court ought to accord a defendant's preference considerable, if not controlling weight, inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea

BARGAIN ARE THOSE OF THE DEFENDANT, NOT THE STATE." SANTObello, 404 U.S. AT 267 ( Douglas J. Concurring).

As a Remedy For Relief, Petitioner asks That his sentence be modified to 5½ years Imprisonment plus Two years of Mandatory Supervised Release. Petitioner became entitled To Release NO SOONER Than Mar. 25, 2006, IF Earned Credit Time is Restored, And Not Later than Sept. 25, 2007, IF Earned Credit isn't Restored to begin service OF Two years (MSR). To Approximate The plea That was between the parties. And other relief This Honorable Court deems just and Appropriate.

(S) Respectfully submitted

*Zakii Ts Wahiid*

Petitioner, Pro se

## 'AFFIDAVIT'

I, Zakii Tawwab Wahiid, deposes and says That To The Post-Conviction Petition herein, he is The Petitioner In The above entitled cause. That he has read The Foregoing document, by his signed, And That The statements contained Therein are True in substance and in Facts.

(S) *Zakii Ts Wahiid*

Petitioner Pro se

13

## CASES:

① U.S. Const. Amend XIV

② Ill. Rev. Stat. 1990 Supp, Ch. 38 Sec. 1005-8-1 (d)

③ 725 ILCS 5/122-2.1 (a) (2) (2002)

④ 725 ILCS 5/122-4 To 122.6 (2002)

⑤ 735 ILCC 5/2-6/7 (2002

⑥ 735 ILCS 5/14-101, ET Seq. (2002)

⑦ ( People V. Whytfield, 840 N.E. 2d 658 (2005) This case
    Substantiate Mine

⑧ U.S. Ex. Rel. Baker v. Finkbeiner, 551 F.2d 180 (7th Cir. 1977)

⑨ U.S. Ex. Rel. Ferris v. Finkbeiner, 551 F.2d 185 (7th Cir. 1977)

⑩ U.S. Ex. Rel. Miller v. McGinnis, 774 F.2d 819 (7th Cir. 1985)

⑪ Supreme Court Rule 402 (a) (2)

⑫ Supreme Court Rule 402 (d) (2)

STATE OF ILL.) ss
COUNTY OF KANE )

# AFFIDAVIT

I, Zakii Tawwab Wahiid, do hereby declare and affirm that the following information within this AFFIDAVIT is true and correct in substance and in facts.

I did NOT learn of the fact that the two year Mandatory Supervised Release had been added to my sentence until after I got to prison. Exhibit C, ILL. Dept. Of Corr. Internet Inmate Status, Admission / Release / Discharge Info.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109, I declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief. I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed Mar. 19 day of 2008

Zakii T. Wahiid
AFFIANT, PRO SE

(55)

54

1    STATE OF ILLINOIS ⟩ SS:    ORIGINAL

2    COUNTY OF K A N E ⟩

3

4    IN THE CIRCUIT COURT FOR THE 16TH JUDICIAL CIRCUIT
     KANE COUNTY, ILLINOIS

5

6    THE PEOPLE OF THE STATE ⟩
     OF ILLINOIS,           ⟩

7                           ⟩
                 Plaintiff, ⟩

8           vs.             ⟩    Gen. No.  00 CF 2509

9    ZAKII T. WAHIID,       ⟩
                            ⟩

10               Defendant. ⟩

11

12           REPORT OF PROCEEDINGS at the hearing of

13   the above-entitled cause before the HONORABLE JAMES

14   T. DOYLE, Judge of said Court, on the 1st day of

15   February, A.D., 2001.

16

17   PRESENT:
                 ON BEHALF OF THE PEOPLE:

18               Mr. Patrick J. Crimmins,
                 Assistant State's Attorney;

19               ON BEHALF OF THE DEFENDANT:

20
                 Mr. Beth Peccarelli,
21               Assistant Public Defender.

22

23
     ROSEANN K. GRADY, CSR
24   Official Court Reporter

1              (WHEREUPON, the following

2                    proceedings were had before

3                    Court and Counsel:)

4         MR. CRIMMINS:  People versus Wahiid, in

5    custody, 00 CF 2509.

6              Pat Crimmins on behalf of the People.

7         MS. PECCARELLI:  Beth Peccarelli for Mr. Wahiid.

8         MR. CRIMMINS:  There is also 00 CM 6338 and

9    6337.

10        THE COURT:  Defendant's in court.

11             Zakii, good morning.

12        MR. CRIMMINS:  Your Honor, the matter comes on

13   for status.  However, I believe today that the

14   Defendant will be entering a cold plea to the

15   charge, the indictment, 00 CF 2509.

16        MS. PECCARELLI:  That's correct, Judge.  At

17   this time we are executing a cold plea to

18   aggravated robbery, Count one of the indictment.

19        THE COURT:  What's the minimum on the

20   aggravated robbery?

21        MS. PECCARELLI:  4, 4 to 15, Judge.

22        THE COURT:  Zakii, you're charged with Count

23   One, Aggravated. Robbery.  That's a Class 1 felony.

24   That carries a 4 to 15 year sentence; 15 to 30

1  extended term, if it was determined it would apply;

2  period of mandatory supervised release of two

3  years, used to be called parole; fines of up to

4  $25,000.

5      Count Two is a robbery; Class 2 felony;

6  3 to 7 year sentence, 7 to 14 is extended term;

7  period of mandatory supervised release of two

8  years; fines of up to $25,000.

9      Count Number Three is robbery.  That's a

10  Class 2 felony as well.

11      Zakii, how old are you?

12  THE DEFENDANT:  Forty-three.

13  THE COURT:  How far have you gone with your

14  education?

15  THE DEFENDANT:  Eleventh.  Ain't got my GED.

16  THE COURT:  You can read and write?

17  THE DEFENDANT:  Yes, right.

18  THE COURT:  The Court and your attorney have

19  explained your Constitutional rights to you and you

20  understand those?

21  THE DEFENDANT:  (Nodding head)

22  THE COURT:  My understanding is that pursuant

23  to advice with your attorney, you are agreeing to

24  enter a plea of guilty to Count One.  There is no

1    agreement on the sentencing.

2        I will order a presentence report to be

3    prepared by the Probation Department and I will set

4    your sentencing date ina bout 45 days and then I

5    will listen to testimony that the State has to

6    offer and that you have to offer in terms of what

7    the appropriate sentence is and I've explained that

8    to you.

9        Do you understand that?

10    THE DEFENDANT:  Yes.

11    THE COURT:  Okay.  And you want to go ahead and

12    plead guilty to this charge today?

13    THE DEFENDANT:  Yes.

14    THE COURT:  You understand that when you plead

15    guilty, you are going to give up your

16    Constitutional rights?  You're going to give up

17    your right to have a jury trial on this?

18        Do you understand that?

19    THE DEFENDANT:  Yes.

20    THE COURT:  You're going to give up your right

21    to have a trial before a judge, that's a bench

22    trial?

23    THE DEFENDANT:  Yes.

24    THE COURT:  Giving up your right to present

1   evidence and come to court to testify in your

2   behalf?

3        THE DEFENDANT:  Yes.

4        THE COURT:  Give up your right to remain silent?

5        THE DEFENDANT:  Yes.

6        THE COURT:  Give up your right to present

7   evidence on your behalf?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Give up your right to subpoena

10  witnesses and make witnesses come to court to

11  testify in your behalf?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Give up your right to confront and

14  cross-examine State witnesses?

15       THE DEFENDANT:  Yes.

16       THE COURT:  And a right to plead not guilty,

17  requiring the State to prove you guilty beyond a

18  reasonable doubt?

19       THE DEFENDANT:  Yes.

20       THE COURT:  Factual basis?

21       MR. CRIMMINS:  Judge, if the People were to

22  proceed to trial, we would call all the witnesses

23  we have listed in the answer to discovery.

24            On or about September 29, 2000, Zakii

1  Tawwab Wahid committed the offense of aggravated
2  robbery, a Class 1, 720 ILCS Section 5/18-5(a) of
3  the Illinois Compiled Statutes, as amended, in that
4  said Defendant, while indicating verbally to
5  Richard Miller that he had a knife, took property,
6  being United States currency, from the person of
7  Richard Miller, by threatening the imminent use of
8  force.
9      THE COURT:  That's the charge.  Do you
10  understand?
11      THE DEFENDANT:  (Nodding head)
12      THE COURT:  Additional facts?
13      MR. CRIMMINS:  The facts additionally would
14  indicate that Richard John Miller, 77 years of age,
15  was exiting his car at or near 2 South Broadway at
16  Banco Popular when he was confronted by Mr. Wahiid.
17  Mr. Wahiid knocked Mr. Miller, the 77-year-old, to
18  the ground and forcibly took $239 of United States
19  Currency from Mr. Miller.  Mr. Miller had the money
20  and he had intended to make a deposit at the bank
21  with that money.  Mr. Wahiid threatened to stab
22  Mr. Miller if he did not give Mr. Wahiid the money.
23  He took the money and ran away.  Mr. Miller at some
24  point was shown some photographs and picked

1    Mr. Wahiid out of a photo line-up and eventually

2    Mr. Wahiid was captured and made a statement to the

3    police indicating that he did in fact rob the

4    victim.

5                    That would be the factual basis.

6         THE COURT:  Okay.  Beth, based on your

7    investigation on behalf of your client, you'd

8    stipulate if the State were called upon to present

9    testimony and evidence at trial, that would be the

10   sum and substance of the evidence?

11        MS. PECCARELLI:  Yes, Judge, we agree.

12        THE COURT:  Zakii?

13        THE DEFENDANT:  No problem.

14        THE COURT:  You wish to enter a plea to the

15   aggravated robbery and what is your plea to

16   aggravated robbery?

17        THE DEFENDANT:  Guilty.

18        THE COURT:  Plea of guilty is done freely and

19   voluntarily on your part?

20        THE DEFENDANT:  Yes.

21        THE COURT:  No one has threatened you or forced

22   you to enter into this plea?

23        THE DEFENDANT:  No.

24        THE COURT:  No one has promised you anything at

1    all --

2         THE DEFENDANT:  No.

3         THE COURT:  -- in reference to the plea of

4    guilty; right?

5         THE DEFENDANT:  No.

6         THE COURT:  You're not under the influence of

7    any drugs or medication today?

8         THE DEFENDANT:  No.

9         THE COURT:  You've gone through the plea of

10    guilty and waiver of your rights, and that's this

11    document here, and you signed that in open court

12    with your attorney?

13         THE DEFENDANT:  Yes.

14         THE COURT:  I will accept the plea of guilty.

15    I find the Defendant was advised of his rights,

16    advised of the charge and understands it, advised

17    of the possible punishment and understands it.  The

18    plea is voluntary.  There is a factual basis for

19    the plea.

20         MS. PECCARELLI:  I checked off the boxes for

21    negotiated plea, Judge.  I'd like to correct that.

22         THE COURT:  We are going to order a presentence

23    report to be prepared by the Probation Department.

24    We will set this for sentencing on -- how about

1   Wednesday, April 11th?

2        MS. PECCARELLI:  That looks good to me.

3        MR. CRIMMINS:  Judge, Mr. Miller is in fact in

4   court.  I just want to make certain the day is okay

5   with him.

6        THE COURT:  Sir, good morning.  Thank you for

7   coming.  The Defendant has entered a plea of guilty

8   to the charge.  I've ordered a presentence report

9   to be prepared, that does a thorough background and

10  investigation in reference to the defendant.  It

11  takes about 45 days.  I have set the date for

12  sentencing on April the 11th at 9:00 o'clock in the

13  morning.  Can you be here on that day, sir?

14       MR. MILLER:  As far as I know.

15       THE COURT:  We will set it for April 11th.

16       MR. MILLER:  What would happen if I couldn't

17  have been here?

18       THE COURT:  I don't know if the State is

19  planning on calling you as a witness to testify at

20  the sentencing.  The State presents, brings in

21  witnesses to ask for aggravation to ask for

22  lengthier periods of time and then the Defense has

23  a chance to call witnesses in reference to why I

24  should sentence him to a lesser time in jail.

1    MR. MILLER: Well, I don't think there is any

2    problem. I think I can be here.

3    THE COURT: We will count on April 11th, then,

4    at 9:00 o'clock.

5    MR. CRIMMINS: Judge, also if I may, I just

6    wanted to alert Ms. Peccarelli to an issue that may

7    result in some research of some motions. The

8    People will intend to present in aggravation a

9    murder case that involved Mr. Wahiid. He

10   subsequently was released on that charge and the

11   case was reversed by the Appellate Court, but the

12   People believe that we still are entitled to

13   present that evidence in aggravation and we will be

14   going to do that.

15   MS. PECCARELLI: I appreciate that. That case

16   was in reference the 120 Rule?

17   MR. CRIMMINS: Yes, sir.

18   THE COURT: That was reversed not based on the

19   facts of the case?

20   MR. CRIMMINS: That's correct, sir.

21   THE COURT: Okay.

22                              (WHICH were all the

23                               proceedings had in the

24                               above-entitled cause)

1    STATE OF ILLINOIS )
                         ) SS:
2    COUNTY OF K A N E )

3

4

5

6

7

8              I, LYNN M. DREYMILLER, Official Court

9    Reporter for the State of Illinois, do hereby

10   certify that I transcribed into typewriting to the

11   best of my ability the above transcript taken by

12   ROSEANN K. GRADY, CSR, 084-000947, before the

13   HONORABLE JAMES T. DOYLE.

14

15

16

17

18   LYNN M. DREYMILLER, CSR, RMR
                      084-002138
19   Official Court Reporter,
     16th Judicial Circuit of
20   Illinois.

21

22

23

24

Exhibits

## STATEMENT OF FACTS

On October 4, 2000, a complaint was filed against the defendant, 45-year-old Zakii Wahiid, charging him with aggravated robbery in connection with an incident in which he had allegedly taken money from a man named Richard Miller. (C. 3, 8) The Kane County Public Defender's Office was appointed to represent the defendant. (C. 7)    An indictment was later filed charging the defendant with one count of aggravated robbery and two counts of robbery, based on the same alleged incident. (C. 18-20) Following the indictment, the case was assigned to the Hon. James Doyle.

On February 1, 2001, the defendant pled guilty to the aggravated robbery charge without any agreement regarding the sentence. (C. 30; R. 42)    Before accepting the plea, Judge Doyle advised the defendant of the nature of the charge, the potential penalties, and the rights that he would be waiving by pleading guilty. (R. 42-45)    The defendant said that he understood his rights, that he was not under the influence of drugs or alcohol, and that his plea had not been induced by any threats or promises. (R. 44, 47)

Judge Doyle also heard a factual basis to support the plea.    According to the State, evidence could be presented to show that Mr. Miller, who was 77 years old, had been on his way into a bank in downtown Aurora when the defendant knocked him to the ground, threatened to stab him, and then took $239 from him.    The State further indicated that Mr. Miller had identified the defendant in a photographic line-up and that the defendant had made an incriminating statement to the police following his arrest. (R. 45-46)

A presentence investigation report (PSI) was ordered and subsequently filed. (C. 31, 34) The PSI indicated that the defendant had been convicted of armed robbery in Mississippi in 1980 and driving while license suspended in Kane County in 1995. (C. 35-36) He also had been convicted in Kane County of first degree murder in 1995, but that conviction had been reversed on appeal. (C. 36) The defendant, who had earned a G.E.D. in the 1970s, was not employed at the time of the instant offense. He had been employed as a general laborer and forklift operator through an employment service from January of 2000 until mid-September of 2000. (C. 37) He reported that he lost that job when the employer learned about the murder case. (C. 38)

A sentencing hearing was held on April 11, 2001. At the outset of the hearing, defense counsel objected to the reversed 1995 murder conviction being included in the PSI. Judge Doyle replied, "It's inappropriate for the presentence. It may be appropriate with the approach that [the prosecutor] is taking on it." (R. 52) Defense counsel further indicated that the defendant had received a 20-year prison sentence for the 1980 armed robbery case in Mississippi, but that he had been released after serving only 2 years because "there was a recantation that came forth." (R. 52)

In aggravation, the State presented testimony from the victim, Richard Miller. He testified that the incident occurred as he was walking from his car toward the bank. He was carrying a checkbook in his left hand and some car keys in his right hand. As he was about to enter the bank, the defendant jumped him from behind and knocked him down. The defendant was on top of Mr. Miller, punching him in the

5

face and body and trying to take the checkbook. The defendant also threatened to stab Mr. Miller if he did not let go of the checkbook. Mr. Miller did not see a knife in the defendant's hands, so he resisted by swinging the car keys at the defendant. Eventually, Mr. Miller lost his grip on the checkbook, and the defendant ran away with it. There was $239 in cash inside the checkbook. Mr. Miller chased the defendant but quit when he realized he would not be able to catch him. Mr. Miller never got the money back. He suffered some bruises on his face and shoulder, but did not require medical treatment. (R. 53-59)

After defense counsel stated that she did not wish to cross-examine Mr. Miller, Judge Doyle asked, "Hey, Mr. Miller, did you serve in the military service?" (R. 59) Mr. Miller told the court that he had served in the Navy from June, 1940, to January, 1948, being stationed in the Philippines for at least part of that time. (R. 59) When Judge Doyle asked what action Mr. Miller had seen, Mr. Miller replied, "Well, I was in the Air Force and I'm not wounded or nothing. I don't have any battle scars or nothing. I just served my time, went where they told me to go." (R. 59)

Officer Danny Hornback of the Aurora Police Department testified that he had been on patrol in the downtown area at the time of the incident. Mr. Miller flagged Hornback down and told him what had happened. Hornback and other officers found Mr. Miller's checkbook near a dumpster about a block from the bank, but there was no cash in the checkbook. (R. 60-62)

Officer Kevin Baxter testified that he participated in the defendant's arrest on the morning of October 2, 2000, three days after the robbery. According to Baxter,

6
68

the defendant jumped from a bridge into the Fox River and ran south in the middle of the river. A fire department boat arrived on the scene, and Baxter boarded the boat, which was carrying another officer and a firefighter. The boat followed the defendant to a dam in the river. The defendant jumped over the dam, landing in water approximately 6-10 feet deep. When the defendant got caught in an undertow, the firefighter jumped into the water to rescue him. As that was occurring, the motor on the boat stalled, causing the boat to be carried over the dam. The boat also got caught in the undertow. It started to take on water and nearly capsized. Using a metal pole, the other officer managed to push the boat clear of the dam, and the firefighter and the defendant were then pulled from the water. They were taken to a hospital, where the firefighter was checked for hypothermia. (R. 63-68)

Officer Tom Kinney testified that Mr. Miller identified the defendant in a photographic line-up on October 3. Kinney later advised the defendant of his rights and interviewed him. According to Kinney, the defendant first identified himself as "Sylvester Wilson," but eventually gave his correct name, explaining that he had given the other name because of the prior murder case. (R. 69-72) The defendant told Kinney that he robbed Mr. Miller because he needed money to buy medicine for his pregnant girlfriend, although he also said that he used the money to buy "some grease for his hair." (R. 73) The defendant "broke down and was crying" during the interview. (R. 74) He expressed remorse about what he had done and wanted "to make it right." (R. 74) Kinney never attempted to confirm whether the defendant's girlfriend was having health problems at the time of the incident. (R. 73-74)

7

The State's final witness in aggravation was Officer Marshall Gauer. He related that he had been involved in the "foot pursuit" of the defendant on October 2 but that he had not been one of the officers who followed the defendant into the river. (R. 75) After the defendant was taken into custody, Gauer searched him and found "a steak type knife" in his pocket. (R. 75) The knife was about 5 or 6 inches long, with a serrated blade. (R. 75-76) Gauer agreed with the prosecutor's assertion that the discovery of the knife was "significant." (R. 76) At that point, the prosecutor began to ask Gauer about his involvement in the investigation of the prior murder case, 95 CF 2305. When defense counsel objected to that line of questioning, Judge Doyle stated, "He can testify in reference to the facts. I can take judicial notice, of course, of the occurrence. I got the file here. I can take judicial notice of the file. And I understand, like I said, I've read that opinion. I've had a copy of that opinion because we've had to address that opinion on other occasions. So I'm completely aware of the case itself." (R. 76)

Gauer proceeded to describe some of the circumstances surrounding the murder case. He had testified at the murder trial and had been present when the verdict was returned. (R. 84) The case arose from an incident in which the defendant fatally stabbed his girlfriend, Mona Vaughn, at her apartment. (R. 77-80, 85) Gauer interrogated the defendant a day or two after the incident. The defendant was "somewhat cooperative" and "fairly calm" during the interrogation, although he did get upset when he learned that Vaughn had died. (R. 80-85) According to Gauer, the defendant said that he had stabbed Vaughn after taking a knife away from her. He

8

also said that Vaughn had tried to cut him with a "box knife" one day prior to the fatal incident. (R. 82-83, 85) Gauer could not recall whether he had spoken to a witness who reported seeing Vaughn trying to stab the defendant at a particular location, but he acknowledged that he might have spoken to that witness. The defendant did have some cuts on his hands when Gauer saw him. The cuts were not fresh. (R. 86) Gauer testified that Vaughn and the defendant had been involved in "two or three incidents of domestic violence over a two or three day period." (R. 85)

After defense counsel indicated that there would be no evidence in mitigation, the prosecutor recommended a sentence of 15 years in prison. The prosecutor argued that none of the statutory factors in mitigation applied and that there were no circumstances excusing the offense. (R. 87-93) In reviewing the statutory factors in aggravation, the prosecutor referred to "number eight," which applies when the offense is committed against a person over 60 years of age. (R. 90) The prosecutor also asked the court to consider how the defendant had "put the lives of the officers and the firefighter into danger" when he jumped into the river. (R. 92) Citing the 1980 armed robbery conviction, the prosecutor described the defendant as a "violent person" and argued that he had "a history of very serious offenses." (R. 90, 93) The defendant's conduct "where he murdered somebody" could be used in aggravation, the prosecutor contended, even though the conviction was reversed because of a speedy trial violation. (R. 88)

Defense counsel argued that the murder conviction should not be considered "in light of its reversal." (R. 94) The rest of the defendant's criminal history, counsel

9

71

and you have to admire that generation," Judge Doyle stated. (R. 98)  Judge Doyle

described the defendant's conduct as "another display of cowardice" and contrasted

it with the "incredible heroism by the police and fire department." (R. 98-99)

Referring to Gauer's testimony regarding the murder case "and the statements

elicited in reference to his conduct in [the] murdering of his girlfriend at the time,"

Judge Doyle stated:

> I recognize the fact that the trial was on this floor.  Judge Hudson
> presided over it after the trial had been set by Judge Puklin.
>
> And I know that at the time when we were setting trials and we're
> checking on times and everybody agrees to the trial date.  And I know
> that the Appellate Court reversed, but I also notice our current, now
> Supreme Court Justice Thomas, was on that panel and he wrote a
> strongly worded dissent disagreeing with the other two justices that
> reversed this case that allowed him out.
>
> I'm not going to comment on the opinion.  I think that the Supreme
> Court Justice's Thomas's opinion on it, I happen to agree with [it]
> strongly.  And I've read the opinion and I'm aware of it.  But we do live
> with the law as the law is dictated here.
>
> The testimony is accurate.  I wouldn't use that case against him, but it
> came in by way of the detective's testimony and I'm allowed under the
> law to use that prior crime to come in.

(R. 99-100)

Judge Doyle agreed with the State's position regarding the lack of mitigation

and found that the "[f]actors in aggravation are very high." (R. 100)  In particular,

Judge Doyle found that the defendant's conduct "caused or threatened serious harm,"

that he had a history of "prior delinquency," that a deterrent sentence was necessary,

and that the victim was a "senior citizen." (R. 100-01)  Judge Doyle told the

maintained, did not reveal "the lifetime of crime that the State is portraying here." (R. 95)  Defense counsel acknowledged that the defendant's conduct was wrong, but she noted that the defendant had admitted his guilt and suggested that his conduct was mitigated by the situation he was facing with respect to his pregnant girlfriend.  "[I]n his mind, at least," counsel argued, the situation was "prompting him or giving him provocation to act in the way he did." (R. 93)  According to defense counsel, an appropriate sentence would not exceed 6 years. (R. 95)

In a statement in allocution, the defendant said that he had trouble finding employment because of the 1995 murder conviction. He eventually applied for a job without disclosing that he had been in prison in connection with the murder case. The company later found out about the murder case, however, and he got fired. At the time of the offense, he was making $35.00 per day working for a "labor temp service." (R. 96-97)  He needed money for his pregnant girlfriend and tried unsuccessfully to get help from some local churches. (R. 97)

Judge Doyle then imposed the sentence. He began by remarking that the case "absolutely stands out in my courtroom as what I would say it's [sic] absolute good versus absolute evil." (R. 98)  "I see," Judge Doyle continued, "all this incredible courage versus incredible cowardice." (R. 98)  According to Judge Doyle, the "absolute good" was Mr. Miller, who "represents what I would call the great generation and what has been defined as a member of that great generation. I think you look at him as an American hero." (R. 98)  Judge Doyle found that Mr. Miller "displayed incredible courage during his beating and attack." (R. 98)  "You sit down

defendant, "You know, Zakii, everything about you emanates evil," and "[M]y biggest regret is that I can't spend a couple million dollars to keep you there [in prison] the rest of your life." (R. 101)

After making those comments, Judge Doyle sentenced the defendant to "the maximum, which is 15 years." (C. 40; R. 101-02)   According Judge Doyle, that penalty "doesn't even come close to the sentence that would be appropriate for your background, your history, your conduct in this case. But I'm stuck with it." (R. 101)

Judge Doyle immediately advised the defendant of his right to appeal, informing him that he could not appeal unless he first filed a timely motion to withdraw the guilty plea. (R. 102)

On April 17, 2001, Judge Doyle had the defendant brought back for further admonishments. He advised the defendant that he could preserve his right to appeal by filing either a motion to withdraw the plea or a motion to reconsider the sentence. (R. 107) A motion to reconsider was filed the next day. The motion alleged that the sentence was excessive and that the court had erred by considering "the overturned murder conviction." (C. 46-47)

A hearing on the motion to reconsider was held on May 18, 2001. At the outset of the hearing, defense counsel filed a certificate purporting to show compliance with Supreme Court Rule 604(d). Following brief argument by the parties, Judge Doyle denied the motion without further comment. (C. 55; R. 111-12)

The defendant filed a timely notice of appeal. (C. 54) On December 21, 2001, this Honorable Court entered a summary order. Finding that defense counsel had not

filed a proper 604(d) certificate, this Court remanded the cause for the defendant "to file a new motion to reconsider sentence and for a hearing thereon pursuant to Rule 604(d)." (C. 66-67)

On March 21, 2002, defense counsel filed a new 604(d) certificate. (C. 72) No new motion to reconsider was filed on remand. On September 19, 2002, defense counsel indicated that the defendant, who was present in open court, would stand on the prior motion. (C. 84; R. 125) Counsel argued that Judge Doyle had erred by considering the evidence of the murder case and that the sentence was excessive in light of the defendant's "dire circumstances" and "history of substance abuse." (R. 125) Stating that he had considered the latter factors, but not "the case that was reversed," Judge Doyle denied the motion again, and the defendant promptly appealed. (C. 84-85; R. 126)

75

Exhibit A

# IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Case No. _00 CF 2609_

| | |
|---|---|
| _People_ | _Zakii Wahid_ |
| Plaintiff(s) | Defendant(s) |
| Pltf. Atty. _Crimmins_ | Def. Atty. _Peccarelli_ |
| Judge _Doyle_ | Court Reporter _RoseAnn_ | Deputy Clerk _Janice_ |

Clerk

FEB 01 2001

FILED

ENTERED

File Stamp

A copy of this order ☐ should be sent ☐ has been sent to:
☐ Pltf. Atty. ☐ Deft. Atty. ☐ Other

## PLEA OF GUILTY

THE COURT HAVING ADDRESSED THE DEFENDANT IN OPEN COURT FINDS;

That the defendant was advised of and understands that the state has the burden of proving him/her guilty beyond a reasonable doubt; that he/she is presumed innocent until proven guilty, the nature of the charge(s) and the possible punishment that might be imposed by the Court, including, if applicable, extended term or consecutive sentences and the right:

    (A) To plead not guilty or to persist in that plea if already made.
    (B) To present evidence in his/her own defense.
    (C) To use the subpoena power of the Court.
    (D) To a jury trial or a trial before the judge without a jury.
    (E) To confront the witnesses against him/her.
    (F) To counsel and if indigent, to appointed counsel.
    (G) To pursue an appeal within 30 days, and if indigent, to a transcript of all the proceedings in his/her case without charge to assist in the appeal process.

☐ That the defendant has waived right to counsel.

☐ That the defendant understands that if he/she is not a U.S. citizen that this plea could result in his/her deportation.

☑ That a plea agreement as stated to the Court was voluntarily arrived at: The defendant has stipulated that if witnesses were called that they would testify competently to sufficient facts to support a finding of guilty to the offense(s) of:

_Aggravated Robbery_ Class _1_ Statute _720 ILCS 5/18-5_
Count _____ ☐ Original ☐ Amended

☑ That the defendant pleads guilty to the offense(s) stated above, and waives his rights as stated in (A) thru (E) above.

☒ That the defendant agrees to the imposition of a specific sentence and waives the right to a pre-sentence investigation or an aggravation and mitigation hearing.

☒ That the Court has considered the history of criminality of the defendant, statements of the State, Defense counsel and the defendant regarding the offense(s) charged, victim input and recommendations of arresting authority.

☑ That the defendant makes an unconditional (COLD) plea(s) to the charge(s) and asserts the right to a pre-sentence and aggravation and mitigation hearing.

☑ That the probation office of this Court is directed to conduct a pre-sentence investigation. A written copy is to be furnished to the Court, the defendant and the State's Attorney not less than three (3) Court days before the date set herein for sentencing.

☑ Sentencing hearing is continued to _April 11, 2001_ at _9:00_ A m. in Rm. _311_

_Zakii T. Wahid_ _2-1-01_
Defendant's Signature Date GPLEA

Exhibit A-1

Sta 99 BM 12-25-454.

SS# 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 JN KS247 DP DH

IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

GEN. NO. 00CF 2309

THE PEOPLE OF ILLINOIS vs. Zakee Wankino

PLAINTIFF DEFENDANT

| JUDGE Doyle | COURT REPORTER Grady R | PLTF. ATTY. Coleman |
| --- | --- | --- |
| DEPUTY CLERK Merse | A copy of this order ☐ should be sent to: ☐ has been sent to: | DEFT. ATTY. Precenili CHECK IF PRESENT X |

**JUDGMENT ORDER**
Illinois Department of Corrections

Date of offense: 9/22/00

Crime For Which Defendant Convicted:
Aggravated Robbery

Chapter and Section:
720 ILCS 5/18 - 5 (1200)

Credit for Time Served:
☒ Kane County Jail:
196 Day(s) _____ Month(s) ☐ NONE
☐ To be determined by Sheriff

☐ Other Credit: _____
(Type/Place/Agency)
_____ Day(s) _____ Month(s) ☐ NONE

Costs of These Proceedings:

| | | |
| --- | --- | --- |
| Fine | $ | _____ |
| Circuit Clerk's Costs | | _____ |
| State's Attorney's Costs | | _____ |
| Sheriff's Costs | | _____ |
| Surcharge | | _____ |
| | Sub-total | _____ (A) |

Bond on Deposit $ _____
Less 10% (if applicable) ( _____ )
Credit Amount ( _____ ) (B)

BALANCE DUE (A–B) $ _____

Balance Due:
☐ Instanter ☐ _____, 19____

Sentence of the Court:
_____ Days(s) _____ Month(s) _____ Year(s)
(if applicable):
☐ Concurrent ☐ Consecutive with Case Number:

☐ Finding of guilty but mentally ill

Municipality of Arrest (if over 25,000 pop.):
Aurora

THE COURT being advised in the premises;

IT IS HEREBY ORDERED that the defendant named herein is guilty of the crime set forth in this case; and,

IT IS FURTHER ORDERED that the defendant be given credit for such time served as determined by the Court; and, that the defendant pay all costs of these proceedings.

NOW, THEREFORE, is is Ordered, Adjudged and Decreed that the defendant be sentenced to the Illinois Department of Corrections for the crime he/she stands convicted, for a term of days, months or years as set forth herein; and,

FURTHER, that the defendant be taken from the bar of this Court to the Kane County Jail, and from there, by the Sheriff of Kane County, to the nearest reception and classification center of the Illinois Department of Corrections, and the Illinois Department of Corrections is hereby required and commanded to take the body of the defendant and confine him/her in a Penitentiary or State Penal Farm, according to law, from and after delivery thereof until discharged according to law, provided such term of imprisonment shall be not less than nor more than the term of days, months or years for which the defendant stands convicted.

Date 4-11-01

Enter: _____
(Judge)

A true copy of the original on file in my office.

Attested to this _____ 2001

Clerk of the Circuit Court
Kane County, Illinois

By _____
Deputy Clerk

77

"Exhibit B"

# IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Gen. No. _00 CF 2509_

In Re: People of the State of Illinois:

vs. _Zahii Washiio_

Plaintiff        Defendant

| Judge _Doyle_ | Court Reporter _R. Grady_ | State's Attorney _b/cason_ |
| Deputy Clerk _Merse_ | Probation Officer | Defense Attorney _Pecararuli_ |

## JUDGMENT ORDER

☒ Original ☐ Subsequent

☒ The Court/Jury having found the defendant guilty of: _Aggravated Robbery_ (Class 1)
☒ Original ☐ Lesser/Incl ☐ Amended ☐ Statute: _720 ILCS 5/18-5_
☐ Judgment entered on conviction and sentence.

UPON THE DEFENDANT'S PLEA/VERDICT OF GUILTY THE FOLLOWING SENTENCE IS HEREBY IMPOSED UPON THE DEFENDANT

|  |  | Years | Months | Days |
|---|---|---|---|---|
| ☐ | 208- Withhold Judgment _ Court supervision | | | |
| ☐ | 215 - Withhold Judgment - 710 Probation ☐ Reporting ☐ Non-Reporting | | | |
| ☐ | 216 - Withhold Judgment - 1410 Probation ☐ Reporting ☐ Non-Reporting | | | |
| ☐ | 219 - Withhold Judgment - 720 Probation ☐ Reporting ☐ Non-Reporting | | | |
| ☐ | 204 - Probation (Automatic $25.00/month fee _____ months/ waived) | | | |
| ☐ | 206 - Conditional Discharge ($50 per year fee _____ years) | | | |
| ☐ | 209 - Perform public service _____ hours.. | | | |
| ☐ | 210 - Intensive ☐ Special drug program for the first _____ months beginning ___/___/___ | | | |

THE DEFENDANT TO PAY THE FOLLOWING FINES, COSTS, FEES AND PENALTIES:

| ☐ | Fine including all applicable costs totaling $ _____ |
| ☐ | Fine $ _____ plus costs of: $ _____ ☐ Costs only: $ _____ ☐ Sheriff's costs: $ _____ /waived |
| ☐ | Drug assessment fee: $ _____ Drug fine: $ _____ Restitution: $ _____ Statutory/surcharge: $ _____ |
| ☐ | Drug testing fee: $ _____ ☐ IPS ($200) ☐ SDP ($325) ☐ Crime lab fee ($50) |
| ☐ | Credit from deposited bail after deducting 10% when applicable. $ _____ Balance due (Instanter/within) _____ time in amount of $ _____ |

Clerk of the Circuit Court
Kane County, IL

APR 1 1 2001

ENTERED

THE DEFENDANT TO SERVE THE FOLLOWING PERIODS OF INCARCERATION

|  |  | Years | Months | Days |
|---|---|---|---|---|
| ☒ | 201 - Department of Corrections ☐ 214 - Impact Incarceration | 15 | | |
| ☒ | 202 - Kane County Jail | | | |
| ☐ | 203 - Periodic Imprisonment _____ Weekends. | | | |
| ☐ | 212 - Home Confinement | | | |
| ☐ | 213 - Electronic Monitoring: $ _____ (per day) $ _____ (total) | | | |
| ☒ | 250 - Credit for time served: _196 days Kane Co. Jail_ | | | |

☐ The sentence of _____ shall be run consecutive/concurrent to the term imposed by the Circuit Court of Kane County, Case number _____

THE DEFENDANT TO COMPLY WITH THE FOLLOWING CONDITIONS OF PROBATION

| ☐ Follow the rules of probation | (OPRUL) | ☐ TASC Program | (OPTAS) |
| ☐ Follow the rules of intensive probation (OPRLI) ☐ SDP | (ORSDP) | ☐ Attend AA Meeting | (OPAA) |
| ☐ Alcohol/Drug evaluation | (OPAO) | ☐ Drug Treatment | (OPDG) |
| ☐ KCDC Evaluation/Treatment | (OPKC) | ☐ No Driving Allowed | (OPND) |
| ☐ No Alcohol Related Offenses Allowed | (OPNAO) | ☐ Refrain form Contacting Complainant | (OPCOM) |
| ☐ Victim Impact Panel | (OVIP) | ☐ Order Payment Plan | (OPAYP) |
| ☐ Level I Treatment (OPL1) ☐ LEVEL II A | (OPL2A) | ☐ Level IIB (OPL2B) ☐ Level III | (OPL3) |
| ☐ Other: _____ | | | |

☐ A motor vehicle was involved in the commission of the Felony (MVIN)

Cause continued to _____ ☐ for status (OCNS) ☐ return for payment (OCPO) ☐ return of supervision (OCTSS)

Entered: _4-11-01_      Judge: _____

78

"ExhiBiT C"

# ILLINOIS DEPARTMENT OF CORRECTIONS
## INTERNET INMATE STATUS
### AS OF: Friday, June 24, 2005

 

## K52467 - WAHIID, ZAKII

**Parent Institution:** Lawrence Correctional Center
**Inmate Status:** IN CUSTODY
**Location:**
**Discharge Reason:**

## VITALS

| | |
|---|---|
| Date of Birth: | 12-25-1954 |
| Weight: | 165 lbs. |
| Hair: | Black |
| Sex: | Male |
| Height: | 5 ft. 07 in. |
| Race: | Black |
| Eyes: | Brown |

## MARKS, SCARS, & TATTOOS
TATTOO, ARM, RIGHT UPPER - ANCHOR
TATTOO, ARM, LEFT UPPER - CROSS
TATTOO, FOREARM, RIGHT - "DEBRA" "DIAN" DENA" 1955-1990

## ADMISSION / RELEASE / DISCHARGE INFO
Custody Date:                     04/18/2001
Projected Parole Date: ————> ( 08/25/2008 )
Paroled Date:
Tentative Discharge Date:
Discharge From Parole: ————> ( 08/25/2010 )

## SENTENCING INFORMATION

| MITTIMUS: | 00CF2509 |
|---|---|
| CLASS: | 1 |
| COUNT: | 1 |
| OFFENSE: | AGGRAVATED ROBBERY |
| CUSTODY DATE: | 09/25/2000 |
| SENTENCE: | 15 YEARS 0 MONTHS 0 DAYS |
| COUNTY: | KANE |
| SENTENCE DISCHARGED?: | NO |
| | |
| MITTIMUS: | 95CF2305 |
| CLASS: | M |

**EXHIBIT**
A

  79

| COUNT: | 1 |
| --- | --- |
| OFFENSE: | MURDER/INTENT TO KILL/INJURE |
| CUSTODY DATE: | 10/25/1995 |
| SENTENCE: | 38 YEARS 0 MONTHS 0 DAYS |
| COUNTY: | KANE |
| SENTENCE DISCHARGED?: | YES |
| | |

All complaints regarding the accuracy of information contained in these documents should be submitted, in writing, to the Illinois Department of Corrections, P.O. Box 19277, Springfield, IL 62794-9722.

conduct another search
return to the IDOC homepage

Illinois Department of Corrections
1301 Concordia Court
Springfield, Illinois, 62794
217-522-2666 | 800-546-0844 TDD

80

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | K52467 | **Counseling Date** | 01/24/07 11:52:00;032 |
| **Offender Name** | WAHIID, ZAKII | **Type** | Collateral |
| **Current Admit Date** | 04/18/2001 | **Method** | Other |
| **MSR Date** | 09/25/2009 | **Location** | PON WEST SEGREGATION |
| **HSE/GAL/CELL** | W-10-20 | **Staff** | RUSSELL, SANDRA J - CORR COUNSELOR 3 |

Submitted seg time cut

80A

_Exhibit D_

## SENTENCE CALCULATION WORK SHEET

### Revocation of Good Conduct Credits
### When Sentence Is Determinate Under 1978 Law

Name _ZAKII  WAHIID_          Number _K52467_   Date _3-27-06_

**STEP 1**

( _1mo, 2mo, 3mo, 3mo_ )
_3mo_

| Year | Month | Day |
|------|-------|-----|
| _1_  | _9_   |     |

(Good Conduct Credits Revoked From
Sentence By Director On _3-20-06_ )

**STEP 2**   (Mittimus Number _DCCF2509_ )

Projected Out Date

| Year | Month | Day |
|------|-------|-----|
| _00_ | _9_   | _25_ |
| + _7_ | _6_  |     |
| _08_ | _3_   | _25_ |

(Custody Date)
(Sentence Less G.C.C.)

(Projected Out Date or
PRB Projected Out Date)

| | | |
|---|---|---|
| + or - | _6_ | |
| _08_ | _9_ | _25_ |

(Previous Time - Lost/Awarded)

| | | |
|---|---|---|
| + _1_ | | |
| _09_ | _9_ | _25_ |

(Projected Out Date)
(Present Revocation)

(Adjusted Projected Out Date)

Adjusted Projected Out Date _9-25-08_    Terminal Operator _EA_

Calculated By _AF_                       Date Entered _3-28-06_

DC 1328 [Rev. 8/93)
IL426-00528

## Affidavit of Affirmation Under Penalty of Perjury

I, Zakii Tawwab Wahiid, AFFIANT, do hereby declare and affirm under penalty of perjury as defined in 735 ILCS 5/1-109, That everything contained herein is true and accurate to the best of my knowledge and belief. I further declare and affirm that the contents of the fore-going documents are known to me and are accurate to the best of my knowledge and belief.

Finally, I do declare and affirm that the matter at hand is not taken either frivolously or maliciously and that I believe the foregoing matter is taken in good faith.

Signed 19 mar day of 2008

Zakii To Wahiid
AFFIANT, PRO SE

82

SUPREME COURT OF ILLINOIS
CLERK OF THE COURT
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

September 14, 2007

Mr. Zakii Tawwab Wahiid
Reg. No. K-52467
Western Illinois Correctional Center
R. R. #4, Box 196
Mt. Sterling, IL 62353

THE COURT HAS TODAY ENTERED THE FOLLOWING ORDER IN THE CASE OF:

No. 11901 - Zakii Tawwab Wahiid, petitioner, v. People State
            of Illinois et al., respondents.

            The motion by petitioner for relief under
            Supreme Court Rule 381 is <u>denied</u>.

cc: Hon. Lisa Madigan

EXHIBIT K

```
 1   STATE OF ILLINOIS    )
                          )  SS
 2   COUNTY OF K A N E    )

 3      IN THE CIRCUIT COURT FOR THE SIXTEENTH JUDICIAL CIRCUIT

 4
     THE PEOPLE OF THE STATE     )
 5   OF ILLINOIS,                )
                                 )
 6             Plaintiff,        )
                                 )
 7        vs.                    )   Gen. No. 00-CF-2509
                                 )
 8   ZAKII WAHIID,               )
                                 )
 9             Defendant.        )
```

10             REPORT OF PROCEEDINGS at the hearing of the

11   above-entitled cause before the HONORABLE JAMES T. DOYLE,

12   Judge of said Court, on the 1st day of February, A. D.,

13   2001.

14

15

16        PRESENT:  For the People of the State
                    of Illinois:

17                  MS. MEG GORECKI, Kane County
                       State's Attorney
18                  BY:  MR. PATRICK J. CRIMMINS,
                       Assistant State's Attorney;

19

20                  For the Defendant:

21                  MR. DAVID P. KLIMENT, Kane
                       County Public Defender
22                  BY:  MS. BETH PECCARELLI,
                       Assistant Public Defender.

23

24                      EXHIBIT L

ROSEANN K. GRADY
Official Court Reporter
```

Deborah Seyller
Clerk of the Circuit Court
Kane County

JUL 05 2001

FILED    088
ENTERED

1      MR. CRIMMINS:  People versus Zakii Wahiid in custody.

2  00-CF-2509.  Pat Crimmins on behalf of the People.

3      MS. PECCARELLI:  Beth Peccarelli for Mr. Wahiid.

4      MR. CRIMMINS:  There is a file 00-CM-6338 and 6377.

5      THE COURT:  The defendant's in court.  Zakii, good

6  morning.

7      MR. CRIMMINS:  Your Honor, the matter comes on for

8  status.  However, I believe today that the defendant will

9  be entering a cold plea to the charge, the indictment

10  00-CF-2509.

11      MS. PECCARELLI:  That's correct, Judge.  At this time

12  we're executing a cold plea to aggravated robbery, count

13  one of the indictment.

14      THE COURT:  What's the minimum on the aggravated

15  robbery?

16      MS. PECCARELLI:  Four.  Four to 15, Judge.

17      THE COURT:  Zakii, you're charged with count one,

18  aggravated robbery.  That's a class one felony.  Carries a

19  four to 15 year sentence.  Fifteen to 30 is extended term

20  if it ever applies in Illinois.  Period of mandatory

21  supervised release of two years, used to be called parole,

22  and a fine of up to 25 thousand dollars.

23          Count number two is a robbery, class three

24  felony, three to seven, seven to 14 is extended term,

2

00042

1    period of mandatory supervised release of two years, fine

2    of up to 25 thousand dollars.

3         Count number three is robbery, that's a class

4    three felony as well.

5         Zakii, how old are you?

6         THE DEFENDANT:   Forty-three.

7         THE COURT:   How far have you gone with your

8    education?

9         THE DEFENDANT:   Eleven and I got my G.E.D.

10        THE COURT:   You can read and write?

11        THE DEFENDANT:   Yes, right.

12        THE COURT:   The Court and your attorney have

13   explained your Constitutional rights to you and you

14   understand those?

15        THE DEFENDANT:   (Nodding head)

16        THE COURT:   My understanding is that pursuant to

17   advice with your attorney you're going to enter a plea of

18   guilty to count one.   There is no agreement to the

19   sentencing.   I will order a presentence report to be

20   prepared by the probation and I will set your sentencing

21   date in about 45 days and then I will listen to testimony

22   that the State has to offer and that you have to offer in

23   terms of what the appropriate sentence is and I've

24   explained that to you.   Do you understand that?

000043

1      THE DEFENDANT:  Yes.

2      THE COURT:  Okay, and you want to go ahead and plead

3   guilty to this charge today?

4      THE DEFENDANT:  Yes.

5      THE COURT:  You understand that when you plead guilty

6   you are going to give up your Constitutional rights.

7   You're going to give up your right to have a jury trial on

8   this.  Do you understand that?

9      THE DEFENDANT:  Yes.

10      THE COURT:  You're going to give up your right to

11   have a trial before a Judge.  That's a bench trial?

12      THE DEFENDANT:  Yes.

13      THE COURT:  Give up your right to subpoena witnesses

14   and have them come to court to testify in your behalf?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Give up your right to testify in your

17   behalf and your right to remain silent?

18      THE DEFENDANT:  Yes.

19      THE COURT:  Give up your right to present evidence on

20   your behalf?

21      THE DEFENDANT:  Yes.

22      THE COURT:  Your right to confront, cross examine

23   State witnesses?

24      THE DEFENDANT:  Yes.

4

800044

1      THE COURT:  And a right to plead not guilty requiring

2  the State to prove you guilty beyond a reasonable doubt?

3      THE DEFENDANT:  Yes.

4      THE COURT:  Factual basis.

5      MR. CRIMMINS:  Judge, if the People were to proceed

6  to trial we would call all the witnesses which have been

7  listed in the answer to discovery.

8          We would prove that on or about September 29,

9  2000, Zakii Wahiid committed the offense of aggravated

10  robbery, a class one felony, in violation of Chapter 720,

11  Section 5/18-5(a) of the Illinois Compiled Statutes, as

12  amended, in that said defendant, while indicating verbally

13  to Richard Miller that he had a knife, took property,

14  being United States currency, from the person of Richard

15  Miller by threatening the imminent use of force.

16      THE COURT:  That's the charge.  Do you understand the

17  charge?

18      THE DEFENDANT:  (Nodding head)

19      THE COURT:  Additional facts.

20      MR. CRIMMINS:  The facts additionally would indicate

21  that Richard John Miller, 77 years of age, was exiting his

22  car at or near 2 South Broadway at Banco Popular when he

23  was confronted by Mr. Wahiid.  Mr. Wahiid knocked Mr.

24  Miller, the 77 year old, to the ground and forcefully took

000045

1    $239.00 of United States currency from Mr. Miller.

2         Mr. Miller had the money and he had intended to

3    make a deposit at the bank with that money.  Mr. Wahiid

4    threatened to stab Mr. Miller if he did not give Mr.

5    Wahiid the money.  He took the money and ran away.

6         Mr. Miller at some point was shown some

7    photographs and picked Mr. Wahiid out of a photo line-up

8    and eventually Mr. Wahiid was captured and made a

9    statement to the police indicating that he did in fact rob

10   the victim.

11        That would be the factual basis.

12   THE COURT:  Okay, Beth, based on your investigation

13   on behalf of your client, you'd stipulate if the State

14   were called upon to present testimony and evidence at

15   trial, that would be the sum and substance of the

16   testimony presented against you?

17   MS. PECCARELLI:  Yes, Judge, we agree.

18   THE COURT:  Zakii, you agree that's what the State's

19   witnesses would testify against you?

20   THE DEFENDANT:  No problem.

21   THE COURT:  You've heard the charge.  You've heard

22   the factual basis.  You wish to enter a plea to aggravated

23   robbery.  What is your plea to that charge?

24   THE DEFENDANT:  Guilty.

6

1      THE COURT:  Plea of guilty is done freely and

2  voluntarily on your part today?

3      THE DEFENDANT:  Yes.

4      THE COURT:  No one's threatened or forced you to

5  enter into this plea?

6      THE DEFENDANT:  No.

7      THE COURT:  No one has promised you anything at all?

8      THE DEFENDANT:  No.

9      THE COURT:  In reference to the plea of guilty;

10  right?

11      THE DEFENDANT:  No.

12      THE COURT:  You're not under the influence of any

13  drugs or medication today?

14      THE DEFENDANT:  No.

15      THE COURT:  We've gone through the plea of guilty and

16  waiver of your rights, this document here, and you signed

17  that in open court with your attorney?

18      THE DEFENDANT:  Yes.

19      THE COURT:  I will accept the plea of guilty.  I find

20  the defendant was advised of his rights and understands

21  it.  Advised of the charge and understands it.  Advised of

22  the possible punishment and understands it.  The plea is

23  voluntary.  There is a factual basis for the plea and I'll

24  enter judgment of conviction at this time.

000047

1      MS. PECCARELLI:  I checked off the boxes for

2  negotiated plea, Judge.  I'd like to correct that.

3      THE COURT:  We're going to order a presentence report

4  to be prepared by the probation department.  We'll set

5  this for sentencing on how about Wednesday, April 11th?

6      MS. PECCARELLI:  That looks good to me.

7      MR. CRIMMINS:  Judge, Mr. Miller is in fact in court.

8  I just want to make certain the date is okay with him.

9      THE COURT:  Sir, good morning.  Thank you for coming.

10 The defendant has entered a plea of guilty to the charge.

11 I've ordered a presentence report to be prepared.  That

12 does a thorough background and investigation in reference

13 to the defendant.  It takes about 45 days.  I have set the

14 date for sentencing on April the 11th at 9:00 o'clock in

15 the morning.  Can you be here on that day, sir?

16     MR. MILLER:  As far as I know.

17     THE COURT:  We'll set it for April 11th.

18     MR. MILLER:  What would happen if I couldn't be here?

19     THE COURT:  I don't know if the State is planning on

20 calling you as a witness to testify at the sentencing.

21 The State prepares -- brings witnesses to ask for

22 aggravation to ask for lengthy periods of time and then

23 the defense has a chance to call witnesses in reference to

24 why I should sentence him to a lesser time in jail.

000048

1    MR. MILLER: Well, I don't think there is any

2 problem. I think I can be here.

3    THE COURT: We'll count on April 11th then at 11:00

4 o'clock.

5    MR. CRIMMINS: Judge, also, if I may, I just wanted

6 to alert Ms. Peccarelli to an issue that may result in

7 some research of some motions. The People will intend to

8 present in aggravation a murder case that involved Mr.

9 Wahiid. He subsequently was released on that charge and

10 the case was reversed by the Appellate Court. But the

11 People believe that we still are entitled to present that

12 evidence in aggravation and we will seek to do that.

13    MS. PECCARELLI: I anticipated that.

14    THE COURT: That case, as I understand, was in

15 reference to the 120 rule.

16    MR. CRIMMINS: Yes, sir.

17    THE COURT: That was reversed not based on the facts

18 of the case.

19    MR. CRIMMINS: That's correct, sir.

20    THE COURT: Okay.

21                (Which were all the proceedings had on the

22                 hearing of said cause.)

23

24

00049

1 STATE OF ILLINOIS )
         ) SS
2 COUNTY OF K A N E )

3

4

5

6    I, Roseann K. Grady, CSR, an Official Court

7 Reporter for the State of Illinois, do hereby certify that

8 I reported in shorthand all of the proceedings had at the

9 hearing in the above-entitled cause, and that the above

10 and foregoing is a true, correct, and complete transcript

11 of my shorthand notes so taken at the time and place

12 hereinbefore set forth.

13

14

15      *Roseann K. Grady*

16      Roseann K. Grady, CSR
       Cer. No. 084-000947

17      Official Court Reporter
       16th Judicial Circuit of

18      Illinois.

19

20

21

22

23

24

00050